**Paula A. Barran,** OSB No. 803974
pbarran@barran.com
**Richard C. Hunt,** OSB No. 680770
rhunt@barran.com
Barran Liebman LLP
601 SW Second Avenue, Suite 2300
Portland, Oregon  97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

#### Portland Division

| | |
|---|---|
| LEGACY HEALTH; LEGACY GOOD SAMARITAN HOSPITAL AND MEDICAL CENTER; LEGACY MOUNT HOOD MEDICAL CENTER; LEGACY MERIDIAN PARK HOSPITAL dba LEGACY MERIDIAN PARK MEDICAL CENTER; and LEGACY EMANUEL HOSPITAL & HEALTH CENTER dba LEGACY EMANUEL MEDICAL CENTER, | **Case No.**<br><br>**COMPLAINT**<br><br>(Declaratory judgment re state action including preemption; deprivation of civil rights in violation of 43 USC § 1983) |
| Plaintiffs, | |
| v. | |
| STATE OF OREGON; OREGON BUREAU OF LABOR AND INDUSTRIES; VAL HOYLE, in her official capacity as Commissioner of the Oregon Bureau of Labor and Industries; and DUKE SHEPARD, in his official capacity as Deputy Commissioner of the Oregon Bureau of Labor and Industries, | |
| Defendants. | |

Plaintiffs Legacy Health; Legacy Good Samaritan Hospital and Medical Center; Legacy

Mount Hood Medical Center; Legacy Meridian Park Hospital dba Legacy Meridian Park Medical

Page 1 – COMPLAINT

Center; and Legacy Emanuel Hospital & Health Center dba Legacy Emanuel Medical Center (collectively "Plaintiffs"), by and through the undersigned counsel, bring this action against the State of Oregon; the Oregon Bureau of Labor and Industries ("BOLI"), Labor Commissioner Val Hoyle, and Deputy Labor Commissioner Duke Shepard (collectively "Defendants") and allege as follows.

## I. <u>NATURE OF ACTION</u>

1.       Plaintiffs' first claim for relief (count one), seeks a declaratory judgment declaring that OAR 839-020-0050[1] is invalid because the regulation is subject to the jurisdiction of the National Labor Relations Act ("NLRA"), as amended, 29 USC §§ 151-169, and therefore preempted by the NLRA.  OAR 839-020-0050(2)(d) imposes onerous and restrictive provisions requiring that meal periods be taken during a narrow two-hour period.  However, OAR 839-020-0050(7) provides that rules regarding meal periods and rest periods may be avoided by unionized employers and their union employees by the terms of a collective bargaining agreement ("CBA").

2.       Plaintiffs' count two of their first claim for relief, seeks a declaratory judgment that OAR 839-020-0050 requiring that meals be taken at specific times is invalid for failure to follow applicable rule making requirements.

3.       Plaintiffs' count three of their first claim seeks a declaratory judgment that OAR 839-020-0050 requiring timing of meals exceeds the relevant statutory authority.

4.       Plaintiffs' count four of their first claim seeks a declaratory judgment that OAR 839-020-0050 is invalid because it conflicts with clearly stated rules governing the practice of nursing.

5.       Plaintiffs also bring a second claim for violation of 43 U.S.C. § 1983.

/ / /

---

[1] Plaintiffs have filed a related Petition for Judicial Review of Agency Rule OAR 839-020-0050 with the Oregon Court of Appeals.

Page 2 – COMPLAINT

6.      Count one of Plaintiffs' Section 1983 claim asserts that Deputy Commissioner Duke Shepard and Commissioner Val Hoyle violated Section 1983 because Shepard, while acting under color of state law, retaliated against Plaintiffs and their employees when the employees sought to exercise of their First Amendment rights when they petitioned Hoyle and Shepard regarding their concerns over meal time rules and how they might go about seeking a change of those rules and Shepard provided incomplete or erroneous information which caused employees to understand that they needed to unionize in order to be allowed to avoid the rule which they considered impractical, onerous, contrary to their health, and contrary to proper nursing practices.

7.      Count two of Plaintiffs' Section 1983 claim asserts that OAR 839-020-0050 violates the Equal Protection Clause of the United States Constitution.

## II.  **JURISDICTION**

8.      This Court has jurisdiction under 28 U.S.C. § 1331, as this matter arises under the constitution and laws of the United States, including the First and Fourteenth Amendments to the U.S. Constitution and the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169 and 42 U.S.C. § 1983.  This action arises under the supremacy clause of the United States Constitution (Article VI, Clause 2) and the NLRA.  This Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief, including injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

9.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

## III.  **VENUE**

10.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this judicial district.

/ / /

/ / /

/ / /

Page 3 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

## IV.  **PARTIES**

11.      Plaintiff Legacy Good Samaritan Hospital and Medical Center ("Good Samaritan Hospital") is an active domestic nonprofit corporation with its principal place of business at 1015 NW 22nd Avenue, Portland, Oregon 97210.

12.      Plaintiff Legacy Mount Hood Medical Center ("Mount Hood Medical Center") is an active domestic nonprofit corporation with its principal place of business at 24800 SE Stark, Gresham, Oregon 97030.

13.      Plaintiff Legacy Meridian Park Hospital dba Meridian Park Medical Center ("Meridian Park Hospital") is an active domestic nonprofit corporation with its principal place of business at 19300 SW 65th, Tualatin, Oregon 97062.

14.      Plaintiff Legacy Emanuel Hospital & Health Center dba Legacy Emanuel Medical Center ("Emanuel Hospital") is an active domestic nonprofit corporation with its principal place of business at 2801 N. Gantenbein Avenue, Portland, Oregon 97227.

15.      Defendant State of Oregon is one of 50 states of the United States.

16.      Defendant Oregon Bureau of Labor and Industries ("BOLI" or "Agency") is an agency of the State of Oregon.

17.      Defendant Val Hoyle ("BOLI Commissioner Hoyle"), who is sued in her official capacity as Commissioner of the Oregon Bureau of Labor and Industries, is an individual residing in Oregon.

18.      Defendant Duke Shepard ("BOLI Deputy Commissioner Shepard"), who is sued in his official capacity as Deputy Commissioner of the Oregon Bureau of Labor and Industries, is an individual residing in Oregon.

/ / /

/ / /

/ / /

/ / /

Page 4 – COMPLAINT

## V.  GENERAL FACTUAL ALLEGATIONS

### Oregon statute and BOLI regulations governing meal periods and breaks and civil penalties.

### ORS 653.261

19.    ORS 653.261(1)(a)(3) provides that the BOLI Commissioner may adopt rules prescribing minimum conditions of employment, including minimum meal periods and rest periods "in any occupation as may be necessary for the preservation of the health of employees."  But the rules adopted by the Commissioner regarding meal periods and breaks do not apply to "nurses who provide acute care in hospital settings if the provisions of collective bargaining agreements entered into by the nurses prescribe rules concerning meal periods and rest periods." And ORS 653.261(4)(a)(b) provides that employees who serve food or beverages may, subject to conditions, agree to waive taking a meal period.  ORS 653.261(1)(a), (3), (4)(a), (b), and (d) provide in relevant part:

> (1)(a) The Commissioner of the Bureau of Labor and Industries may adopt rules prescribing such minimum conditions of employment, excluding minimum wages, in any occupation as may be necessary for the preservation of the health of employees. The rules may include, but are not limited to, minimum meal periods and rest periods, and maximum hours of work, but not less than eight hours per day or 40 hours per workweek; * * *

> (3) Rules adopted by the commissioner pursuant to subsection (1) of this section regarding meal periods and rest periods do not apply to nurses who provide acute care in hospital settings if provisions of collective bargaining agreements entered into by the nurses prescribe rules concerning meal periods and rest periods.

> (4)(a) The commissioner shall adopt rules regarding meal periods for employees who serve food or beverages, receive tips and report the tips to the employer.

> (b) In rules adopted by the commissioner under paragraph (a) of this subsection, the commissioner shall permit an employee to waive a meal period. * * *

> * * * * *

> (d) Civil penalties authorized by this subsection shall be imposed in the manner provided in ORS 183.745. All sums collected as penalties under this subsection shall be applied and paid over as provided in ORS 653.256 (4).

*/ / /*

Page 5 – COMPLAINT

BARRAN LIEBMAN ᴸᴸᴾ
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

ORS 653.256(4) provides that all sums collected shall first be applied toward reimbursement of costs incurred in determining the violations, conducting hearings, and collecting penalties and then the remainder, if any, of sums collected shall be paid over to the Department of State Lands for the benefit of the Common School Fund and thereafter the remainder, if any, shall be paid to the Department of Human Services for the benefit of the Breastfeeding Mother Friendly Employer Project.

### OAR 839-020-0050

20.    Pursuant to this authorization, BOLI has adopted minimum meal periods and rest periods "for the preservation of the health of employees" which are set forth in OAR 839-020-0050(2)(a), (b), (c) and Appendix A.  However, the rules adopted by BOLI are not confined to prescribing minimum meal periods and rest periods but also impose onerous restrictions and limitations regarding the times when meal periods may be taken.  In addition, the BOLI rules state that the provisions of OAR 839-020-0050(7) regarding meal periods and rest periods may be modified by unionized employers if the provisions of the CBA entered into by those unionized employees specifically prescribe rules concerning meal periods and rest periods.  Also, BOLI provisions at OAR 839-020-0050(8) provide that employees who are employed to serve food and beverages may waive meal periods if certain conditions are met.  OAR 839-020-0050 states in part:

(1) The purpose of this rule is to prescribe minimum meal periods and rest periods for the preservation of the health of employees.

(2)(a) Except as otherwise provided in this rule, every employer shall provide to each employee, for each work period of not less than six or more than eight hours, a meal period of not less than 30 continuous minutes during which the employee is relieved of all duties.

(b) Except as otherwise provided in this rule, if an employee is not relieved of all duties for 30 continuous minutes during the meal period, the employer must pay the employee for the entire 30-minute meal period.

(c) An employer is not required to provide a meal period to an employee for a work period of less than six hours. When an employee's work period is more than eight hours, the employer shall provide the employee the number of meal periods listed in Appendix A of this rule.

Page 6 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

(d) Timing of the meal period: If the work period is seven hours or less, the meal period is to be taken after the conclusion of the second hour worked and completed prior to the commencement of the fifth hour worked. If the work period is more than seven hours, the meal period is to be taken after the conclusion of the third hour worked and completed prior to the commencement of the sixth hour worked.

\* \* \* \* \*

(7) The provisions of this rule regarding meal periods and rest periods may be modified by the terms of a collective bargaining agreement if the provisions of the collective bargaining agreement entered into by the employees specifically prescribe rules concerning meal periods and rest periods.

(8)(a) Pursuant to the provisions of ORS 653.261(5), if an employer agrees, an employee may waive a meal period if all of the following conditions are met:

(A) The employee is employed to serve food or beverages, receives tips, and reports the tips to the employee's employer;

[The section allowing food and beverage servers to waive meal periods if the employer agrees sets forth ten conditions that must be met in order for the waiver to be effective (OAR 839-020-0050(8)(a)(A)-(J)).]

**Restraints on when meal periods may be taken present obstacles for Plaintiff hospitals but not unionized hospitals.**

21.     A majority of the affected employees who work for the Plaintiff hospitals are nurses and clinical employees and nearly all of those employees work 12-hour shifts.

22.     OAR 839-020-0050(2)(d) provides that employees at Plaintiff hospitals working 12-hour shifts must take a meal break in the two-hour window of time after the completion of the third hour worked and completed prior to the commencement of the sixth hour worked.

23.     Since all employees of Plaintiff hospitals working 12-hour shifts cannot take their meal break at the same time, this means that many of the employees working a 12-hour shift must take their meal break immediately or shortly after the conclusion of their third hour on the job. Because shifts start early in the work day, some employees are forced to take a meal break in mid-morning at a time that is unhealthy for them, inconvenient for them, uncomfortable for them, and at times leads to physical discomfort and hunger during the remaining eight or more hours of their shift. As a result, Plaintiffs' employees working 12-hour shifts are deprived of the right to take

Page 7 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

a meal break midway through their 12-hour shifts and must work the remainder of their shift (eight hours or more) with no meal break.

24.     The directive establishing the timing of the meal period appears to have been based upon a calculation which assumes all workers work an eight hour shift and are thereby able to take a meal period roughly in the middle of their work day.  The regulation as written and applied to Plaintiff hospitals, however, requires workers scheduled for a 12-hour or more shift to take a meal period early in their shift, which has an adverse effect on the employees in the latter part of their work day.

25.     Employees working for unionized hospitals who perform virtually identical work to that performed by the nurses and clinical employees at Plaintiff hospitals are permitted by the rule adopted by the Commissioner of Labor to avoid the strict time frame when meal periods must be taken set forth in OAR 839-020-0050(2)(d) provided that the employers have recognized a union and adopted a CBA which specifically prescribes rules concerning meal periods and rest periods (OAR 839-020-0050(7)).

26.     The stated reason for the meal and break requirements of OAR 839-020-0050(1) is the "preservation of the health of employees."  However, the requirements regarding the timing of meal periods are not necessary for the safety and health of employees because unionized employees and unionized employers may, under a CBA, modify when meals are to be taken without any regulatory oversight.  OAR 839-020-0050(7).  That includes employers covered by CBAs who operate the same kinds of hospitals and healthcare facilities as operated by Plaintiff hospitals.  Thus, the Agency treats its regulations as necessary only when a healthcare employer has not bargained with a union.  In addition, the "preservation of health" rationale is of no significance with respect to food and beverage servers who have the option under certain conditions to waive meal periods.

27.     The rule of OAR 839-020-0050(2)(d) requiring a narrow period of time when employees working shifts of 12 hours or more take meal breaks imposes severe operational restrictions on Plaintiffs' day-to-day employment of employees necessary for Plaintiff hospitals to

Page 8 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

carry out their public and/or charitable purposes, interfere with licensure obligations of nurses, contribute to employee fatigue and discomfort, increase operational expenses, cause confusion for employees who regularly work for Plaintiffs, and expose Plaintiff hospitals to large and excessive penalties in spite of good-faith efforts to comply with the unworkable restrictions.  Such restrictions are not imposed on similar hospitals and healthcare institutions whose operations are distinguished only by their having employees working under CBAs.

28.    Plaintiffs are unaware of any data, and the Bureau of Labor and Industries has neither provided nor cited to any such data, that other hospitals and healthcare facilities who are exempted from the meal period timing restrictions because their employees work under CBAs have in any way suffered any adverse health consequences.

29.    The "preservation of health" rationale set forth in ORS 653.261(1)(a) and OAR 839-020-0050(1) applies only to non-union employers without CBAs.  Otherwise, strict BOLI regulations regarding the timing of when meal periods are to be taken would apply to employees of all employers, not just non-union employers who are not parties to CBAs.

30.    Scheduling meal periods under the current BOLI rules assumes that employees operate eight hour shifts and that employees working those shifts are to take their meal breaks midway through that eight hour period.  The rules regarding timing of meals are not designed for healthcare or for employees working 12-hour shifts or longer which is common in the healthcare industry.  Also, every time Plaintiff hospitals swap professionals or break caregiver continuity there is an enhanced risk for patients.

31.    In light of a nationwide shortage of nursing professionals and other healthcare workers, healthcare employees are burdened by meal period timing requirements more than if they worked in a non-healthcare industry.  Nurses are governed by the Oregon Nurse Practice Act (ORS Chapter 678) and the Administrative Rules of the Oregon State Board of Nursing (OAR Chapter 851).  ORS 678.150 authorizes the Oregon Board of Nursing to exercise general supervision over

Page 9 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

the practice of nursing.  Notwithstanding BOLI meal and break rules, nurses are forbidden from leaving a patient when to do so would jeopardize the patient's safety and health.

32.    ORS 441.168 specifically provides:

A registered nurse at a hospital may not place a patient at risk of harm by leaving a patient care assignment during an agreed upon shift or an agreed upon extended shift without authorization from the appropriate supervisory personnel.

33.    Registered nurses are carefully regulated as to the standard of nursing. (OAR 851-045-0070.)  Nurses must make medical judgments as to whether or not it is safe for a nurse to leave a patient, and nurses can be subject to the imposition of civil penalties or disciplinary sanctions up to and including loss of their license if they walk away from patient care responsibilities.  OAR 851-045-0100(1).  OAR 839-020-0050(2)(d) requires nurses working in non-union hospitals to take their meal break during a two-hour period; failure of the nurse to take the meal break during that narrow time period subjects non-union employers to a $1,000 penalty per infraction.

34.    A hospital must provide nursing service on a 24/7 basis.  OAR 333-510-0030(1).

35.    Emergency Department nurses (who are the sole focus of BOLI in its Notices of Intent to Assess Civil Penalties (NOIs) directed at Plaintiff Meridian Park Hospital and Plaintiff Mount Hood Medical Center) present the hospitals with special challenges.  Emergency Departments are often faced with the admission of patients who require immediate and uninterrupted attention and/or a team of nurses.  Such is the case when a patient is suicidal, is a stroke patient, or is at risk of a serious and permanent medical condition and/or death.

36.    Similarly, registered nurses at the Family Birth Center at Plaintiff Good Samaritan Hospital, who are the principal focus of BOLI's NOIs directed at Good Samaritan Hospital, also face many challenges that do not permit them to leave their patients.  For example, during a resuscitation of a baby, four registered nurses trained in neonatal resuscitation procedures need to be on hand during the procedure.

/ / /

Page 10 – COMPLAINT

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

37.     Healthcare practitioners are not fungible and a position typically must be staffed during a worker's meal break.  A licensed healthcare practitioner may not fill in for another in an area for which he or she has not had the proper training.  So, for example, an Emergency Room employee cannot fill in to provide breaks for an employee in Family Birthing or vice versa.  An Operator cannot be replaced by an employee who does not have proficiency in "coding" (coded messages announced to alert staff to on-site emergencies).  These are unlike the sorts of positions for which breaks and meals can be accommodated with signage ("back in 30 minutes") or the shutdown of an assembly line (when everyone can take a break at the same time).  Instead, Plaintiffs' healthcare practitioners frequently work in highly skilled operations without readily available replacement employees in jobs that cannot be left vacant.

**BOLI's escalating multi-million dollar penalties.**

38.     ORS 653.356(1) provides in part:

> **653.256 Civil penalty for general employment statute or rule violations.** (1) In addition to any other penalty provided by law, the Commissioner of the Bureau of Labor and Industries may assess a civil penalty not to exceed $1,000 against any person that willfully violates ORS * * * 653.261 * * *

39.     On April 16, 2019, BOLI served Plaintiffs Good Samaritan Hospital, Mount Hood Medical Center, and Meridian Park Hospital with Amended Notices of Intent to Assess Penalties. BOLI's Amended NOIs against the three Plaintiff hospitals sought to assess, without exception, a $1,000 penalty for each of the alleged 5,156 violations for a total of $5,156,000.  The alleged violations were principally "violations" of taking a meal period outside the narrow window permitted by the Agency regulations.  Not a single assessed penalty was less than the maximum amount of $1,000 regardless of the mitigating circumstances and regardless of whether a meal period was a few minutes outside the narrow window.

40.     A consolidated case proceeding of the NOIs was scheduled to commence on October 14, 2019.

Page 11 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

41.     The Agency's former administrative prosecutor engaged in prosecutorial misconduct by serving illegal subpoenas compelling witnesses to meet with her in advance of the hearing to discuss their testimony.  The misconduct of the former administrative prosecutor in issuing the illegal subpoenas is imputed to everyone at BOLI, including the Commissioner of Labor.

42.     Plaintiff hospitals filed a motion to dismiss the cases based upon this prosecutorial misconduct.

43.     BOLI sought to avoid the consequences of the hospitals' motion by withdrawing the NOIs without prejudice and cancelling the October 14, 2019 hearing.  The purpose of BOLI's procedural tactic was to engage the hospitals in mediation but, failing mediation, to reassert the penalty demands and enlarge the scope and penalty demand.

44.     The parties engaged in a period of mediation but on December 20, 2021, BOLI sent a written notice withdrawing from mediation.

45.     The following day, December 21, 2021, BOLI served new NOIs to seek penalties against Good Samaritan Hospital, Mount Hood Medical Center, and Meridian Park Hospital, but the penalties sought were greater than had previously been sought by BOLI.  In addition, on December 21, 2021, BOLI served NOIs on Emanuel Hospital.  The total penalties sought by BOLI against the four hospitals is $8,727,000, which is approximately $3.5 million more than the penalties sought by BOLI prior to mediation.

46.     The NOIs of December 21, 2021, are limited to just a few departments – the Emergency Departments at Meridian Park Hospital and Mount Hood Medical Center, the Patient Access and Operating Departments and the Women's Services 5W Labor and Delivery Department at Good Samaritan Hospital, and the Staffing Office at Emanuel Hospital.  These departments present special challenges because nurses cannot abandon patients in Emergency Departments and the Labor and Delivery Department to take breaks if doing so would put patients at risk and result in the nurses violating ORS 441.168.

/ / /

Page 12 – COMPLAINT

47.     If BOLI were to issue additional NOIs seeking penalties with regard to other departments within the Plaintiff hospitals, were to seek penalties for other time periods including 2019, 2020, and 2021, and were to name other Legacy Health institutions and hospitals, then the amount of penalties would conservatively be in the tens of millions of dollars and perhaps in excess of $100 million and could force Legacy Health into a financially unsustainable operation and require the reduction of essential services, an increase in the cost of healthcare which would be passed on to patients, and would be destructive to Legacy Health's ability to provide charity care, all at a time when it is providing vital health services in the midst of a public health emergency under the constraints imposed by a dangerous pandemic.

48.     BOLI's excessive fines selectively targeting Legacy but not directed at unionized hospitals are discriminatory and violate federal law.

49.     BOLI Commissioner Hoyle, in proposing the $1,000 penalty for each separate violation, has failed to follow BOLI regulations.  Hoyle was required to make an individual assessment and consider not only aggravating circumstances but also mitigating circumstances when assessing the amount of civil penalty for an alleged violation.  OAR 839-020-1020 sets forth criteria for determining civil penalties and specifically requires that "the commissioner shall consider all mitigating circumstances presented by the employer for the purpose of reducing the amount of the civil penalty to be assessed."  OAR 839-020-1020 states:

(1) The commissioner may consider the following mitigating and aggravating circumstances when determining the amount of any civil penalty to be assessed and cite those the commissioner finds to be appropriate:

(a) The history of the employer in taking all necessary measures to prevent or correct violations of statutes or rules;

(b) Prior violations, if any, of statutes or rules;

(c) The magnitude and seriousness of the violation;

(d) Whether the employer knew or should have known of the violation;

Page 13 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

(e) The opportunity and degree of difficulty to comply;

(f) Whether the employers' action or inaction has resulted in the loss of a substantive right of an employee.

(2) It shall be the responsibility of the employer to provide the commissioner any mitigating evidence concerning the amount of the civil penalty to be assessed.

(3) Notwithstanding any other section of this rule, the commissioner shall consider all mitigating circumstances presented by the employer for the purpose of reducing the amount of the civil penalty to be assessed.

Hoyle failed to consider mitigating circumstances.

50.     Plaintiffs Good Samaritan Hospital, Mount Hood Medical Center, and Meridian Park Hospital pointed out that they had no prior violations.  In addition, all Plaintiffs demonstrated that they had a history of taking necessary measures to prevent or correct violations of statutes or rules, identified the degree of difficulty in strict compliance, and pointed out the substantive rights of employees who are not harmed except to the extent that the Agency was insistent and rigid in requiring nurses to take meal breaks during a narrow period of time near the beginning of their 12-hour shifts (OAR 839-020-1020(1)(a), (b), (e), and (f)).  Commissioner Hoyle ignored evidence of mitigating circumstances.

**BOLI's use of funds as a source of revenue.**

51.     The Eighth Amendment to the United States Constitution provides that "excessive bail shall not be required nor excessive fines imposed."

52.     The United States Supreme Court has observed "fines are a source of revenue." *Timbs v. Indiana*, 139 S. Ct. 682, 689, 203 L. Ed. 2d 11, 2019 U.S. LEXIS 1350 (2019).

53.     Plaintiffs are informed and believe and therefore allege that BOLI retained fines and/or used fines it has collected as a source of revenue.

54.     At the time Legacy has paid fines under the Oregon statute, the sums collected as civil penalties are first to be applied toward reimbursement of costs, conducting hearings, collecting penalties, and other administrative costs. The remainder, if any, is to be paid to the Department of

Page 14 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

State Lands for the benefit of the Common School Fund and, if any remaining funds exist, they are to be paid to the Department of Human Services.  ORS 653.256(4)(a), (b), and (c) provides:

>    (4)(a) All sums collected as penalties under this section shall be first applied toward reimbursement of costs incurred in determining the violations, conducting hearings under this section and addressing and collecting the penalties.

>    (b) The remainder, if any, of the sums collected as penalties under subsection (1) of this section shall be paid over by the commissioner to the Department of State Lands for the benefit of the Common School Fund of this state. The department shall issue a receipt for the money to the commissioner.

>    (c) The remainder, if any, of the sums collected as penalties under subsection (2) of this section shall be paid over by the commissioner to the Department of Human Services for the benefit of the Breastfeeding Mother Friendly Employer Project. The department shall issue a receipt for the moneys to the commissioner.

55.    BOLI has collected large penalties from employers alleged to have violated Oregon statutes, including a penalty of $276,680 that was assessed against Plaintiff Emanuel Hospital in Case No. 29-17 and a penalty of $85,000 that was assessed against Legacy Silverton Hospital of $85,000 in Case No. 66-17.  The penalties that were assessed against Emanuel Hospital and Silverton Hospital were collected without the necessity of BOLI conducting a hearing.  BOLI has been unable to establish that excess sums collected as penalties from Plaintiff Emanuel Hospital, Legacy Silverton Hospital, and other employers has been timely paid over to other state agencies or the statutorily approved recipients.  Plaintiffs are informed and believe and therefore allege that over time BOLI has collected significant sums as penalties from employers and has retained those sums without complying with the requirements of ORS 653.256(4) directing that the remainder of sums collected as penalties after administrative costs and costs of conducting a hearing shall be paid to the Department of State Lands for the benefit of the Common School Fund and any remaining funds would be paid over to the Department of Human Services.  In the alternative, BOLI has failed to institute and maintain processes to account for the funds collected and the disposition of such funds.

56.    Plaintiffs have made a number of public records requests regarding BOLI's retention of funds.  Based upon incomplete responses to those public records requests, it is believed that over

Page 15 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

time BOLI has retained sums collected and penalties and/or has not timely transferred those funds to the appropriate agencies but rather the funds have disappeared into the Agency's coffers without proper accounting for them.

**Nurses approach BOLI regarding concerns over rule limiting timing of meals.**

57.     A group of Plaintiffs' nurses requested a meeting with Commissioner Val Hoyle to address concerns and grievances regarding the rule restricting the times when nurses can take meals. Commissioner Hoyle declined to take the meeting and directed or allowed the group of nurses to meet with Deputy Commissioner Duke Shepard.  ORS 651.060(3) provides that the Commissioner shall employ a Deputy Commissioner and such other assistants and personnel as may be necessary to carry into effect the powers and duties of the Commissioner.  However, the Commissioner is responsible for all acts of the Deputy Commissioner and of assistants employed.

58.     The employees approached the Commissioner and Deputy Commissioner in order to seek information regarding how to change the rule regarding timing of meals and/or raise concerns regarding that subject.  Those employees were engaged in collective activity seeking to discuss an onerous working condition with a representative of state government acting under color of state law.

59.     The nurses who sought to speak with the Commissioner and in fact spoke with the Deputy Commissioner were hoping to obtain information and a remedy for working conditions they believed required them to take meals at unhealthy and inconvenient times.

60.     The nurses, in raising concerns, were protected by the federal and state constitutions which promise the protection of the right to petition the government for redress of grievances.  This protection is stated in the First Amendment to the U.S. Constitution, is applicable to the states under the Fourteenth Amendment.

61.     The nurses wished to bring to the attention of BOLI that the Agency's rules regarding timing of meal periods raised issues of private and public concern.  While the government may reject such petitions, it is not free to respond to such petitions by deliberately providing false or misleading information.

Page 16 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

62.     The nurses were petitioning and seeking information to assist them in changing working conditions that they saw as contrary to their ability to do their jobs as required by their nursing licenses.

63.     Deputy Commissioner Shepard used his position of authority and public trust to restrain, coerce, and interfere with the free choice of private sector employees by providing inaccurate or incomplete information that caused the nurses to understand that the only remedy for their concerns was to unionize whereas there were other options to address their concerns.  The misconduct of Deputy Commissioner Shepard in violation of Section 1983 is imputed to everyone at BOLI, including Labor Commissioner Hoyle.

64.     Such deliberate restraint or coercion by state actors against individuals exercising this right is forbidden by federal law and is actionable under 43 USC § 1983 ("Section 1983").

**Petition requesting BOLI Commissioner to initiate rulemaking to amend OAR 839-020-0050 denied without explanation.**

65.     On March 22, 2021, attorneys for Legacy petitioned BOLI Commissioner Val Hoyle to amend OAR 839-020-0050 to provide that all nonprofit healthcare medical centers or hospitals (not just those entities covered by CBAs) be permitted to adopt policies that modify the meal period and rest period regulations, including the rule constraining the times when nurses could take meal breaks.

66.     The petition set forth reasons for the proposed amendment, stating in part that the rigid demands of OAR 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(2)(d) impose unwanted burdens that impinge upon patient care responsibilities of Plaintiff hospitals and their healthcare practitioners and that the existing rule regarding when nurses may take breaks are not "necessary for the preservation of the health of employees."

67.     The petition discussed in part:

By allowing an exemption for employers whose employees work under a collective bargaining agreement, the agency has already acknowledged that its rule is not necessary for the preservation of employee health.  Petitioners can prepare the same

Page 17 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

kinds of policies and internal rules that its fellow institutions have included in their collective bargaining agreements. The proposed amendment serves merely to allow Petitioners and other similarly situated institutions the same benefit in the scheduling of their employees.

68.     Plaintiffs had an opportunity to examine comments that were received by BOLI regarding the petition for a change in the rule. Nearly all of the comments in opposition to the proposed amendment to OAR 839-020-0050 received by BOLI during the public comment period appear to have been submitted by union members using a form which, on information and belief, was drafted by a union (Oregon Nurses Association). Out of the more than 100 comments received, over 90% substantially adopted the language of a form letter that is believed to have been prepared by the Oregon Nurses Association. These comments were submitted via the website "actionnetwork.org" which, on information and belief, is used by the Oregon Nurses Association to communicate with its members and involve them in lobbying activities. The motivation for Oregon Nurses Association's orchestrated opposition to the rule change that would allow non-union employers and their employees the ability to modify the unworkable and oppressive meal time requirements is obvious. The union wishes to maintain the status quo which creates operational challenges for Legacy and its employees.

69.     BOLI Commissioner Hoyle denied the petition of Legacy Health without setting forth reasons.

70.     BOLI's denial, without explanation, of a petition to initiate rulemaking to amend OAR 839-020-0050 failed to comply with the provisions of ORS 183.390 setting forth the standards for review of petitions requesting adoption and/or amendment of rules.

71.     The duties and responsibilities of the BOLI Commissioner of Labor and Deputy Commissioner do not include advocating that employees join or not join a union.

/ / /

/ / /

/ / /

Page 18 – COMPLAINT

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

## FIRST CLAIM FOR RELIEF

### (Count One:  Declaratory Judgment and Injunctive Relief
### OAR 839-020-0050(2)(d) and (7))

72.     Plaintiff realleges and incorporates herein by reference paragraphs 1-71.

73.     ORS 653.261(1)(a) provides that the BOLI Commissioner may adopt rules as may be "necessary for the preservation of the health of employees," including but not limited to minimum meal periods and rest periods and maximum hours of work.

74.     Pursuant to this authorization, BOLI has adopted rules that prescribe minimum meal periods and rest periods for the preservation of the health of employees.  Those minimum meal period conditions of employment are set forth in OAR 839-020-0050(2) which provides:

> (2)(a) Except as otherwise provided in this rule, every employer shall provide to each employee, for each work period of not less than six or more than eight hours, a meal period of not less than 30 continuous minutes during which the employee is relieved of all duties.
>
> (b) Except as otherwise provided in this rule, if an employee is not relieved of all duties for 30 continuous minutes during the meal period, the employer must pay the employee for the entire 30-minute meal period.
>
> (c) An employer is not required to provide a meal period to an employee for a work period of less than six hours. When an employee's work period is more than eight hours, the employer shall provide the employee the number of meal periods listed in Appendix A of this rule.

Appendix A specifies the minimum number of rest periods and meal periods that are to be provided depending upon the length of work period:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 19 – COMPLAINT

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

Appendix A

| Length of work period | Number of rest breaks required | Number of meal periods required |
|---|---|---|
| 2 hrs or less | 0 | 0 |
| 2 hrs 1 min - 5 hrs 59 min | 1 | 0 |
| 6 hrs | 1 | 1 |
| 6 hrs 1 min - 10 hrs | 2 | 1 |
| 10 hrs 1 min - 13 hrs 59 min | 3 | 1 |
| 14 hrs | 3 | 2 |
| 14 hrs 1 min - 18 hrs | 4 | 2 |
| 18 hrs 1 min - 21 hrs 59 min | 5 | 2 |
| 22 hrs | 5 | 3 |
| 22 hrs 1 min - 24 hrs | 6 | 3 |

75.     OAR 839-020-0050(2)(d) also includes a provision that does not prescribe minimum meal periods but rather restricts the time period when a meal period is to be taken. OAR 839-020-0050(2)(d) specifically states:

> (d) Timing of the meal period: If the work period is seven hours or less, the meal period is to be taken after the conclusion of the second hour worked and completed prior to the commencement of the fifth hour worked. If the work period is more than seven hours, the meal period is to be taken after the conclusion of the third hour worked and completed prior to the commencement of the sixth hour worked.

Thus, OAR 839-020-0050(2)(d), when viewed together with Appendix A, provides that an employee working up to 13 hours and 59 minutes shall be only entitled to a single meal period and that meal period is to be taken in a two-hour window after the conclusion of the third hour worked and completed prior to the sixth hour worked.

76.     A majority of the nurses and clinical employees at Plaintiff hospitals work 12-hour shifts and may, depending upon the circumstances, work longer hours than 12 hours.  Since all employees working 12-hour shifts cannot take their break at the same time, this means that many employees working a 12-hour shift or more must take their meal break immediately or shortly after the conclusion of their third hour on the job.  Because shifts start early in the work day, many employees are forced to take a lunch in the mid-morning at a time that is inconvenient and unhealthy

Page 20 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

for them and which, at times, leads to physical discomfort, lack of nourishment, and hunger during the remaining eight or more hours of the shift.  These employees are deprived of the right to take a meal period midway through their 12-hour shifts and once they have taken their meal breaks must work the remainder of their shifts (up to eight hours or more) with no meal break.

77.    BOLI's NOIs directed at Plaintiff hospitals seek to impose a $1,000 civil penalty for each violation of this rule imposing a requirement of when meal periods must be taken.  In the vast majority of the alleged violations, the nurses and other employees who are alleged to have taken meal breaks that are not consistent with the restrictive requirements for timing of the meal periods have taken late meal periods after the two-hour window when meal periods are required to be taken.

78.    The provision forbidding employees from taking meal periods outside of the two-hour window between the conclusion of the third hour on the job and prior to the commencement of the sixth hour worked, do not apply to employers' employees whose terms of employment are set forth in a CBA.  Unionized employers and their unionized employees are governed by a different standard and are not faced with the loss of substantive rights that affects employees at Plaintiff hospitals.

79.    OAR 839-020-0050(7) provides that:

(7) The provisions of this rule regarding meal periods and rest periods may be modified by the terms of a collective bargaining agreement if the provisions of the collective bargaining agreement entered into by the employees specifically prescribe rules concerning meal periods and rest periods.

Thus, the BOLI rules mandating when meal periods will be taken do not apply to nurses and other employees who work in unionized hospitals, but nurses performing the same functions in non-union hospitals are subject to BOLI's restrictions regarding the "timing of the meal period."

80.    OAR 839-020-0050(2)(d) is preempted by the NLRA, 29 U.S.C §§ 151, et seq, as amended, under the principle enunciated in *Int'l Ass'n of Machinists & Aero. Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 96 S. Ct. 2548 (1976).

/ / /

Page 21 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

**Plaintiff hospitals have standing under Article III of the United States Constitution to bring this claim for preemption.**

81.     Plaintiff hospitals are injured as a result of BOLI's strict enforcement against Plaintiffs of the meal period timing rules.  Plaintiffs are not unionized and their employees do not wish to be unionized.  As a result, the imposition of restraints on when meal periods may be taken causes the Plaintiff hospitals to lose efficiencies, results in decreased employee morale, could lead to employee attrition, excessive turnover, and recruiting difficulties, and requires Plaintiff hospitals and their employees to schedule meal breaks at times which present operational challenges and are unworkable.  In addition, Plaintiff hospitals are injured because unionized competitors are not subject to the meal period timing rules.  Consequently, Plaintiff hospitals are placed at a serious competitive disadvantage to those unionized hospitals.  Further, BOLI's enforcement of the meal timing constraints injure Plaintiff hospitals because of pressures to unionize.  BOLI's enforcement of the meal timing rule has resulted in NOIs being directed at Plaintiff hospitals seeking in excess of $8 million.  Plaintiff hospitals are injured because they must devote precious time and resources to defending against the imposition of these excessive penalties.

82.     The causal connection requirement of Article III is satisfied because Plaintiff hospitals' injuries stem directly from the state's enforcement of the meal period timing rules against Plaintiffs.

83.     If Plaintiffs obtain a favorable decision with regard to Plaintiffs' request for a judicial declaration, such a declaration will allow Plaintiffs to implement flexible scheduling of meal periods for its employees and make Plaintiffs more competitive with unionized hospitals.

84.     Although Plaintiffs have Article III standing to assert any NLRA preemption claims based upon their own rights, in the alternative Plaintiffs also have rights to assert preemption based upon the rights of third-party employees working at Plaintiff hospitals.  Specifically, Plaintiffs have standing to assert their employees' NLRA rights freely to join or not join a union.  If Plaintiffs

Page 22 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

succeed in this petition, their employees' NLRA rights to choose between unionization and non-unionization free from state-imposed limitations will be vindicated.

**Machinists Preemption.**

85.     As enunciated in *Int'l Ass'n of Machinists & Aero. Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 96 S. Ct. 2548 (1976), what has become known as the *Machinists* preemption protects against state interference with policies implicated by the structure of the NLRA itself by preempting state law and state causes of action concerning conduct that Congress intended to be unregulated.  The imposition of meal time requirements on non-union hospitals but not on unionized hospitals penalizes hospitals and their employees who have chosen not to unionize.

86.     States are prohibited from passing laws that interfere with the workers' freedom to choose or not choose to join a union.  Section 7 of the NLRA protects the rights of employees to "form, join, or assist labor organizations * * * and * * * to refrain from any or all of such activities * * *."  29 U.S.C. § 157.  Section 8 of the NLRA prohibits employers and labor organizations from interfering with employee rights protected under Section 7 of the statute.  29 U.S.C. § 158.  These provisions protect a worker's right freely to choose between unionization and non-unionization.

87.     A rule that discriminates between union and non-union employees imposing restrictions as to when employees may take meal breaks creates an incentive to join or not to join a union and therefore burdens the employees' NLRA rights to choose freely between the two options.  Congress intended to leave an employee's choice to join or not join a union free from state interference.  State laws burdening that choice must be preempted under the *Machinists* doctrine.

88.     The provision of OAR 839-020-0050(2)(d) that imposes narrow limits as to when meal periods are to be taken, particularly as to employees working shifts of 12 hours or more, imposes an onerous burden.  When the meal timing rule is read together with the provision of OAR 839-020-0051(7) which permits unionized employers through collective bargaining to avoid those oppressive rules, the meal timing rule is preempted.

/ / /

Page 23 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

**Opt-out provision not narrowly tailored.**

89.    The opt-out provision of OAR 839-020-0050(7) is not a narrowly drawn or tailored opt-out provision because it allows any union employees covered by any collective bargaining agreement in any industry performing any type of work to opt out and change meal and rest periods in numerous ways, including but not limited to:

- Changing the time when the meal period and rest period are taken;

- Changing the length of the meal period or rest period;

- Increasing the number of meal periods;

- Increasing the number of rest periods;

- Combining meal periods and rest periods; and

- Changing the number of meal periods or rest periods that may be taken in a set period of time.

90.    While some judicial decisions suggest that provisions may be narrowly drawn to avoid preemption, the provisions at issue in this case are outside the scope of such permissible opt-out provisions because the opt-out provision of OAR 839-020-0050(7) is not narrowly tailored and therefore Oregon's administrative rule allowing unions to opt-out is preempted by federal law.

91.    In addition, the opt-out provision of OAR 839-020-0050(7) is not narrowly tailored because it does not consider the operational realities and challenges of the workplace that arise in particular industries (such as healthcare and emergency response).  Similarly, it does not consider the particular categories of workers.  For example, nurses are subject to licensing requirements and must treat patients.  Emergencies and procedures such as surgeries and childbirth do not allow for interruptions.  Further, the broad opt-out provision does not consider impediments to taking meal periods at particular times without consideration of complicated factors such as the length of the employee's shift and a variety of other factors that may occur in certain industries such as healthcare but not in other industries such as basic manufacturing.

/ / /

Page 24 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

**Requirements regarding timing of meals do not set minimum labor standards.**

92.    In *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 758, 105 S. Ct. 2380 (1985) and *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S. Ct. 2211 (1987), the Court held that in certain circumstances the NLRA does not preempt a state law regulation which "establishes a minimum labor standard that does not intrude upon the collective bargaining process." *Fort Halifax*, 482 U.S. at 7l; *Metro. Life*, 471 U.S. at 744-745.  The meal timing component of OAR 839-020-0050(2)(d) does not prescribe a minimum labor standard such as requiring that a meal period be not less than 30 continuous minutes (OAR 839-020-0050(2)(a)) or requiring that an employee who is not relieved of all duties for 30 continuous minutes must be paid for the entire 30-minute meal period (OAR 839-020-0050) or providing that an employee who has worked a specific number of hours shall be entitled to a specific number of meal periods (OAR 839-020-0050(2)(c) and Appendix A to OAR 839-020-0050).

93.    The BOLI rule restricting the time when meals must be taken does not set a minimum labor standard.  The meal timing provision differs in degree and kind from minimum standards such as allowing a 30-minute break.  Instead, it prescribes rigid requirements as to the exact short two hour time period when healthcare workers working 12 hours or more must take their meal breaks. The requirement imposes an undue hardship, endangers health of workers and their patients, and places nurses at risk of violating their nursing standards and potentially losing their licenses.

94.    BOLI's rule regarding the timing of when meal breaks must be taken can be entirely avoided by a unionized employer through adoption of a CBA.  However, that option is not available to non-unionized employers and their employees.

**Obstacles to full and complete compliance with meal timing rule.**

95.    OAR 839-020-0050(2)(d) creates unnecessary obstacles that make it difficult, if not impossible, to attain full and complete compliance with the meal time rigid rules.  Scheduling nurses' meal breaks during the narrow time periods set forth in the regulations requires Plaintiff hospitals to choose from unpalatable options, all of which would significantly affect services and

Page 25 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

the cost of providing those services.  The mandated meal break timing rules exacerbate the enormous complexities of scheduling and managing patient care.

96.    The opportunity and degree of complying with meal period timing regulations is extremely difficult for hospital workers.  The mandated meal period timing rules significantly interfere with the complex choreography of nurses providing patient care in numerous circumstances.  BOLI, in its investigation of Plaintiff hospitals, targeted departments which presented the greatest challenges – the Emergency Department and the Labor and Delivery Department.  In many instances, particularly in these departments, it is extremely difficult, if not impossible, to comply with the Agency's rigid rules regarding the timing of when meal breaks must begin and end.  Saving lives, helping babies being born, and dealing with the sickest population in the state must take precedence over rigid and total compliance with BOLI's rules regarding when meal periods must be taken.  OAR 839-020-1020(1)(e) mandates consideration of the degree of difficulty to comply with regulations.  Depending upon the nature of the medical procedure, it may be necessary for nurses to work as members of a team or perform certain specialized procedures as a group.  Relieving nurses for meal breaks who are members of a team often presents special, if not unsurmountable, challenges.  "Impossibility" is a degree of difficulty, the consideration of which is mandated by the regulations.  In many circumstances it is difficult, if not physically impossible, to comply with BOLI meal period timing regulation without endangering the health of patients, putting the registered nurse at risk of discipline or loss of license, and requiring the nurse or healthcare provider to work an excessive number of hours (eight hours or more) without a meal break.  The difficulty of compliance is compounded by the fact that there is a national shortage of trained nurses, particularly in specialized areas such as nurses who render acute care, work in Emergency Departments, or help staff the Family Birthing Departments.

97.    The timing of care needs for particular patients cannot be changed or adjusted to meet requirements when meals must be taken.  Likewise, timed medications, procedures,

Page 26 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

preparation for procedures, and therapy treatments vary from patient to patient and may require adjustments based on conditions.

98.     Every patient handoff is a moment that can introduce risk.  A department could have several additional staff on hand and still not have the resources needed to meet the needs of a particular patient on any given day.

99.     Hiring additional nurses is not a solution.  Hiring additional nurses would present additional obstacles to rendering patient care and result in significant increased costs.  In particular cases, Plaintiff hospitals may need to hire two nurses to do the work of one.  Hiring additional nurses does not guarantee that relief nurses will have the specialized skills or certifications to relieve nurses who have that particular expertise.

100.    Forcing a nurse to take a meal break early in a 12-hour shift without having an opportunity to eat in the remaining seven or eight hours of the shift cannot be resolved by requiring employers to add a second 30-minute meal break later in the 12-hour shift.  Adding a second meal break would be costly and exacerbate scheduling issues and problems resulting from the need to identify qualified nurses to step in to relieve the nurses taking a second meal break.  Moreover, to the extent that nurses working 12-hour shifts were allowed to take two meal breaks during a 12-hour period, this would result in the nurses being at the job site for more than 12 hours.

**Meal period rules result in the loss of substantive rights of employees.**

101.    Employees at non-union hospitals who are denied the right to take breaks at flexible hours in the same manner as workers at union hospitals are denied substantive rights.  Employees' rights at Plaintiff hospitals have been adversely affected by rigid application of meal period timing regulations.  A registered nurse who is forced to take his or her meal break in the first one-third of a shift lasting 12 hours is deprived of substantive rights in contrast to unionized hospital staff.

**Plaintiffs are entitled to a declaratory judgment which will include injunctive relief.**

102.    Plaintiffs are entitled to a declaratory judgment and injunctive relief with respect to OAR 839-020-0050 for various reasons, including the following:

Page 27 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

a. The BOLI regulations regarding meal periods and breaks frustrate the purpose of Section 7 rights set forth in the NLRA and therefore are void under the theory of obstacle preemption.

b. The BOLI regulations relating to meals and breaks are preempted by direct operation of the supremacy clause of the United States Constitution (Article VI, Clause 2) because the regulations are preempted and protected by the NLRA.

c. Oregon's meal and break regulations frustrates the purpose of the NLRA and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

d. The opt-out provision of OAR 839-020-0050(7) is not a narrowly drawn op-out provision because it allows any employees covered by a CBA in any industry performing any type of work and working any length of shift to modify the Oregon meal and rest periods rules in numerous ways.

e.  The meal timing rules are highly restrictive and do not provide a minimum labor standard.

f. Distinguishing hospitals on the basis of union status is improper.  The legislature's and the Agency's responsibilities require them to make meaningful safety regulations and not to favor union over non-union status.  For the Agency to draw a distinction between employers based solely upon the presence of a labor organization and a CBA within the hospital is not meaningfully connected with the health rationale of ORS 653.261 and OAR 839-020-0050.

g. Plaintiffs are at peril of being assessed excessive fines for meal period timing violations.

h. Plaintiffs are not aware of any instances in which BOLI has asserted that nurses governed by CBAs who take breaks and meal periods at flexible times are subject to violations and fines.

Page 28 – COMPLAINT

i.   When Plaintiffs' employees spoke with representatives of BOLI regarding the unfairness of this double standard, they were left with the understanding that the employees should join a union.

103.   Although Plaintiffs submit that they have not violated any statute or regulation regarding timing of meal periods, Plaintiffs wish to avoid being subject to notices of intent to assess penalties of millions of dollars, avoid incurring threats of further investigations, audits, and notices of future NOIs, and avoid resulting litigation.

104.   There is an actual and substantial controversy between Plaintiffs and Defendants. BOLI has demonstrated that it is seeking millions of dollars in fines and has escalated the amount of fines sought and has threatened that Plaintiffs in the future will face additional NOIs seeking additional millions of dollars in fines.

**(Count Two:  Declaratory Judgment that BOLI Regulation is Invalid For Failure to Follow Applicable Rulemaking Requirements)**

105.   Plaintiffs reallege and incorporate herein by reference paragraphs 1-71.

106.   OAR 839-020-0050 is invalid as its application here is premised on an improper denial of a proposed amendment.

107.   BOLI's denial of the proposed amendment to OAR 839-020-0050 submitted by Plaintiffs on March 22, 2021 was invalid, as BOLI failed to comply with applicable rulemaking procedures.

108.   BOLI has adopted the procedures described in ORS 183.390 for review of petitions requesting adoption or amendment of rules, which states that:

> (3) In reviewing a petition subject to subsection (2) of this section, the agency shall consider:
> (a)   The continued need for the rule;
> (b)   The nature of complaints or comments received concerning the rule from the public;
> (c)   The complexity of the rule;

/ / /

Page 29 – COMPLAINT

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

(d) The extent to which the rule overlaps, duplicates or conflicts with other state rules or federal regulation and, to the extent feasible, with local government regulations;

(e) The degree to which technology, economic conditions or other factors have changed in the subject area affected by the rule; and

(f) The statutory citation or legal basis for the rule.

109.    In considering the proposed amendment to OAR 839-020-0050 submitted by Plaintiffs on March 22, 2021, BOLI failed to adequately consider the above described factors, in violation of its rulemaking procedures.  As described in more detail above there is not a continued need for the meal timing rule based upon preservation of the health of employees, the rule conflicts with nursing standards and changes in health care require much greater flexibility of timing of breaks.

110.    In addition, BOLI did not adequately consider the nature of the complaints or comments received concerning the proposed amendment. The vast majority of the comments submitted in opposition of the proposed amendment utilized a form that contained a uniform text, which on information and belief was provided by the Oregon Nurses Association, which as described above currently benefits from the ability to modify the standards set out in OAR 839-020-0050. Additionally, many of the stated reasons for opposition of the amendment were in fact arguments in favor of its adoption. For example, the ability of nurses during 12-hour shifts to take breaks at times so that they can best provide for patients and their families is better protected under the proposed amendment to OAR 839-020-0050.  The petition to amend OAR 839-020-0050 would allow nurses who work at Plaintiffs' hospitals to avoid scenarios that require the nurses to take meal breaks early in a 12-hour shift and then force the nurses to work eight hours or more with no break.

111.    Also, the Agency's failure to comply with the applicable rulemaking procedures has substantially prejudiced the interests of Plaintiffs.

112.    The Agency improperly acted for discriminatory and political purposes when it rejected Plaintiff's proposed Amendment which would have corrected the illegality of the "union-only" benefit.

Page 30 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

113.    This Court should declare OAR 839-020-0050 as invalid here for failing to comply with the applicable rulemaking procedures.

### (Count Three:  Declaratory Judgment that BOLI Rule is Invalid as Exceeding the Relevant Statutory Authority)

114.    Plaintiffs reallege and incorporate herein by reference paragraphs 1-71.

115.    OAR 839-020-0050 is invalid as it exceeds the scope of the Agency's statutory grant of authority; the rule imposes requirements that exceed the statute and conflicts with the clearly stated statutory policy.

116.    ORS 653.261 provides that the BOLI Commissioner may adopt rules as may be "necessary for the preservation of the health of employees." BOLI has promulgated OAR 839-020-0050, which provides that a meal break during a 12-hour shift must be taken in the period after the conclusion of the third hour worked and completed prior to the commencement of the sixth hour worked.  BOLI's authority to adopt rules "necessary for the preservation of the health of employees" does not grant unlimited discretion to dictate a minute-by-minute schedule for adults to eat their lunch.

117.    BOLI and its employees lack training and expertise to evaluate and adopt rules that are "necessary for the preservation of the health of employees," particularly with regard to determining when employees who are working long shifts (up to 13 hours and 59 minutes) shall take a meal break.

118.    BOLI's application of OAR 839-020-0050 goes beyond what is "necessary for the preservation of the health of employees," and thus exceeds its statutory grant of authority and conflicts with the stated policy goals of ORS 653.261. The application of BOLI's rule results in situations in which the health of employees is not preserved, and is in fact detrimental to the health of employees. Employees working 12-hour shifts are often deprived of the right to take a meal break midway through their 12-hour shifts due OAR 839-020-0050, and once they have taken their meal break must work the remainder of their shift (up to eight or more hours) with no meal break. This is

Page 31 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

in clear contradiction to the stated purpose of the enabling statute at ORS 653.261 that the health of employees be protected and preserved.

119.    Furthermore, OAR 839-020-0050(7) exceeds the statutory grant of authority contained in ORS 653.261 when it states that the rule "may be modified by the terms of a collective bargaining agreement if the provisions of the collective bargaining agreement entered into * * * specifically described rules concerning meal periods and rest periods."

120.    This Court should enter a declaratory judgment declaring OAR 839-020-0050 as invalid for exceeding statutory authority of the Agency.

**(Count Four:  Declaratory Judgment that BOLI Rule is Invalid Because it Conflicts with Clearly Stated Rules Governing Hospitals and Nurses)**

121.    Plaintiffs reallege and incorporate herein by reference paragraphs 1-71.

122.    BOLI's rule regarding timing of meal periods conflicts with other state rules regarding nursing practices.

123.    In Oregon the practice of nursing is governed by the Oregon Nurse Practice Act (ORS Chapter 678).   ORS 678.010-678.410 provides detailed statutory rules and procedures regarding the practice of nursing.   The statute provides a nurse's license may be revoked or suspended for various causes, including but not limited to:

> (b) Gross incompetence or gross negligence of the licensee in the practice of nursing at the level for which the licensee is licensed.
> (f) Conduct derogatory to the standards of nursing.
> (g) Violation of any provision of ORS 678.010 to 678.448 or rules adopted thereunder.
> (ORS 678.111(1)(b), (f), and (g).)

124.    The statute authorizes the Oregon Board of Nursing to adopt rules regarding the provision of nursing care and various tasks relating to the administration of medication. (ORS 678.150(8).) The Oregon Administrative Rules promulgated by the Oregon State Board of Nursing are set forth in OAR Chapter 851.

/ / /

Page 32 – COMPLAINT

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

125.    Conduct that adversely affects the health, safety, and welfare of the public, fails to conform to legal nursing standards, or fails to conform to accepted standards of the nursing profession is conduct derogatory to the standards of nursing and can result in discipline of a nurse up to loss of license.  Such conduct includes, but is not limited to:

- Failing to conform to the essential standards of acceptable and prevailing nursing practice. ***;
- Performing acts beyond the authorized scope or beyond the level of nursing for which the individual is licensed.

(OAR 851-045-0070(2)(a) and (b).)

- Failing to take action to preserve or promote the client's safety based on nursing assessment and judgment;
- Leaving or failing to complete any nursing assignment, including a supervisory assignment, without notifying the appropriate personnel and confirming that nursing assignment responsibilities will be met.

(OAR 851-045-0070(3)(b) and (i).)

- Failing to communicate information regarding the client's status to members of the health care team in an ongoing and timely manner as appropriate to the context of care; or
- Failing to communicate information regarding the client's status to other individuals who are authorized to receive information and have a need to know.

(OAR 851-045-0070(4)(f) and (g).)

- Conduct related to other federal or state statute or rule violations:
- Neglecting a client.

(OAR 851-045-0070(8)(e).)

126.    Nurses must make medical judgments as to whether or not it is safe for a nurse to leave a patient to take a meal break and whether taking a mandated meal break could result in a breakdown of communications regarding a patient's status with other members of a health care team.

127.    Civil penalties may be imposed up to $5,000 if a nurse fails to comply with the rules regarding the standards and scope of practice for licensed registered nurses.    (OAR 851-045-0100(2)(i) and (j).)

Page 33 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

128.    "Imposition of a civil penalty does not preclude disciplinary sanction against the nurse's license." (OAR 851-045-0100(1).)  Nurses who take mandatory meal breaks but engage in conduct that adversely affects the health, safety, and welfare of patients or neglect the patients are subject to disciplinary action, including suspension or revocation of their license.    (OAR 851-045-0070(8)(e); ORS 678.111(1).)

129.    BOLI's application of OAR 839-020-0050 conflicts with the multitude of regulations properly promulgated by the Oregon State Board of Nursing under its authority granted by ORS 678.150. The specific terms of ORS 678.150 and the regulations promulgated thereunder clearly take precedent over the general grant of authority to BOLI under ORS 653.261 and its attempted application of OAR 839-020-0050. BOLI's application of OAR 839-020-0050 in the face of the specific regulations promulgated by the Oregon State Board of Nursing departs from the legal standard expressed and implied in ORS 653.261 with respect to nurses, and thus exceeds its statutory authority.

130.    BOLI meal time rules infringe upon the detailed regulations governing the practice of nursing.  The BOLI meal time rules were written and are enforced by government employees with no training or special knowledge or expertise about health care.  Plaintiffs are not aware of any consideration that was given by BOLI at the time it adopted OAR 839-020-0050(2)(d) as to whether different rules should apply to healthcare workers.

131.    The Court should enter a declaratory judgment declaring OAR 839-020-0050 as invalid because it conflicts with detailed regulations governing the practice of nursing and interferes with more specific regulations.

### (Count Five: Declaratory Judgment That BOLI Rule is Invalid Because of Critical Healthcare Emergencies)

132.    Plaintiffs reallege and incorporate herein by reference paragraphs 1-71.

/ / /

/ / /

Page 34 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

133.    Because OAR 839-020-0050, as drafted and applied, fails to take into account critical healthcare needs during a public health emergency such as the present pandemic, the rule should be declared invalid.

134.    In order to permit the Court to provide full consideration to this complaint, Plaintiffs ask the Court to stay enforcement of OAR 839-020-0050 during the pendency of the Covid-related public health emergency and national shortage of healthcare workers.

### SECOND CLAIM FOR RELIEF

**(Violation of Section 1983; Deprivation of Civil Rights)**

**(Count One: Section 1983 Violation: Deputy Commissioner Deprived
Plaintiffs' Employees of Their First Amendment Rights; Actions of Deputy Commissioner
Binding Upon Commissioner and BOLI)**

135.    Plaintiffs reallege and incorporate herein by reference paragraphs 1-71.

136.    This Court has jurisdiction over Plaintiffs' claim for violation of civil rights under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331, as this matter arises under the constitution and laws of the United States.

137.    The First Amendment to the United States Constitution guarantees the right to comment on the actions of governmental officials, to petition the government for redress of grievances, and to access courts.

138.    This Court has personal jurisdiction over the individual defendants because they reside within the state of Oregon and have sufficient contacts with the state of Oregon.

139.    BOLI Deputy Commissioner Shepard was visited by a group of nurses working for Plaintiffs. They wished to bring to his attention the burden that BOLI's rules had on employees and raise issues of private and public concern. The purpose for the employees seeking a meeting and conducting a meeting with Shepard was to seek information about how to address a change in the meal timing rules and constraints. In other words, they were petitioning for information to assist

Page 35 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

them in how best to change working conditions that they saw as contrary to their ability to do their job as required by their job description and their licenses.

140.    Acting under color of state law, Defendant Deputy Commissioner Shepard interfered with Plaintiffs' employees in their exercise of their First Amendment right by, among other things, providing erroneous and incomplete information and leaving Plaintiffs' employees with the impression that they must join a union in order to address their concerns.

141.    Plaintiffs have standing to assert the employees' rights.  There is little risk of unnecessary litigation of third-party rights.  Although they are not named plaintiffs in this case, the employees sought, as a group, to petition for redress of the grievances.  If Plaintiffs succeed in asserting this claim on behalf of its employees, its employees' rights will be vindicated.  The employees' enjoyment of their rights is inextricably bound up with Plaintiffs' course of action.  The nature of the relationship between Plaintiffs and its employees support Plaintiffs' ability to adequately represent its employees' interests.  Plaintiffs can be an effective proponent of their employees.  One interest common to Plaintiffs and their employees is their mutual desire not to have the state dictate the collective bargaining status of employees.  Because Plaintiffs' interest is sufficiently aligned with its employees on this issue, Plaintiffs are an effective advocate of its employees' rights.

142.    The federal and state constitutions promise the protection of the right to petition the government for redress of grievances.  Its protection is stated in the First Amendment, applicable to the states under the Fourteenth Amendment, and is repeated in Oregon's Constitution.  While the government is free to disregard petitions, it is not free to respond to such petitions by deliberately providing false or misleading information, as did BOLI Deputy Commissioner Shepard.

143.    The right of access to the Courts is subsumed under the First Amendment right to petition the government for redress of grievances.

144.    Deliberate interference or retaliation by state actors against an individual or a group of individuals seeking to exercise the right to petition for grievances is actionable under

Page 36 – COMPLAINT

Section 1983.  The intentional obstruction of the right to redress is "precisely the sort of oppression that * * * Section 1983 is intended to remedy."

145.    Acting under the color of state law, Defendant Shepard interfered with Plaintiffs' employees in the exercise of their First Amendment rights by, among other things, providing erroneous and incomplete information and creating the impression with Plaintiffs' employees that they should join a union in order to address their concerns.

146.    BOLI Deputy Labor Commissioner Shepard used his position of authority to restrain and interfere with the free choice of private sector employees by limiting the information he provided employees such that they were left with the firm understanding that the only way to avoid the operation of his Agency's meal and rest periods was for them to join a union.  States are prohibited from passing laws or taking action that interferes with a worker's freedom to choose or not choose to join a union.  Section 7 of the NLRA protects the rights of employees to "form, join, or assist labor organizations * * * and * * * to refrain from any or all of such activities * * *."  29 U.S.C. § 157.  Section 8 of the NLRA prohibits employers and labor organizations from interfering with employee rights protected under Section 7 of the statute.  29 U.S.C. § 158.

147.    Defendant Shepard's statements were at the very least misleading and impinged upon employees' rights protected by the NLRA.

148.    BOLI Deputy Commissioner Shepard had a responsibility as a public official to provide complete and accurate information and failed to do so by providing misleading information.  Shepard's statement, which led employees to believe that they had no reasonable choice other than to join a union, was false and was intended to interfere with, restrain, or coerce them in the exercise of their federally protected rights.  At a minimum, Shepard had an obligation to tell them that there were ways of avoiding the undesirable consequences of the Agency's rule, including participating in the petition process to seek a rule amendment or seeking a legislative change or by requesting a status change to exempt.

/ / /

Page 37 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

149.    As Deputy Commissioner Shepard had a powerful position with the Bureau of Labor and Industries and was in effect a second in command in the Agency, the employees who were seeking redress for grievances were engaged in collective activity.  Shepard was acting under the color of state law in the exercise of his authority as a public official.

150.    Plaintiffs' employees' protected activity, as alleged above, was an exercise of their right to free speech as guaranteed by the First and Fourteenth Amendments of the U.S. Constitution.

151.    Defendant Shepard acted to intentionally violate the employees' First Amendment rights.   Alternatively, Defendant Shepard acted with deliberate indifference to Plaintiffs' constitutional rights.

152.    The Fourteenth Amendment to the United States Constitution provides that no state shall deprive any person of life, liberty, or property without due process of law.

153.    For the foregoing reasons, Defendant Shepard's conduct violates 42 U.S.C.§ 1983.

154.    Shepard's actions are binding upon BOLI Commissioner Val Hoyle and BOLI.

155.    As a result of Defendants' actions against Plaintiffs' employees, those individuals have been deprived of their First Amendment rights, and, as a consequence, those individuals have suffered injury and are entitled to damages.

**(Count Two: Violation of Section 1983: Violation of**
**Fourteenth Amendment Equal Protection Rights of Plaintiffs' Employees)**

**(Violation of Equal Protection)**

156.    Plaintiffs reallege and incorporate herein by reference paragraphs 1-71.

157.    This is a claim for violation of the Fourteenth Amendment equal protection rights of Plaintiffs' employees pursuant to 42 U.S.C. § 1983.

158.    Plaintiffs allege that Defendants engaged in class-based discriminatory treatment of a distinct group of Plaintiffs' employees.

/ / /

/ / /

Page 38 – COMPLAINT

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

159.    Plaintiffs are able to demonstrate a constitutional violation pursuant to the enforcement of the timing of meal period rules as to Plaintiffs' employees and the non-enforcement of those same rules as to unionized employees working for unionized hospitals.

160.    The individuals who committed this constitutional tort were officials who exercised final policymaking authority at the Oregon Bureau of Labor and Industries – BOLI Commissioner Hoyle and BOLI Deputy Labor Commissioner Shepard.

161.    Plaintiff hospitals have standing to assert their employees' equal protection rights on behalf of their employees (third parties) because the third parties' enjoyment of those rights to be treated equally is inextricably bound up with the activities that Plaintiff hospitals wish to pursue. There is little risk of unnecessary litigation of third parties because Plaintiffs' employees seek to have the same flexibility in scheduling meal breaks as unionized employees, which is a view shared by Plaintiff hospitals.  One important shared interest is the mutual desire of the hospitals and their employees not to have the state dictate collective bargaining status of Plaintiff hospitals and their employees.  The interests of Plaintiffs and their employees are sufficiently aligned on this issue and Plaintiff hospitals are an adequate advocate of their employees' right to equal protection.

162.    Defendants violated the Fourteenth Amendment equal protection rights of Plaintiffs' employees by establishing different classes for purposes of administering rules regarding timing of meal breaks.

163.    Plaintiffs' employees consist of a class of employees who were required to comply with the restrictive rules of the Oregon Bureau of Labor and Industries with regard to the timing of meal periods.

164.    Plaintiffs' employees were treated differently from similarly situated employees employed by other hospitals and healthcare institutions who are covered by CBAs and as a result that class of unionized employees were not required to comply with the rules regarding timing of meal periods.

/ / /

Page 39 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

165.    Plaintiffs' employees who were required to comply with the meal period requirements were treated less favorably than unionized employees working for union hospitals who were not required to comply with the Agency's meal period timing rules.

166.    Defendants violated Plaintiffs' employees' Equal Protection rights without a rational basis.

167.    As a result of Defendants treating Plaintiffs' employees arbitrarily different than similarly situated employees working for unionized employers, the Plaintiffs' employees' basic rights to equal treatment were violated.

168.    The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of the statute, express terms of a regulation, or by improper application and execution through duly constituted agents.

169.    BOLI's demand that Plaintiffs' employees comply with the rigid requirements of OAR 839-020-0050(2)(d), while at the same time allowing unionized employees at similarly situated hospitals to avoid those requirements, is irrational and arbitrary and violates the Equal Protection clause.

**Request for speedy hearing; expedited discovery; stay of Agency action.**

170.    Pursuant to Fed. R. Civ. P. 57's provision for a "speedy hearing," Plaintiffs seek expedited consideration of all issues raised by this Complaint, including as necessary expedited discovery and expedited consideration of motions and scheduling of hearings.

171.    In the interim, Plaintiffs seek a stay pursuant to 5 U.S.C. § 702 to ensure that BOLI takes no further action against Plaintiffs pending a ruling on Plaintiffs' claims.

172.    After BOLI's initial NOIs seeking penalties in excess of $5 million, following withdrawal of those NOIs, BOLI has sought penalties in excess of $8 million.  Additional investigations and audits are pending and it is likely that BOLI will set in motion further investigations, audits, and NOIs.

Page 40 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

173.    In the absence of the Court entering a stay against BOLI conducting additional investigations, audits, and NOIs, Plaintiffs' operations are likely to be severely disrupted, causing Plaintiffs to suffer irreparable harm by BOLI's efforts to enforce current meal timing rulings on a selective basis against Plaintiffs.

174.    The Oregon regulations strictly imposing limits on when meal periods may be taken frustrate the purpose of Section 7 rights set forth in the NLRA and therefore are void under the theory of obstacle preemption.

175.    This Court should declare OAR 839-020-0050(2)(d) as invalid because it is preempted by the NLRA.

WHEREFORE, Plaintiffs pray for judgment as follows:

**First Claim for Relief (Declaratory Judgment):**

**Count One: Declaratory judgment that BOLI meal timing regulation is preempted:**

That the Court declare that OAR 839-020-0050(2)(d) and (7) imposing stringent meal time requirements on non-union employers but allowing similarly situated union employers to modify meal time rules is invalid because it is preempted by the National Labor Relations Act.

**Count Two: Declaratory judgment that BOLI regulation is invalid for failure to follow applicable rulemaking requirements:**

That the Court declare that OAR 839-020-0050 is invalid because, in considering the proposed amendment of OAR 839-020-0050 submitted on behalf of Plaintiffs on March 22, 2021, BOLI and BOLI Commissioner Val Hoyle failed to adequately consider factors required to be considered when there is a petition requesting adoption or amendment of rules described in ORS 183.390 and as a consequence BOLI and its Commissioner failed to follow applicable rulemaking procedures.

/ / /

/ / /

/ / /

Page 41 – COMPLAINT

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

**Count Three: Declaratory judgment that BOLI rule is invalid as exceeding the relevant statutory authority:**

That OAR 839-020-0050 be declared invalid because OAR 839-020-0050 exceeds the statutory authority.

**Count Four: Declaratory judgment that BOLI rule is invalid because it conflicts with rules regarding practice of nursing:**

That OAR 839-020-0050 be declared invalid because it conflicts with clearly stated and detailed rules regarding the governing of nursing.

**Count Five: Declaratory judgment that BOLI rule is invalid because of critical healthcare emergencies:**

That OAR 839-020-0050 be declared invalid because as written or applied it arbitrarily and capriciously fails to take into account public health emergencies.  In order to permit the Court to provide full consideration to the complaint, Plaintiffs ask the Court to stay enforcement of OAR 839-020-0050 during the pendency of the Covid-related public health emergency and national shortage of healthcare workers.

**Second Claim for Relief (Violation of Section 1983):**

**Count One: Section 1983 violation of employees' First Amendment rights petitioning BOLI regarding meal period timing rules:**

That the Court find that BOLI Deputy Commissioner Duke Shepard, on behalf of BOLI Commissioner Val Hoyle and BOLI, violated Section 1983 because Shepard, while acting under color of state law, interfered with and misled Plaintiffs' employees who sought to exercise their First Amendment rights regarding expressing concerns and seeking information over meal time rules and methods for changing those rules.

**Count Two: Section 1983 violates equal protection clause:**

That the Court find that OAR 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(2)(d) and (7), as written and as applied, violate the equal protection clause of the United States Constitution.

*/ / /*

Page 42 – COMPLAINT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

**Speedy hearing; expected discovery; stay of Agency action:**

That the Court, pursuant to Fed. R. Civ. P. 57, enter an order providing for a "speedy hearing" of all issues raised, including expedited discovery, expedited consideration and ruling on motions, and expedited scheduling of a hearing on the merits.

That in the interim the Court enter a stay order pursuant to 5 U.S.C. § 702 to ensure that BOLI take no further action against Plaintiffs pending a ruling on Plaintiffs' claims.

**Other Relief.**

That the Court award such other relief as it deems just and equitable.


DATED this 18th day of April, 2022.

BARRAN LIEBMAN LLP


By *s/Paula A. Barran*
    Paula A. Barran, OSB No. 803974
    pbarran@barran.com
    Richard C. Hunt, OSB No. 680770
    rhunt@barran.com
    Attorneys for Plaintiffs


Page 43 – COMPLAINT

01073012.7

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212