ELLEN F. ROSENBLUM
Attorney General
BRIAN SIMMONDS MARSHALL  #196129
Senior Assistant Attorney General
ALEX C. JONES #213898
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Brian.S.Marshall@doj.state.or.us
         Alex.Jones@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LEGACY HEALTH; LEGACY GOOD SAMARITAN HOSPITAL AND MEDICAL CENTER; LEGACY MOUNT HOOD MEDICAL CENTER; LEGACY MERIDIAN PARK HOSPITAL dba LEGACY MERIDIAN PARK MEDICAL CENTER; and LEGACY EMANUEL HOSPITAL & HEALTH CENTER dba LEGACY EMANUEL MEDICAL CENTER, | Case No.  3:22-CV-00573-HZ<br><br>DEFENDANTS' MOTION TO DISMISS |
| Plaintiffs, | |
| v. | |
| VAL HOYLE, in her official capacity as Commissioner of the Oregon Bureau of Labor and Industries; DUKE SHEPARD, in his official capacity as Deputy Commissioner of the Oregon Bureau of Labor and Industries; and OREGON BUREAU OF LABOR AND INDUSTRIES, | |
| Defendants. | |

Page i

# TABLE OF CONTENTS

LR 7-1 CERTIFICATION ........................................................................................................... 1

MOTION .................................................................................................................................... 1

MEMORANDUM OF LAW ...................................................................................................... 1

    I.      INTRODUCTION ............................................................................................. 1

    II.    BACKGROUND ................................................................................................ 4

          A.     BOLI's Meal and Rest Break Rule ...................................................... 4

          B.     Legacy Employees' 2019 Meeting with BOLI's Deputy
                Commissioner .................................................................................... 4

          C.     BOLI's Pending Enforcement Actions ................................................ 5

          D.     Legacy's Challenge to the Rule in the Oregon Court of Appeals ............... 6

          E.     This Case .......................................................................................... 6

    III.   LEGAL STANDARDS ..................................................................................... 7

          A.     Fed. R. Civ. P. 12(b)(1) Standard ................................................... 7

          B.     Fed. R. Civ. P. 12(b)(6) Standard ................................................... 8

    IV.   ARGUMENT ................................................................................................... 8

          A.     The Eleventh Amendment Bars Claims Against BOLI ............................ 8

          B.     The Eleventh Amendment Bars Legacy's State Law Claims Under
                Pennhurst .......................................................................................... 9

          C.     This Court Must Abstain Under Younger in Deference to BOLI's
                Pending Enforcement Proceedings ..................................................... 9

          D.     Legacy's Federal Law Objections to BOLI's Regulations and
                Enforcement Fail as a Matter of Law ................................................ 14

                1.     The Equal Protection Claim is Meritless .................................. 15

                2.     The NLRA Preemption Claim is Meritless ............................... 17

                3.     The Conflict Preemption Claim is Meritless ............................ 20

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

E.     Legacy's Excessive Fines Claim is Unripe Because No Fines Have Been Imposed.................................................................................... 24

F.     Legacy's First Amendment Claim Should Be Dismissed......................... 28

1.     The Complaint Fails to State a First Amendment Claim............. 29

2.     Legacy Lacks Standing Because They Allege No Redressable Injury ........................................................................ 31

a.     Legacy does not allege it was injured by the Deputy Commissioner's meeting with its nurses. ......................... 31

b.     Legacy cannot seek prospective relief because it does not allege an ongoing or future injury. .................... 32

V.     CONCLUSION.................................................................................................. 34

APPENDIX: GROUNDS FOR DISMISSAL ............................................................... 35

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## TABLE OF AUTHORITIES

**Cases**

*1000 Friends of Oregon v. Land Conservation & Dev. Comm'n*, 39 Or. App. 55 (1979) .......... 16

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958 (9th Cir. 2016)...................... 23

*Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018)........................................................................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 9, 10, 36, 37

*Ass'n for Accessible Meds. v. Bonta*, No. 2:20-CV-01708-TLN-DB, 2022 WL 463313
(E.D. Cal. Feb. 15, 2022).......................................................................................................... 32

*Ass'n of Irritated Residents v. U.S. Envtl. Prot. Agency*, 10 F.4th 937 (9th Cir. 2021) .............. 30

*Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613 (9th Cir. 2003) ........................................... 12, 14

*Bator v. Hawai'i*, 39 F.3d 1021 (9th Cir. 1994) ........................................................................... 21

*Bayer v. Neiman Marcus Grp.*, 861 F.3d 853 (9th Cir. 2017)................................................. 39, 40

*Beaver Creek Coop. Tel. Co. v. PUC*, 182 Or. App. 559 (2002).................................................. 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 10

*Boardman v. Inslee*, 978 F.3d 1092 (9th Cir. 2020) ..................................................................... 20

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011) ........................................................ 36

*Broughton Lumber Co. v. Columbia River Gorge Comm'n*, 975 F.2d 616 (9th Cir. 1992).......... 9

*Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002 (9th Cir. 2011) ................................. 39

*CDK Global LLC v. Brnovich*, 16 F.4th 1266 (9th Cir. 2021) ..................................................... 26

*Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582 (2011) ................................................. 27

*Cheffer v. Reno,* 55 F.3d 1517 (11th Cir. 1995) ........................................................................... 33

*City of Chicago v. Equte LLC*, No. 21 C 518, 2022 WL 2132630 (N.D. Ill. June 14,
2022)........................................................................................................................................... 33

*City of New Orleans v. Dukes*, 427 U.S. 297 (1976) .................................................................... 19

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .................................................................... 30

*Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960 (9th Cir. 2007) ........................................ 9, 35

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)............................................... 40

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997) .............................. 29

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Donnell v. Lee Cty. Port Auth.*, 509 F. App'x 903 (11th Cir. 2013)........................................ 19, 21

*Duffner v. City of St. Peters, Missouri*, 930 F.3d 973 (8th Cir. 2019).......................................... 33

*Engquist v. Or. Dep't of Agric.*, 478 F.3d 985 (9th Cir. 2007)..................................................... 31

*Far W. Servs., Inc. v. Livingston*, 156 Cal. App. 3d 931 (Cal. Ct. App. 1984) ........................... 21

*Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987)............................................ 22, 23, 26

*Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846 (9th Cir. 1999) ....................................... 10

*Gibson v. Schmidt*, 522 F. Supp. 3d 804 (D. Or. 2021) ................................................................ 17

*Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004) ...................................................... 13, 14, 17

*Green v. Mansour*, 474 U.S. 64 (1985)......................................................................................... 11

*Hale v. State of Ariz.*, 967 F.2d 1356 (9th Cir. 1992), *on reh'g*, 993 F.2d 1387 (9th Cir. 1993) ............................................................................................................................................ 11

*Heller v. Doe*, 509 U.S. 312 (1993) ........................................................................................ 19, 20

*Herrera v. City of Palmdale*, 918 F.3d 1037 (9th Cir. 2019) ...................................................... 16

*Hewitt v. Helms*, 482 U.S. 755 (1987) .......................................................................................... 40

*Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985) ....................... 26

*Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979) ......................................................................... 27

*Hong Kong Supermarket v. Kizer*, 830 F.2d 1078 (9th Cir. 1987) .............................................. 38

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ............................................................................ 17

*Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020) ........................... 38

*Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132 (1976)............................................................................................................................. 22

*Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879 (9th Cir. 2018)................... 3, 22, 23, 25, 26

*Johnson v. Brown*, 567 F. Supp. 3d 1230 (D. Or. 2021).............................................................. 11

*Kelly v. State*, 525 N.W.2d 409 (Iowa 1994) ............................................................................... 21

*Knox v. Brnovich*, 907 F.3d 1167 (9th Cir. 2018)........................................................................ 26

*Laird v. Tatum*, 408 U.S. 1 (1972) ............................................................................................... 38

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) ........................................................................... 23, 24

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......................................................................... 39

Page v

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Marshall v. W. Grain Co.*, 838 F.2d 1165 (11th Cir. 1988) .................................................. 19, 21

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ........................................................ 8

*Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010) ...................................................... 40

*McCollum v. Roberts*, 17 F.3d 1219 (9th Cir. 1994) ........................................................... 23

*Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985) ............................................ 22, 23, 24

*MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106 (9th Cir. 2020) .......................................... 27

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) .................. 12, 17

*Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548 (8th Cir. 2018)..................................... 15

*N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405 (1973) ................................................ 28

*Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716 (9th Cir. 2017)................................. 13

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528 (9th
    Cir. 2019).................................................................................................................. 8, 9

*Nw. Pub. Commc'ns Council v. Oregon Pub. Util. Comm'n*, 805 F. Supp. 2d 1058 (D.
    Or. 2011).................................................................................................................... 16

*O'Keefe v. Van Boening*, 82 F.3d 322 (9th Cir. 1996)........................................................... 36, 37

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986)................ 14, 15

*OSU Student All. v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ...................................................... 36

*Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990) ........................................ 25

*Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982) .................................................................. 36

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................................ 10

*Pena v. Gardner*, 976 F.2d 469 (9th Cir. 1992)...................................................................... 2

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ...................................... 2, 10, 11

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)...................................................................... 16

*Perez v. Ledesma*, 401 U.S. 82 (1971).................................................................................... 17

*Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644 (2003) ............................................ 28

*Pimentel v. City of Los Angeles*, 974 F.3d 917 (9th Cir. 2020) ............................................. 32

*Place v. City of Eugene*, Civ. No. 06-6160-HO, 2008 WL 442137 (D. Or. Feb. 13,
    2008)......................................................................................................................... 21

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876 (9th Cir. 2011) ..................... 12, 14

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754 (9th Cir. 2014) ...... 12, 13, 25

*Real Estate Exch., Inc. v. Brown*, No. 3:20-CV-02075-HZ, 2021 WL 5855660 (D. Or. Dec. 9, 2021) ....................................................................................................................... 2

*Rodriguez v. Newsom*, 974 F.3d 998 (9th Cir. 2020) .................................................... 36

*Sacramento Cty. Retired Emps. Ass'n v. County of Sacramento*, 975 F. Supp. 2d 1150 (E.D. Cal. 2013) ..................................................................................................... 21

*Samuels v. Mackell*, 401 U.S. 66 (1971) .................................................................. 17

*San Francisco Tech., Inc. v. Dial Corp.*, No. 5:10-CV-04986-JF/PSG, 2011 WL 941152 (N.D. Cal. Mar. 17, 2011) ......................................................................................... 34

*Schwartzmiller v. Roberts*, Civ. No. 93-1276-FR, 1994 WL 48967 (D. Or. Feb. 11, 1994) ....................................................................................................................... 14

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015) ..................................... 15

*Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463 (1979) ........................ 36

*Spencer v. Kemna*, 523 U.S. 1 (1998) ...................................................................... 9

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................. 8, 30, 37, 38

*Spoklie v. Montana*, 411 F.3d 1051 (9th Cir. 2005) ................................................... 11

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ................................................ 13

*Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187 (9th Cir. 1987) ........................... 9

*Topa Equities, Ltd. v. City of Los Angeles*, 342 F.3d 1065 (9th Cir. 2003) .................... 27

*Twitter, Inc. v. Paxton*, 26 F.4th 1119 (9th Cir. 2022) .......................................... 30, 31

*United States v. Ayala-Bello*, 995 F.3d 710 (9th Cir. 2021) ........................................ 19

*United States v. Bajakajian*, 524 U.S. 321 (1998) ..................................................... 32

*United States v. Blackman,* 746 F.3d 137 (4th Cir. 2014) ........................................... 33

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ...................................... 26, 27

*United States v. Talebnejad*, 460 F.3d 563 (4th Cir. 2006) ......................................... 33

*Viceroy Gold Corp. v. Aubry*, 75 F.3d 482 (9th Cir. 1996) ............................ 2, 19, 20, 23, 24

*Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244 (D. Or. 2013) ............................. 10

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) .............................................. 10

Page vii

*Wyeth v. Levine*, 555 U.S. 555 (2009) ............................................................................ 3, 26, 29

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................................................... 12

## Statutes

ORS 183.400 ....................................................................................................................... 13

ORS 183.482 ....................................................................................................................... 13

ORS 653.256 ......................................................................................................................... 5

ORS 653.261 .................................................................................................................... 4, 14

## United States Code

42 U.S.C. § 1396-1 ............................................................................................................. 24

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 8

OAR 839-020-0050 .......................................................................................................... 4, 19

OAR 839-020-0050(1) .......................................................................................................... 21

OAR 839-020-0050(2) ...................................................................................................... 4, 17

OAR 839-020-0050(6) ........................................................................................................... 4

OAR 839-020-0050(7) ............................................................................................ 4, 14, 15, 17

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LR 7-1 CERTIFICATION

Counsel for the Defendants conferred by videoconference and telephone with counsel for Plaintiffs about the subject of this motion, but they could not resolve their dispute.

## MOTION

Defendants Val Hoyle, Duke Shepard, and Oregon Bureau of Labor and Industries (collectively, "BOLI") move to dismiss the First Amended Complaint ("Complaint" or "FAC") in its entirety under Rule 12(b)(1) and 12(b)(6). This motion is supported by the following Memorandum of Law, the First Amended Complaint (ECF 13), the Declarations of Duke Shepard and Adam Jeffries and their attached exhibits, and the other papers filed in this case. The specific grounds for dismissal of each count of the Complaint are identified on page 35 in the appendix to the memorandum of law.

## MEMORANDUM OF LAW

## I.     INTRODUCTION

The case seeks to challenge the Oregon Bureau of Labor and Industries' ongoing effort to enforce its meal and rest break rule against four Plaintiff hospitals.[1] The hospitals and their parent, Legacy Health, (collectively, "Legacy") seek to assert a panoply of federal and state defenses to administrative enforcement actions that must be raised in the ongoing state proceedings and cannot be adjudicated by this Court. The remaining allegation—that BOLI's Deputy Commissioner gave Legacy's employees "erroneous and incomplete information," FAC ¶ 185— neither states a First Amendment claim nor threatens Legacy with any actual injury. The First Amended Complaint therefore must be dismissed in its entirety.

First, Legacy's claims against the Bureau of Labor and Industries, a state agency, are barred by sovereign immunity and the Eleventh Amendment. *See* § IV.A, below.

---

[1] The four hospitals are Legacy Good Samaritan Hospital & Medical Center, Legacy Mount Hood Medical Center, Legacy Meridian Park Medical Center, and Legacy Emanuel Hospital & Health Center (d/b/a Legacy Emanuel Medical Center).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Second, "the Eleventh Amendment bars plaintiffs from bringing state law claims for both prospective and retrospective relief against state officials in their official capacities." *Real Estate Exch., Inc. v. Brown*, No. 3:20-CV-02075-HZ, 2021 WL 5855660, at *8 (D. Or. Dec. 9, 2021) (citing *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) & *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). That constitutional principle bars Legacy's state law challenges to BOLI's regulations and its enforcement actions, even when asserted against the Commissioner and Deputy Commissioner in their official capacities. *See* § IV.B, below.

Third, this Court must abstain under *Younger* from adjudicating Legacy's claims that could be litigated as defenses to BOLI's enforcement actions, including their federal defenses that BOLI's regulations are unconstitutional and preempted by federal statutes. Because these defenses could be raised in the ongoing BOLI enforcement actions, Legacy cannot assert those claims here in an effort to halt BOLI's enforcement proceedings. *See* § IV.C, below.

Fourth, if the Court were to reach Legacy's federal law objections to BOLI's rest period regulations, they fail on the merits as a matter of law. The Ninth Circuit has rejected equal protection claims like the one Legacy asserts, because states can "rationally . . . believe[] that workers covered by collective bargaining agreements . . . have greater power to ensure safe working conditions than workers with individual employment agreements." *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 490–91 (9th Cir. 1996). Likewise, Legacy's claim that the National Labor Relations Act preempts the regulation because it allows the default rule to be modified by collective bargaining agreements (CBAs) "sails full steam ahead into a flotilla of cases upholding generally applicable labor laws that include opt-out provisions limited to CBAs." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 888–89 (9th Cir. 2018). Nor do Medicare, Medicaid, or other federal funding programs preempt the state rules merely because Legacy alleged it would be easier to meet those programs' requirements if they did not also have to comply with state law. Those federal programs do not have the "clear and manifest purpose" to supplant state labor laws, and therefore Legacy's "conflict preemption" claim fails. *See Wyeth v.*

Page 2 -  DEFENDANTS' MOTION TO DISMISS
BM2/sv3/

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Levine*, 555 U.S. 555, 565 (2009).  Thus, if the Court does not abstain, Legacy's federal equal protection and preemption challenges should be dismissed with prejudice for failure to state a claim. *See* § IV.D, below.

Fifth, Legacy's Excessive Fines Clause claim is unripe because no fines have been imposed on Plaintiffs.  The administrative law judge presiding over the enforcement proceedings has not made findings on Legacy's alleged rule violations, let alone proposed the amount of civil penalties, if any, to impose.  An excessive fines claim is not ripe when the imposition of a fine, the amount of the fine, and the factual basis for that fine all remain uncertain.  *See* § IV.E, below.

Sixth, Legacy's allegations that BOLI Deputy Commissioner Shepard gave Legacy's employees "erroneous and incomplete" or "misleading" information about how Legacy could comply with the BOLI rule, rather than collaborating to change that rule, do not state a First Amendment claim.  A government official does not violate anyone's First Amendment rights by accurately explaining the nature of current law.  Nor, in any event, does the First Amendment require a government official to provide political and legal advice.  Further, Legacy lacks standing to assert this claim because they do not allege how they or their employees were injured—nor would any remedy be available if they were.  Retrospective relief is not available against the State (including against its officers in their official capacities), and prospective relief is unavailable because Legacy does not allege that Deputy Commissioner Shepard is likely to have similar conversations with Legacy's employees in the future.  *See* § IV.F, below.

For the reasons summarized above (and in the chart attached as an appendix to this motion at page 35), and as argued in more detail below, this case should be dismissed with prejudice in its entirety.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## II.    BACKGROUND

### A.    BOLI's Meal and Rest Break Rule

Under ORS 653.261, BOLI has authority to "adopt rules prescribing such minimum conditions of employment, excluding minimum wages, in any occupation as may be necessary for the preservation of the health of the employees."  ORS 653.261(1)(a).  "The rules may include, but are not limited to, minimum meal periods and rest periods . . . ."  *Id.*  Rules "regarding meal periods and rest periods do not apply to nurses who provide acute care in hospital settings if provisions of collective bargaining agreements entered into by the nurses prescribe rules concerning meal periods and rest periods."  ORS 653.261(3).

Pursuant to its statutory authority, BOLI adopted OAR 839-020-0050 (the "Rule"), which prescribes the length, frequency, and timing of employee meal periods and rest periods.  The required number of meal and rest periods, as well as the timing of those periods, varies according to the length of the employee's work period.  OAR 839-020-0050(2)(a), (2)(c)–(d), (6)(a)(A), Appendix A.  "If the work period is more than seven hours, the meal period is to be taken after the conclusion of the third hour worked and completed prior to the commencement of the sixth hour worked."  OAR 839-020-0050(2)(d).  "The provisions of [the] rule regarding meal periods and rest periods may be modified by the terms of a collective bargaining agreement if the provisions of the collective bargaining agreement entered into by the employees specifically prescribe rules concerning meal periods and rest periods."  OAR 839-020-0050(7).

### B.    Legacy Employees' 2019 Meeting with BOLI's Deputy Commissioner

On February 26, 2019, a group of nurses who worked for Legacy met with BOLI Deputy Commissioner Duke Shepard.  *See* Shepard Decl. ¶ 2, Ex. 1; FAC ¶ 184.  At the meeting, Shepard and the nurses discussed the Rule's meal period timing requirements.  *See* Shepard Decl. ¶ 2, Ex. 1; FAC ¶ 184.  Legacy alleges that Shepard gave the nurses "erroneous and incomplete information" or "misleading information," "such that [the nurses] were left with the

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

firm understanding that the only way to avoid the operation of [BOLI's] meal timing rules was for them to join a union."  FAC ¶¶ 185, 191, 193.

**C.    BOLI's Pending Enforcement Actions**

On December 21, 2021, BOLI served Notices of Intent to Assess Civil Penalties (NOIs) on the four hospital Plaintiffs here: Legacy Good Samaritan Hospital & Medical Center, Legacy Mount Hood Medical Center, Legacy Meridian Park Hospital dba Legacy Meridian Park Medical Center, and Legacy Emanuel Hospital & Health Center dba Legacy Emanuel Medical Center.  FAC ¶ 48.  The NOIs allege failures to provide appropriate meal and rest periods as the Rule requires and propose civil penalties not to exceed $1,000 for each willful violation, for an aggregate total of up to $8,727,000.  FAC ¶¶ 48, 88; *see* ORS 653.256(1) (authorizing the Commissioner to "assess a civil penalty not to exceed $1,000 against any person that willfully violates . . . ORS 653.261 . . . or any rule adopted thereunder").  On January 4, 2022, each of the four hospitals filed an Answer.  *See* Jeffries Decl., Exs. 1 (Good Samaritan), 2 (Mount Hood), 3 (Meridian Park), 4 (Emanuel).  Each Answer raises defenses that include that the proposed penalties violate the Eighth Amendment Excessive Fines Clause, that the Rule is invalid because of BOLI's failure to follow applicable rulemaking requirements, and that the Rule conflicts with "federal and state statutory and regulatory requirements."  Jeffries Decl., Ex. 1 at 7, 12, 16; Ex. 2 at 7, 12, 16; Ex. 3 at 7, 12, 16; Ex. 4 at 8, 12–13, 16.  Each Answer also incorporates the allegations of Legacy's challenge to the rule pending in the Oregon Court of Appeals, *see* No. A177598 (Or. Ct. App.) (see § II.D, below), as well as "any and all defenses as may relate to any federal or state litigation filed or that will be filed related to [the] NOIs."  Jeffries Decl., Ex. 1 at 11; Ex. 2 at 11; Ex. 3 at 11; Ex. 4 at 12.  Hearings in the enforcement proceedings have been scheduled for February, March, and April 2023.  Jeffries Decl., Ex. 5 (scheduling Good Samaritan hearing to commence on February 7, 2023, Mount Hood hearing to commence on February 28, 2023, Meridian Park hearing to commence on March 21, 2023, and Emanuel hearing to commence on April 11, 2023).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**D.**    **Legacy's Challenge to the Rule in the Oregon Court of Appeals**

On December 21, 2021, four of the five Plaintiffs[2] filed a petition in the Oregon Court of Appeals challenging the Rule's validity.  *See* No. A177598 (Or. Ct. App.).  The four petitioners requested and received an extension to September 6 to file their opening brief.

**E.**    **This Case**

On April 18, 2022, Legacy filed this case, and subsequently amended its complaint.  The First Amended Complaint ("FAC" or "Complaint") alleges that the Rule is invalid and seeks to enjoin its enforcement because:

- the Rule is preempted by the National Labor Relations Act, FAC ¶¶ 82–120 (Claim 1, Count 1);

- the Rule is preempted by various other federal statutes and regulations, including laws governing Medicare and Medicaid payments, FAC ¶ 121–143 (Claim 1, Count 2);

- BOLI's denial of a proposed amendment to the Rule violated rulemaking procedures required by state law, FAC ¶¶ 144–152 (Claim 1, Count 3);

- the Rule exceeds the scope of BOLI's state statutory authority, FAC ¶¶ 153–159 (Claim 1, Count 4);

- the Rule conflicts with state rules governing hospitals and nurses, FAC ¶¶ 160–173 (Claim 1, Count 5);

- the Rule fails to take into account critical healthcare needs during a public health emergency such as the COVID-19 pandemic, FAC ¶¶ 174–176 (Claim 1, Count 6);

- the Rule violates the Fourteenth Amendment Equal Protection rights of Legacy's employees, FAC ¶¶ 210–224 (Claim 2, Count 3); and

---

[2] Legacy Emanuel Hospital & Health Center is not a petitioner in the Court of Appeals.

Page 6 -   DEFENDANTS' MOTION TO DISMISS
BM2/sv3/

- BOLI's enforcement action against Legacy violates the Excessive Fines Clause of the Eighth Amendment, FAC ¶¶ 202–209 (Claim 2, Count 2).

The Complaint also alleges that Deputy Commissioner Shepard violated the First Amendment rights of Legacy's employees by providing the employees with "erroneous and incomplete information."  FAC ¶ 177–201 (Claim 2, Count 1).

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(1) Standard

"[L]ack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  "To establish Article III standing, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

For federal courts to maintain jurisdiction, Article III requires that a case continues to present a case or controversy for its entire duration.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  "If a claim is not ripe for review, the federal courts lack subject matter jurisdiction and they must dismiss the claim."  *Broughton Lumber Co. v. Columbia River Gorge Comm'n*, 975 F.2d 616, 621 (9th Cir. 1992).  At the other end of the continuum, "[w]here the activities sought to be enjoined have already occurred, and the . . . courts cannot undo what has already been done, the action is moot." *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (internal quotation omitted).

A court may consider evidence outside the pleadings to resolve factual disputes related to the court's subject-matter jurisdiction.  *See NEI Contracting & Eng'g*, 926 F.3d at 532; *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[U]nlike a Rule 12(b)(6) motion, a Rule

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency[.]") (internal quotation omitted).

**B.      Fed. R. Civ. P. 12(b)(6) Standard**

On a motion to dismiss for failure to state a claim, courts presume the truth of allegations in the complaint and construe them in the light most favorable to the nonmoving party.  Fed. R. Civ. P. 12(b)(6); *Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is plausible on its face only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## IV.      ARGUMENT

**A.      The Eleventh Amendment Bars Claims Against BOLI**

"[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Thus, the State and its agencies, like BOLI, cannot be sued unless the State expressly consents to suit.  *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999).

Neither the State nor BOLI has so consented.  *See Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244, 1269 (D. Or. 2013).  Nor are such suits against the State or its agencies permitted under Section 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, all claims against BOLI must be dismissed.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.      The Eleventh Amendment Bars Legacy's State Law Claims Under *Pennhurst***

The State's absolute sovereign immunity from suit generally also extends to state officials sued in their official capacities, because "the state is the real, substantial party in interest" in such suits.  *Pennhurst*, 465 U.S. at 101 (internal quotation marks and citation omitted).  *Ex Parte Young* established an exception to this rule, but it does not save Legacy's state law claims.  *Ex Parte Young* only applies when the plaintiff seeks "prospective injunctive relief to prevent a continuing violation of *federal law*."  *Green v. Mansour*, 474 U.S. 64, 68 (1985) (emphasis added).  This exception is premised on the proposition that federal court authority to enjoin a "continuing violation of federal law [is] necessary to vindicate the federal interest in assuring the supremacy of that law." *Id*.  Here, though, Legacy's Counts 3–6 of Claim I ask the Court to enjoin an alleged violation of state law.

None of these state claims can be heard in federal court, because "the Eleventh Amendment deprives federal courts of jurisdiction to order state actors to comply with state law." *Hale v. State of Ariz.*, 967 F.2d 1356, 1369 (9th Cir. 1992), *on reh'g*, 993 F.2d 1387 (9th Cir. 1993); *see also Pennhurst*, 465 U.S. at 106 (holding *Ex Parte Young* is "inapplicable in a suit against state officials on the basis of state law"); *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (holding state law claim for declaratory and injunctive relief under *Ex parte Young* was barred by *Pennhurst*).  Thus, Legacy's "state statutory argument cannot provide a basis for the injunctive relief Plaintiffs request because Defendants have sovereign immunity from this Court's jurisdiction to issue an injunction instructing state officials on how to conform their conduct to state law." *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1257–58 (D. Or. 2021).  Legacy's state law claims must be dismissed in their entirety.

**C.      This Court Must Abstain Under *Younger* in Deference to BOLI's Pending Enforcement Proceedings**

BOLI's enforcement proceedings against Legacy for alleged violations of the Rule's meal and rest break requirements are pending.  FAC ¶¶ 48, 94; Jeffries Decl., Ex. 5.  Legacy

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

seeks a declaratory judgment that the Rule is invalid and an injunction against its enforcement. FAC ¶ 118.  This suit is therefore barred by the doctrine of *Younger* abstention.[3]

*Younger* abstention "forbids federal courts from unduly interfering with pending state court proceedings that implicate 'important state interests.'"  *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 881 (9th Cir. 2011) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)); *see also Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617 (9th Cir. 2003) (explaining that *Younger* abstention also applies when the pending state proceedings are administrative).  When the pending state proceedings are civil rather than criminal, abstention is appropriate if the proceedings "(1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges."  *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81–82 (2013); *Gilbertson v. Albright*, 381 F.3d 965, 977–78 (9th Cir. 2004)).  If those "threshold elements" are met, courts then consider "whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies."  *ReadyLink Healthcare*, 754 F.3d at 759.  If all of the elements are met, and no exception applies, the court "must abstain." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017).  "When an injunction is sought and *Younger* applies, . . . dismissal (and only dismissal) is appropriate." *Gilbertson*, 381 F.3d at 981.

The BOLI administrative enforcement proceedings against Legacy are ongoing.  *See* Jeffries Decl., Ex. 5 at 3 (scheduling hearings for February, March, and April 2023).  The Complaint seeks to enjoin BOLI from enforcing its regulation, including these administrative enforcement actions.  FAC ¶ 118.

---

[3]  *See Younger v. Harris*, 401 U.S. 37 (1971).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Younger* abstention is required here because the enforcement actions are quasi-criminal enforcement actions, implicate important state interests, and provide an adequate opportunity for Legacy to raise federal challenges to the Rule. No exception to *Younger* applies. For *Younger* abstention, a quasi-criminal enforcement action is one that is "akin to a criminal prosecution in important respects." *Sprint*, 571 U.S. at 79 (internal quotation marks omitted). Three characteristics typically distinguish such an action: (1) the State, rather than a private actor, initiates the action in its sovereign capacity; (2) the action involves sanctions against the federal plaintiff for some wrongful act; and (3) the action includes investigation, culminating in formal charges. *See id.* at 79; *ReadyLink Healthcare*, 754 F.3d at 759.

Here, the State, via BOLI, initiated the enforcement action following an investigation into Legacy's violations of the meal and rest break Rule. BOLI has served Legacy with Notices of Intent to Assess Penalties, proposing a penalty of up to $1,000 for each alleged violation. FAC ¶¶ 42, 48. BOLI conducted the investigation and issued the NOIs against the Plaintiff hospitals to enforce Oregon law. The proposed civil penalties are a significant sanction. These penalties, along with the nature of the civil enforcement proceeding, support *Younger* abstention. The BOLI proceedings against Legacy are thus akin to criminal prosecution for the purposes of *Younger* abstention.

The BOLI proceedings implicate important state interests. For *Younger* purposes, "[t]he importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *Baffert*, 332 F.3d at 618. "Where the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake." *Potrero Hills*, 657 F.3d at 883–84. The Supreme Court and the Ninth Circuit have held that a wide variety of enforcement actions implicate important state interests, including the enforcement of employment anti-discrimination laws, land-surveying licensing procedures, and horse-racing licensing procedures. *See id.* at 884 (citing *Ohio Civil*

Page 11 - DEFENDANTS' MOTION TO DISMISS

*Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986); *Gilbertson*, 381 F.3d at 983; *Baffert*, 332 F.3d at 618). "Similarly, the enforcement of state Labor and Industry regulations serves an important state interest." *Schwartzmiller v. Roberts*, Civ. No. 93-1276-FR, 1994 WL 48967, at *2 (D. Or. Feb. 11, 1994).

Other federal courts have held similar proceedings squarely fall within the bounds of *Younger*. For example, the Eighth Circuit held a Minnesota Department of Labor and Industry (DLI) proceeding against an employer was "akin to" a criminal proceeding within *Younger* abstention taxonomy. *Minn. Living Assistance, Inc. v. Peterson,* 899 F.3d 548, 553 (8th Cir. 2018). There, the DLI administrative proceeding satisfied both the state-involvement and the investigation criteria because the action was initiated by the State, via the DLI, following an investigation into the employer's failure to pay overtime wages to employees. *Id.* at 552. The DLI conducted the investigation, issued a compliance order, and brought an administrative action against the employer to enforce Minnesota law. *Id.* The DLI proceeding sought "sanctions for wrongful conduct." *Id.* at 553. In addition to requiring the employer to pay back wages of $557,714.44, the DLI imposed liquidated damages in the same amount, functioning to sanction the employer for its failure to pay overtime wages. *Id.* at 551, 553. Further, a cease-and-desist order sought by the state operated to restrain the employer's conduct going forward. *Id.* at 553. Though not criminal penalties, the sanctions sought supported *Younger* abstention. *Id.*; *see also Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 193–95 (1st Cir. 2015) (Massachusetts Commission Against Discrimination proceeding against an employer was akin to a criminal prosecution).

The third *Younger* requirement is that Legacy has "a full and fair opportunity" to litigate their federal claims in the pending state proceeding. *See Ohio Civil Rights Comm'n*, 477 U.S. at 627. "[T]he burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of [its] claims." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1046 (9th Cir. 2019) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987)) (internal quotation marks

Page 12 - DEFENDANTS' MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

omitted).  Legacy cannot satisfy that burden because there is no bar to raising their claims.  *See Nw. Pub. Commc'ns Council v. Oregon Pub. Util. Comm'n*, 805 F. Supp. 2d 1058, 1070 (D. Or. 2011) (administrative proceedings before the Oregon Public Utility Commission qualify for *Younger* abstention).  Legacy could raise its objections to the lawfulness of BOLI's regulations in the administrative proceedings.  *See, e.g.*, Jeffries Decl., Ex. 1 (Good Samaritan Answer) ¶ 78 (raising as a defense to enforcement the contention that "federal and statute statutory and regulatory requirements conflict with [BOLI] regulations regarding meal periods and breaks").  In a contested case proceeding, Legacy can raise federal constitutional arguments and whether a regulation exceeds the statutory authority of an agency, and seek judicial review of the agency's determination.  *See 1000 Friends of Oregon v. Land Conservation & Dev. Comm'n*, 39 Or. App. 55, 60 n.2 (1979) (ORS 183.400 authorizes judicial review of a rule in a contested case proceeding when the rule is at issue); ORS 183.400(4) (rule invalid if it exceeds agency's authority or violates constitutional provisions); ORS 183.482(8) (judicial review of contested case orders).[4]  Indeed, Legacy already has raised these constitutional and preemption arguments as defenses in the enforcement proceedings.  *See* § II.C, above.

Finally, there are no exceptions to *Younger* that would apply here and make abstention inappropriate.  The Supreme Court has recognized limited exceptions under *Younger* where there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate."  *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) (quoting *Middlesex*, 457 U.S. at 435).  Such exceptions are "narrow."  *Gibson v. Schmidt*, 522 F. Supp. 3d 804, 814 (D. Or. 2021) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975)).  They apply "[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown."  *Id.* (quoting *Perez v. Ledesma*, 401 U.S.

---

[4] Similarly, in Legacy's challenge in the Court of Appeals, it can raise federal constitutional arguments and argue the Rule exceeds BOLI's statutory authority. *See* ORS 183.400(4); *Beaver Creek Coop. Tel. Co. v. PUC*, 182 Or. App. 559 (2002).

Page 13 -  DEFENDANTS' MOTION TO DISMISS
BM2/sv3/

82, 85 (1971)).  Although Legacy contends that BOLI acted "in bad faith" by enforcing the Rule, *see* FAC ¶ 81, it does not allege any facts that suggest that BOLI has acted in bad faith, that is, alleged violations without any hope of proving them.  Legacy's challenge is to the validity of the Rule itself.  The bases of that challenge—including preemption, invalid rulemaking, and equal protection—are legal, not factual.

This case meets each element of *Younger* abstention, and none of the exceptions apply. Thus, this Court cannot enjoin BOLI's ongoing efforts to enforce the Rule against Legacy.  Nor can the Court issue a declaratory judgment that would invalidate the Rule: "*Younger* applies to requests for declaratory relief because 'ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid.'" *Gilbertson v. Albright*, 381 F.3d 965, 971 (9th Cir. 2004) (en banc) (quoting *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)).  Accordingly, Legacy's challenges to BOLI's enforcement actions (Claim 1, Counts 1–6 and Claim 2, Counts 2–3) must be dismissed.

### D. Legacy's Federal Law Objections to BOLI's Regulations and Enforcement Fail as a Matter of Law

Under ORS 653.261, BOLI has authority to adopt rules setting minimum conditions of employment as may be necessary for the preservation of the health of employees, including setting minimum meal periods and rest periods.  The agency's meal and rest period rule is OAR 839-020-0050.  "The provisions of this rule regarding meal periods and rest periods may be modified by the terms of a collective bargaining agreement if the provisions of the collective bargaining agreement entered into by the employees specifically prescribe rules concerning meal periods and rest periods."  OAR 839-020-0050(7).[5]

---

[5] There are also a few statutory exceptions to the agency's meal and rest period rules, including when nurses who provide acute care in a hospital setting are subject to a collective bargaining agreement that prescribes rules for meal and rest periods.  *See* ORS 653.261(3).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Legacy claims that by setting a default rule for the timing of meal periods and allowing employees to opt out through a collective bargaining agreement, BOLI's Rule violates the equal protection rights of non-union employees. FAC ¶¶ 222–224. Legacy also claims that the Rule is preempted by the National Labor Relations Act because it burdens the employees' right not to join a union. FAC ¶¶ 102–103. Legacy further claims that the Rule is preempted by various federal laws governing Medicare, Medicaid, and other federally-funded programs, as well as laws providing for tax-exempt status for nonprofit organizations. FAC ¶ 141. As explained below, all three federal claims are meritless and fail as a matter of law.

### 1.    The Equal Protection Claim is Meritless

Legacy claims that BOLI's Rules for the timing of meal breaks discriminate against Legacy's non-union employees by treating employees covered by collective bargaining agreements differently. Legacy's claim fails because the Ninth Circuit has held that such distinctions "do not impinge fundamental rights or suspect classifications," and that states have a rational basis for regulating employment governed by collective bargaining agreements differently from other employment. *Viceroy*, 75 F.3d at 490–91. And in any event, union employees and non-union employees are not similarly situated for purposes of an equal protection analysis. *See, e.g.*, *Donnell v. Lee Cty. Port Auth.*, 509 F. App'x 903, 905 (11th Cir. 2013) (citing *Marshall v. W. Grain Co.*, 838 F.2d 1165, 1170 (11th Cir. 1988)).

BOLI's Rule distinguishes between employees who are subject to a collective bargaining agreement that "specifically prescribe[s] rules concerning meal periods and rest periods" and employees who are not. OAR 839-020-0050(7). That distinction is subject to rational-basis review. Unless a classification impedes fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, there is a presumption of constitutionality, and the classification challenged need only be rationally related to a legitimate state interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Classifications based on whether a worker's employment is governed by a CBA are not suspect. *Viceroy*, 75 F.3d at 490–91. Thus,

Page 15 - DEFENDANTS' MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the regulation complies with the Equal Protection Clause "if there is a rational relationship between the disparity of treatment and some legitimate government purpose." *United States v. Ayala-Bello*, 995 F.3d 710, 715 (9th Cir. 2021) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). The burden is on the plaintiff to negate "every conceivable basis which might support" the regulation and the distinction that it draws between different groups. *See id.*

Legacy cannot meet that burden. The Ninth Circuit has held that states have a rational basis for regulating employment governed by collective bargaining agreements differently from other employment. In *Viceroy*, the Ninth Circuit held that the distinctions that California drew between non-union and union workers did not violate the Equal Protection Clause. 75 F.3d at 490–91. A California statute prescribed a default maximum eight-hour workday for mine workers, while allowing that maximum to be extended under a collective bargaining agreement that "expressly provides for the wages, hours of work, and working conditions of the employees," or by a two-thirds majority vote of the employees. *Id.* at 485–87, 487 n.1. The court held that California had a legitimate interest in the safety of mine workers, and a limitation on work hours was rationally related to that purpose. *Id.* at 491. Moreover, the California Legislature could rationally have believed that workers covered by collective bargaining agreements or who have voted by a two-thirds majority to adopt longer work hours have greater power to ensure safe working conditions than workers with individual employment agreements. *Id.* Here, the State of Oregon has a legitimate interest in the health and well-being of employees, and the Oregon Legislature could have rationally believed that employees covered by collective bargaining agreements would have greater power to ensure safe working conditions.

Moreover, an equal protection claim requires a plaintiff to allege that "a class that is similarly situated has been treated disparately." *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020). As other courts have recognized, for the purposes of an equal protection analysis, employees who are subject to a collective bargaining agreement are not similarly situated to employees who are not. *See, e.g.*, *Donnell*, 509 F. App'x at 905 (citing *Marshall*, 838 F.2d at

Page 16 - DEFENDANTS' MOTION TO DISMISS
BM2/sv3/

1170) (union and non-union employees not similarly situated for equal protection purposes); *Kelly v. State*, 525 N.W.2d 409, 411 (Iowa 1994) (same); *Far W. Servs., Inc. v. Livingston*, 156 Cal. App. 3d 931, 941 (Cal. Ct. App. 1984) (same); *Sacramento Cty. Retired Emps. Ass'n v. County of Sacramento*, 975 F. Supp. 2d 1150, 1169 (E.D. Cal. 2013) (same); *Marshall*, 838 F.2d at 1170 (union and non-union employees not similarly situated for Title VII discrimination purposes).[6]  Due to the "unique status in the workplace" held by bargaining unit employees, as reflected by the collective bargaining agreement itself as well as other elements of the collective bargaining process, *see Marshall*, 838 F.2d at 1170–71, employees who are subject to a collective bargaining agreement that provides for alternative meal or rest period rules are not similarly situated to employees who are not.

BOLI's meal period rule does not impede fundamental rights or draw upon suspect classifications, it is rationally related to a legitimate state interest, and, in any event, it does not distinguish between similarly situated groups.  Accordingly, Legacy's equal protection claim (Claim 2, Count 3) must be dismissed.

### 2.    The NLRA Preemption Claim is Meritless

Legacy alleges that the meal period requirements of OAR 839-020-0050(2)(d), read together with the opt-out provision of OAR 839-020-0050(7), are preempted by the National Labor Relations Act (NLRA) under the principle of *Machinists* preemption.  FAC ¶¶ 91, 103. Legacy's NLRA claim fails because opt-out provisions for union members within minimum labor standards are a valid and unexceptional exercise of the State's police power, not subject to NLRA preemption.  *See Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 22 (1987).

---

[6] "[T]here is a very close relationship between Title VII and equal protection claims, and, not surprisingly, case law on equal protection tracks case law on Title VII." *Bator v. Hawai'i*, 39 F.3d 1021, 1028 n.7 (9th Cir. 1994) (internal quotation marks and alternations omitted); *see also Place v. City of Eugene*, Civ. No. 06-6160-HO, 2008 WL 442137, at *9 (D. Or. Feb. 13, 2008) (applying the same "similarly situated" analysis to both Title VII and equal protection claims).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"The NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 753 (1985).  Congress's aim in enacting the NLRA was "entirely unrelated to local or federal regulation establishing minimum terms of employment." *Id.* at 754.  Under the principle known as *Machinists* preemption,[7] the NLRA preempts state law and state causes of action concerning conduct that Congress intended to be unregulated or controlled by free play of economic forces.  *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 887 (9th Cir. 2018).  Thus, the NLRA preempts restrictions on the *creation* of unions and their ability to function effectively through an equitable bargaining process.  *Metro. Life Ins.*, 471 U.S. at 753.  The NLRA is not concerned with the substantive terms that may emerge from such bargaining.  *Id.*

Most critically in this case, the NLRA does *not* preempt States from establishing minimum labor standards that form a "backdrop" or "statutory baseline" for collective bargaining negotiations.  *Becerra*, 898 F.3d at 888.  In other words, "state action that intrudes on the mechanics of collective bargaining is preempted, but state action that sets the stage for such bargaining is not."  *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 964 (9th Cir. 2016).

Consequently, regulations allowing workers to opt out of the baseline rule through collective bargaining agreements have long been held as not preempted by the NLRA.  *See Fort Halifax*, 482 U.S. at 22 (upholding state law requiring severance payments to laid-off employees but allowing unionized workers to opt out through a CBA); *Viceroy*, 75 F.3d at 490 (upholding California law setting a maximum workday standard for mineworkers but allowing unionized workers to opt out through a CBA); *Am. Hotel &Lodging Ass'n*, 834 F.3d at 965 (upholding

---

[7] *See Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132 (1976).

BM2/sv3/

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

county ordinance setting a minimum wage and time-off compensation but allowing unionized workers to opt out through a CBA.  Although certain regulations that exclude "*all* employees with collective bargaining agreements" might be preempted, *see McCollum v. Roberts*, 17 F.3d 1219, 1223 (9th Cir. 1994) (emphasis added), courts have consistently upheld "opt out" provisions, under which "union-represented employees have the full protection of the minimum standard, absent any agreement for something different," *Livadas v. Bradshaw*, 512 U.S. 107, 131 (1994).  Opt-out provisions limited to workers governed by collective bargaining agreements are consistent with Congress' objectives under the NLRA because the risk of coercion is low where bargaining power between employers and employees is equal.  *See Metro. Life Ins.,* 471 U.S. at 754–55.  The Supreme Court made clear that "there is no suggestion in the legislative history of the [NLRA] that Congress intended to disturb the myriad state laws then in existence that set minimum labor standards, but were unrelated in any way to the processes of bargaining or self-organization." *Id.* at 756.  Nor did Congress intend to pre-empt opt-out provisions "as 'burdening' the statutory right of employees not to join unions by denying nonrepresented employees the 'benefit' of being able to 'contract out' of such standards." *Livadas*, 512 U.S. at 132 n.26 (1994).

OAR 839-020-0050 sets baseline labor standards regarding meal and rest periods and allows employees to opt out through collective bargaining.  The Rule is entirely unrelated to the processes of collective bargaining or self-organization.  It thus does not impermissibly intrude on the collective bargaining process and is not preempted by the NLRA.

The Complaint alleges that the meal timing provision "differs in degree and kind from minimum standards such as allowing a 30-minute break," because the Rule instead "prescribes rigid requirements" as to the timing of meal breaks.  FAC ¶ 108.  Legacy alleges that the Rule thus "imposes an undue hardship, endangers health of workers and their patients, and places nurses at risk of violating their nursing standards and potentially losing their licenses." *Id.*

Page 19 -  DEFENDANTS' MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

But these alleged hardships are "unrelated in any way to the processes of bargaining or self-organization." *See Metro. Life Ins.,* 471 U.S. at 756. Legacy's objections to the particular substantive terms of the default rule do not support a claim that the Rule impermissibly intrudes on the bargaining process. *See Viceroy*, 75 F.3d at 489–90 ("While Viceroy and its employees may find the eight-hour day requirement burdensome, § 750 undoubtedly provides some minimum protection to non-union mine workers, while permitting a longer work day through the protections provided by the collective bargaining or the election process set forth in § 750.5."). Legacy's disagreement with BOLI over how best to safeguard the health and safety of workers does not distinguish this case from the "flotilla of cases upholding generally applicable labor laws that include opt-out provisions limited to CBAs." *See Becerra*, 898 F.3d at 889. Legacy's NLRA preemption claim falls squarely within the holdings of those cases, and thus fails as a matter of law.

### 3.    The Conflict Preemption Claim is Meritless

Count Two of Legacy's First Claim for Relief alleges that the Rule is preempted by various federal laws, including laws providing for Medicare and Medicaid funding and the tax-exempt status of nonprofit entities. FAC ¶¶ 124, 128–135, 141 (citing federal laws governing Medicare, Medicaid, Social Security, Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), and tax-exempt organizations). Legacy alleges that the Rule makes it difficult for Legacy to satisfy the various requirements that enable it to receive federal payments and to maintain tax-exempt nonprofit status. FAC ¶ 141. Legacy further alleges that BOLI's assessment of penalties "diverts federal funds" that would otherwise be used for hospital improvements, training, education, and research. FAC ¶¶ 135, 137. Legacy alleges that the Rule thus "stands as an obstacle to federal law" and is therefore preempted. FAC ¶ 125. This claim fails as a matter of law because requiring a federally-funded employer to comply with generally applicable state labor laws is not the type of "obstacle" that gives rise to preemption—

Page 20 -  DEFENDANTS' MOTION TO DISMISS
BM2/sv3/

particularly where, as here, there is no indication that Congress intended to limit the states' exercise of their police powers.

"Preemption is almost always a legal question, the resolution of which is rarely aided by development of a more complete factual record." *ReadyLink Healthcare*, 754 F.3d at 761–62 (internal quotation marks and citation omitted). "To decide whether a federal statute preempts state law, [the court's] sole task is to ascertain the intent of Congress." *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1415 (9th Cir. 1990) (internal quotation marks and citation omitted). "In determining Congress's intent, [the court] start[s] with the basic assumption that Congress did not intend to displace state law, and that federal law does not supersede the historic police powers of the States unless that was the clear and manifest purpose of Congress." *Knox v. Brnovich*, 907 F.3d 1167, 1173–74 (9th Cir. 2018) (internal citations and quotation marks omitted). "This presumption against preemption applies when a state regulates in an area of historic state power even if the law touches on an area of significant federal presence." *Id.* (internal quotation marks and alterations omitted).

BOLI's Rule "prescribe[s] minimum meal periods and rest periods for the preservation of the health of employees." OAR 839-020-0050(1). As a "minimum labor standard," the Rule "falls into the category of state labor laws typically saved from preemption, and so the presumption against preemption applies with particular force." *See Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 891 (9th Cir. 2018) (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987)); *see also Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (1985) (noting "the presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause"). The Rule therefore is "not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress." *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

Legacy invokes the doctrine of conflict preemption, FAC ¶ 141, under which "state laws are preempted when they conflict with federal law." *United States v. California*, 921 F.3d 865,

BM2/sv3/

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

878 (9th Cir. 2019). Conflict preemption exists only when there is "'irreconcilability' between state and federal law." *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1274 (9th Cir. 2021) (quoting *California*, 921 F.3d at 882). Mere "[t]ension" between the two "is not enough." *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1118 (9th Cir. 2020) (internal quotation marks omitted).

Specifically, by alleging that the Rule "stands as an obstacle to federal law," FAC ¶ 125, Legacy resorts to the subset of conflict preemption known as "obstacle preemption." Obstacle preemption occurs where a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California*, 921 F.3d at 879. To determine whether obstacle preemption applies, a court must "employ [its] judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* (internal quotation marks omitted). But "'[i]mplied preemption analysis does not justify a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives"; such an endeavor "would undercut the principle that it is Congress rather than the courts that preempts state law."'" *Id.* (quoting *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (plurality op.)). Accordingly, a state law poses an obstacle to the implementation of a federal program only if the state law "'sufficiently injure[s] the objectives of the federal program to *require* nonrecognition.'" *MetroPCS*, 970 F.3d at 1118 (quoting *Topa Equities, Ltd. v. City of Los Angeles*, 342 F.3d 1065, 1071 (9th Cir. 2003) (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 583 (1979))) (emphasis added).

Legacy alleges that BOLI's enforcement of the Rule's meal and rest break requirements hampers its ability to meet the requirements to receive federal Medicare, Medicaid, and other federal funds and maintain their tax-exempt status. FAC ¶ 141. Those requirements include "[o]perating an emergency [room] open to all regardless of the ability to pay," "[m]aintaining a Board of Directors drawn from the community," and maintaining "[a]n organized 24 hour

Page 22 -  DEFENDANTS' MOTION TO DISMISS
BM2/sv3/

nursing service." FAC ¶¶ 130, 133. Legacy alleges it would be easier to meet those requirements without complying with the Rule. But the same could be said for *any* generally applicable state labor law. The possibility that it would be easier for employers to qualify for federal funds if they could ignore state labor laws does not make those laws "obstacles" to the federal funding programs.

The Supreme Court has made clear that a state law is not preempted by a federally funded program merely because it would be easier for recipients to access funds in the absence of the state law. Indeed, the Court has rejected a preemption claim even where a state imposed a direct "nonfederal obstacle to continued eligibility for [federally-funded] benefits." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 667 (2003) (citing *N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 422–23 (1973)). Similarly, when a state imposed a "prior authorization" requirement on Medicaid-covered prescription drugs, the Supreme Court concluded that "the mere fact that prior authorization may impose a modest impediment to access to prescription drugs provided at government expense [did] not provide a sufficient basis for pre-emption of the entire [state] program." *Id.* at 667.

Here, the argument for preemption is even weaker. BOLI's Rule does not impose any limitation on eligibility for or receipt of federal funds or eligibility for tax-exempt status. Legacy merely alleges that it would be easier to receive and spend federal funds if it could ignore the Rule. That is not enough for preemption.

Most importantly, there is no indication that Congress intended for Medicare, Medicaid, Social Security, CHAMPUS, or the federal tax code to preempt state regulations regarding employee meal periods. Such regulations are within the state's police powers and are therefore subject to the assumption that they are not preempted "unless that was the clear and manifest purpose of Congress." *See Wyeth*, 555 U.S. at 565. There is no basis to infer that Congress had a clear and manifest purpose to limit a state's ability to impose labor standards on hospitals. For example, Congress has indicated that the purpose of Medicaid is to "enabl[e] each State, as far as

Page 23 -  DEFENDANTS' MOTION TO DISMISS

practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care."  42 U.S.C. § 1396-1.  Nothing in that stated purpose indicates that Congress intended to preempt labor standards of any kind.  In any event, it is Legacy's "considerable burden," *see De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997), to show that Congress clearly and manifestly intended to preempt employee meal period laws.  Legacy cannot bear that burden, and therefore this claim fails as a matter of law.

**E.    Legacy's Excessive Fines Claim is Unripe Because No Fines Have Been Imposed**

In Count Two of its Second Claim for Relief, Legacy alleges that BOLI has violated the Eighth Amendment's Excessive Fines Clause by "alleging violations of OAR 839-020-0050 and seeking excessive penalties."  FAC ¶ 203.  But no fines have been imposed on Legacy.  The administrative law judge presiding over the enforcement proceedings has yet to determine how many of the alleged violations occurred and the circumstances of those violations, let alone the amount of the penalties, if any, to recommend that the BOLI Commissioner impose.  Only after a proposed order is issued will the Commissioner consider a final order in which the agency may alter the ALJ's decision, including the amount of civil penalties.  Without knowing either the amount of the penalty or the basis for that penalty, there is no way for this Court to determine whether any such penalty is excessive.  This claim is therefore unripe.

"The ripeness doctrine, which aims to avoid premature and potentially unnecessary adjudication, is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Ass'n of Irritated Residents v. U.S. Envtl. Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021) (internal quotation marks omitted).  As explained below, Legacy's Excessive Fines claim is unripe for both constitutional and prudential reasons.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1123 (9th Cir. 2022) (internal quotation marks and citation omitted). An injury in fact is a concrete, particularized injury that is "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (internal quotation marks and citation omitted). That is, the injury either must have already occurred or it must be "*certainly impending*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "[A]llegations of *possible* future injury are not sufficient." *Id.* (emphasis in original). Here, although BOLI "seek[s] to impose" civil penalties on Legacy, FAC ¶ 88, no penalties have actually been imposed. *See* Jeffries Decl., Ex. 5 at 3 (setting discovery deadlines for November 2022, and scheduling hearings for February, March, and April 2023). Nor is the imposition of the penalties sought by BOLI certainly impending. Hearings in the enforcement proceedings will not even begin until February 2023. FAC ¶ 94. It is uncertain whether the administrative law judge will find that each of the 8,727 alleged violations took place and will then impose a penalty for each willful violation in the amount of $1,000. *See* FAC ¶ 48 (alleging that BOLI seeks a total of $8,727,000 in penalties), ¶ 88 (alleging that BOLI seeks a $1,000 penalty for each violation). There is thus no "certainly impending" injury, and therefore the constitutional component of ripeness is not satisfied.

Ripeness also contains a "prudential" component, which requires a court to consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Twitter, Inc.*, 26 F.4th at 1123. "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id.*; *see Enquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1000 n.11 (9th Cir. 2007) (after district court had entered judgment, plaintiff's Excessive Fines challenge "easily satisf[ied] both prongs of the ripeness test, as the issues presented [were] purely legal and delay [would] cause unnecessary hardship"). Here, Legacy does not challenge a final action—as noted above, the administrative law judge has not made findings or proposed any penalties, nor has the

Page 25 -  DEFENDANTS' MOTION TO DISMISS
BM2/sv3/

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Commissioner issued a final order.  Further, as explained below, application of the Excessive Fines Clause would require extensive factual development.

"Excessive fines challenges involve a two-step inquiry: (1) whether the Excessive Fines Clause applies, and (2) if so, whether the fine is 'excessive.'" *Engquist,* 478 F.3d at 1006.  Here, the Clause does not apply at all, because no fine has been imposed.  In any event, the fact-intensive nature of the excessiveness inquiry demonstrates why this claim is not fit for judicial decision.

A fine is unconstitutionally excessive "if its amount is 'grossly disproportional to the gravity of the defendant's offense.'"  *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) (quoting *United States v. Bajakajian*, 524 U.S. 321, 336–37 (1998)).  To determine whether a fine is grossly disproportional, a court must consider "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Id.*  In considering the nature and extent of the offense, "[i]t is critical . . . that the court review the specific actions of the violator rather than by taking an abstract view of the violation." *Id.* at 923.

As one district court recently explained, "each of [the] four [Excessive Fines] factors— perhaps with the exception of the third—are all but impossible to assess in the abstract." *Ass'n for Accessible Meds. v. Bonta*, No. 2:20-CV-01708-TLN-DB, 2022 WL 463313, at *7 (E.D. Cal. Feb. 15, 2022).  "[W]ithout examining the factual underpinnings of an actual violation, the Court cannot speculate as to the nature and extent of the violation, whether the violation is related to other illegal activities, and the extent of the harm caused." *Id.*  And "[w]ithout the factual underpinnings by which to assess a violation, it is impossible to know" whether a particular fine would be excessive as applied in a particular case. *Id.*  For those reasons, and because the court was unwilling to find that the maximum penalty authorized by the challenged law would be

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

grossly disproportionate to "every conceivable violation of the statute," the court rejected a pre-enforcement Excessive Fines challenge as unripe. *Id.*

For this Court to determine whether the civil penalties sought by BOLI would be excessive, it would first have to determine how many of the 8,727 alleged violations took place, the circumstances of each violation, whether any of the violations related to other illegal activities, and the extent of the harm caused by each violation. In other words, this Court would have to duplicate the factfinding efforts of the pending enforcement proceedings—with possibly conflicting results. Thus, until the enforcement proceedings' factfinding is complete, determining whether any penalty is excessive remains impossible. The claim is therefore not fit for judicial decision.

For similar reasons, other federal courts have recognized that claims akin to Legacy's are unripe. The Eleventh Circuit has held that Eighth Amendment challenges, including excessive fines challenges, are generally not ripe until the imposition, or immediately pending imposition, of a challenged punishment or fine. *Cheffer v. Reno,* 55 F.3d 1517, 1523 (11th Cir. 1995). The court held that an Excessive Fines Clause claim was not ripe because the appellants' allegations amounted to "mere speculation" that they would be arrested and convicted and, if so, subject to the maximum imprisonment and civil penalties. *Id.* at 1524. On the other hand, the Fourth Circuit held that a claim was ripe where "a forfeiture judgment in a particular amount" had been entered. *United States v. Blackman,* 746 F.3d 137, 144 (4th Cir. 2014). However, the court noted that "[w]here no final forfeiture order or judgment has been entered, ruling on [an Excessive Fines Clause claim] would be premature." *Id.*; *accord United States v. Talebnejad*, 460 F.3d 563, 573 (4th Cir. 2006) (Excessive Fines claim was not ripe when the Government "sought" a forfeiture but no judgment had been entered); *Duffner v. City of St. Peters, Missouri*, 930 F.3d 973, 977 (8th Cir. 2019) (Eighth Amendment claim was not ripe "[b]ecause it [was] unknown whether the City [would] impose sanctions . . . or, if sanctions [were] imposed, what they might be"); *City of Chicago v. Equte LLC*, No. 21 C 518, 2022 WL 2132630, at *3 n.4

Page 27 - DEFENDANTS' MOTION TO DISMISS
BM2/sv3/

(N.D. Ill. June 14, 2022) ("Because the Court has not yet assessed a fine, Defendants' excessive fines claim is not ripe."); *San Francisco Tech., Inc. v. Dial Corp.*, No. 5:10-CV-04986-JF/PSG, 2011 WL 941152, at *4 (N.D. Cal. Mar. 17, 2011) ("Because the Court has not yet imposed a fine or even concluded that [Defendant] has violated [the statute], this [Excessive Fines] issue is not ripe for determination.").

In short, Legacy challenges a hypothetical future civil penalty, the final amount of which has yet to be determined, which may or may not be imposed as a penalty for some or all of Legacy's numerous alleged violations. There is simply no way for this Court to adjudicate this claim now: a court cannot determine whether a fine is excessive without knowing the amount of the fine and its factual basis. Legacy's Excessive Fines claim is unripe and should be dismissed.

## F.    Legacy's First Amendment Claim Should Be Dismissed

Legacy's Count One of its Second Claim alleges that BOLI Deputy Commissioner Duke Shepard violated the First Amendment rights of Legacy's employees by responding to a request for information with an "erroneous and incomplete" or "misleading" response. FAC ¶¶ 185, 193. Legacy's purported First Amendment claim stems from a February 2019 meeting between Shepard and a group of nurses working for Legacy. *See* FAC ¶ 184–185; Shepard Decl. ¶ 2, Ex. 1. In essence, the Complaint appears to allege that Shepard informed a group of nurses that the Rule's meal period timing requirements would not apply if they negotiated another set of meal period requirements through a collective bargaining agreement. FAC ¶¶ 184, 191, 193. Shepard's statement was "misleading," Legacy alleges, in that he did not mention other, non-union options to change or avoid the effects of the Rule, such as petitioning to change the Rule itself. FAC ¶ 193.

Shepard did not violate the nurses' First Amendment rights by accurately explaining the effects of current law. *See* OAR 839-020-0050(7) (allowing a collective bargaining agreement to modify meal period requirements). Even if Legacy had adequately alleged that Shepard's statements were "incomplete" or "misleading," that would still not state a First Amendment

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

claim. The First Amendment does not obligate public officials to respond to constituents' inquiries, nor does it require that any responses give a "complete" description of every legal or political avenue available to address their grievance, as Legacy implies. *See* FAC ¶ 193. Moreover, the Complaint does not identify any redressable injury caused by Shepard's statements, and therefore Legacy lacks standing to assert this claim. Legacy seeks only declaratory and injunctive relief, and therefore the claim is moot. *See Lohn*, 511 F.3d at 964 ("Where the activities sought to be enjoined have already occurred, and the . . . courts cannot undo what has already been done, the action is moot."). Legacy's First Amendment claim should be dismissed for failure to state a claim and lack of standing.

### 1. The Complaint Fails to State a First Amendment Claim

Legacy's purported First Amendment claim stems from a meeting between Shepard and a group of nurses working for Legacy. The nurses were "seek[ing] information about how to address a change in the meal timing rules and constraints." FAC ¶ 184. Legacy alleges that Shepard provided the nurses with "inaccurate or incomplete information that caused the nurses to understand that the only remedy for their concerns was to join a union; whereas, there were other options to address their concerns." FAC ¶ 66. Those other options included "participating in the petition process to seek a rule amendment," "seeking a legislative change," and "requesting a status change to exempt." FAC ¶ 193.

Legacy claims that Shepard's "erroneous and incomplete" statement amounted to interference with the nurses' exercise of their First Amendment right to petition the government. FAC ¶¶ 7, 185. But the right to petition does not require a government official to provide "complete and accurate" political and legal advice to a petitioner, nor does a failure to provide such advice constitute a violation of the petitioner's First Amendment rights.[8]

---

[8] Moreover, in any event, Shepard's alleged conduct cannot constitute a violation by Defendants Hoyle and BOLI. "Section 1983 suits . . . do not support vicarious liability. . . . To state a valid § 1983 claim, 'a plaintiff must plead that each government-official defendant, through the

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Legacy alleges that Shepard "interfered with Plaintiffs' employees in their exercise of their First Amendment right" by "providing erroneous and incomplete information." FAC ¶ 185. They allege that Shepard "had a responsibility as a public official to provide complete and accurate information." FAC ¶ 193. But the First Amendment imposes no such responsibility.

The First Amendment right to petition "allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). The right "is uni-directional; it does not require government officials or politicians to respond, or even listen, to citizens." *Rodriguez v. Newsom*, 974 F.3d 998, 1010 (9th Cir. 2020) (citing *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979)).

To plead a violation of the right to petition, a plaintiff must allege that governmental action either has directly interfered with the exercise of the right or has imposed a "deterrent, or 'chilling,' effect." *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996). "To have such an effect, the government action must be regulatory, prescriptive, or compulsory in nature, and the complainant must be either presently or prospectively subject to the regulations, proscriptions, or compulsions that he or she is challenging." *Id.* "An unconstitutional chill will only exist if the government action has injured the individual or places the individual in immediate danger of sustaining a direct injury." *Id.*

Legacy's employees exercised their right to petition by meeting with Shepard and presenting him with their questions and concerns. *See* FAC ¶ 184. Legacy does not allege that Shepard prevented them from doing so. Although the Complaint contains vague, conclusory

---

official's own individual actions, ha[s] violated the Constitution.'" *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676); *see also Padway v. Palches*, 665 F.2d 965, 968 (9th Cir. 1982) ("[T]he only relief sought under [§] 1983 is declaratory relief. In any event, the school district is not liable under [§] 1983 where the sole theory of liability is respondeat superior."). With respect to their First Amendment claim, Plaintiffs do not allege any individual conduct by anyone other than Shepard. The Complaint thus fails to state a First Amendment claim against Hoyle and BOLI.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

allegations that Shepard acted to "restrain" or "coerce" the nurses in the exercise of their rights, *see* FAC ¶¶ 66, 191, 193, Legacy alleges no *facts* that even suggest that any such coercion occurred. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). Legacy merely alleges that Shepard responded to the nurses' questions with suggestions Legacy disagrees with. That is not a violation of their First Amendment rights.

### 2. Legacy Lacks Standing Because They Allege No Redressable Injury

Even if the Complaint could be read as alleging a First Amendment violation, Legacy would lack standing because it alleges no injury capable of being redressed by this Court. To have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 578 U.S. at 338. Legacy does not allege that it or its employees have suffered or are threatened with any actual injury. In any event, there would be no way for this Court to redress any such injury, as Legacy does not (and cannot) seek damages and there is no ongoing or imminent harm to enjoin.

### a. Legacy does not allege it was injured by the Deputy Commissioner's meeting with its nurses.

To have standing, a plaintiff must have suffered an "injury in fact." *Id.* An injury in fact must be "actual or imminent." *Id.* at 339. It must be "particularized," "affect[ing] the plaintiff in a personal and individual way." *Id.* And it must be "concrete"—that is, although an injury may be intangible, it must nonetheless be "real, and not abstract." *Id.* at 339–40 (internal quotation marks omitted).

"A chilling of First Amendment rights can constitute a cognizable injury, so long as the chilling effect is not based on a fear of future injury that itself is too speculative to confer standing." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020)

Page 31 - DEFENDANTS' MOTION TO DISMISS
BM2/sv3/

(internal quotation marks and brackets omitted).  Mere "[a]llegations of a subjective 'chill'" are insufficient.  *Laird v. Tatum*, 408 U.S. 1, 13 (1972).

The Complaint alleges that Legacy's employees "have been deprived of their First Amendment rights."  FAC ¶ 201.[9]  It alleges that Shepard "interfered with Plaintiffs' employees in their exercise of their First Amendment right," and that he "intended to interfere with, restrain, or coerce them in the exercise of their federally protected rights."  FAC ¶¶ 185, 193.  But the Complaint alleges no *facts* that even suggest that any actual interference, restraint, or coercion occurred.  *See Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011) ("conclusory allegation" of harm is insufficient to establish standing).

The only factual allegation about the effect of Shepard's statement is that it "caused the nurses to understand that the only remedy for their concerns was to join a union; whereas, there were other options to address their concerns."  *See* FAC ¶ 66.  Legacy does not allege that the statement harmed its economic interests, nor that the statement prevented the nurses from pursuing "other options," such as "participating in the petition process to seek a rule amendment," *see* FAC ¶ 193, or otherwise exercising their right to petition the government.  The allegation is simply that incomplete advice from Shepard caused a temporary misunderstanding on the part of Legacy's employees.  That is not an injury sufficient to confer standing.

### b. Legacy cannot seek prospective relief because it does not allege an ongoing or future injury.

Even if Legacy or its employees had suffered an injury, there would be no way for this Court to redress that injury.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must

---

[9] Moreover, even if there were any injury to Plaintiffs' employees, prudential standing requirements would preclude Plaintiffs from asserting their employees' rights.  In general, "[p]rudential limitations on standing 'require that parties assert their own rights rather than rely on the rights or interests of third parties.'"  *Viceroy*, 75 F.3d at 488 (quoting *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987)).  In this case, Plaintiffs and their employees do not share a "congruence[] of interests" that would justify third-party standing.  *See Hong Kong Supermarket*, 830 F.2d at 1082.  Further, Plaintiffs may assert their employees' rights only if there is a "genuine obstacle" to the employees' assertion of their own rights.  *See Viceroy*, 75 F.3d at 489.  The nurses who met with Shepard face no such obstacle.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"). Legacy cannot seek prospective relief (the only relief sought in the Complaint), because they do not allege any ongoing or future injury.

The Complaint asks the Court for a declaratory judgment finding that, through Shepard's conduct, Shepard, Hoyle, and BOLI violated Section 1983. FAC at pp. 57–58. But "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 868 (9th Cir. 2017). A judgment that does not "affect[] the behavior of the defendant towards the plaintiff" is a mere "advisory opinion," which does not redress any injury. *Id.* (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)) (emphasis omitted). Accordingly, unless "the conduct complained of . . . presently affects [the plaintiff] or can reasonably be expected to affect [the plaintiff] in the future," a court cannot award "meaningful declaratory relief." *Id.*

Similarly, an injunction may be sought only if a "threatened injury" is "certainly impending." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a real or immediate threat that he will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (internal quotation marks and citation omitted).

Legacy's alleged injury stems from a single meeting. The Complaint does not allege that any similar future meetings are "certainly impending." Nor does the Complaint allege that the meeting occurred recently, such that the court could reasonably infer that this is the first of a series of planned meetings. (Legacy could not so allege, because the meeting it complains of occurred on February 26, 2019—more than three years ago. Shepard Decl. ¶ 2, Ex. 1.) Because Legacy has not alleged that an injury to itself (or its employees) is ongoing or impending, it lacks standing to seek prospective relief.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## V. CONCLUSION

This motion should be granted, and Legacy's complaint should be dismissed with prejudice.

DATED July  22 , 2022.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL #196129
Senior Assistant Attorney General
ALEX C. JONES #213898
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.state.or.us
Alex.Jones@doj.state.or.us
Of Attorneys for Defendants

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## APPENDIX: GROUNDS FOR DISMISSAL

| | NLRA preemption (Claim 1, Count 1) | Conflict preemption (Claim 1, Count 2) | State rulemaking requirements (Claim 1, Count 3) | State statutory authority (Claim 1, Count 4) | State nursing rules (Claim 1, Count 5) | Health care emergencies (Claim 1, Count 6) | First Amendment (Claim 2, Count 1) | Excessive fines (Claim 2, Count 2) | Equal protection (Claim 2, Count 3) |
|---|---|---|---|---|---|---|---|---|---|
| **Sovereign immunity – BOLI** (§ IV.A) | X | X | X | X | X | X | X | X | X |
| **Sovereign immunity – state law claims** (*Pennhurst*) (§ IV.B) | | | X | X | X | X | | | |
| ***Younger* abstention** (§ IV.C) | X | X | X | X | X | X | | X | X |
| **Failure to State a Claim** | § IV.D.2 | § IV.D.3 | | | | | § IV.F.1 | | § IV.D.1 |
| **Ripeness** (§ IV.E) | | | | | | | | X | |
| **Standing** (§ IV.F.2) | | | | | | | X | | |

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000