**Paula A. Barran,** OSB No. 803974
pbarran@barran.com
**Richard C. Hunt,** OSB No. 680770
rhunt@barran.com
Barran Liebman LLP
601 SW Second Avenue, Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Portland Division

| | |
|---|---|
| LEGACY HEALTH; LEGACY GOOD SAMARITAN HOSPITAL AND MEDICAL CENTER; LEGACY MOUNT HOOD MEDICAL CENTER; LEGACY MERIDIAN PARK HOSPITAL dba LEGACY MERIDIAN PARK MEDICAL CENTER; and LEGACY EMANUEL HOSPITAL & HEALTH CENTER dba LEGACY EMANUEL MEDICAL CENTER, | Case No.  3:22-cv-00573-HZ

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**(Oral Argument Requested)** |
| Plaintiffs, | |
| v. | |
| VAL HOYLE, in her official capacity as Commissioner of the Oregon Bureau of Labor and Industries; DUKE SHEPARD, in his official capacity as Deputy Commissioner of the Oregon Bureau of Labor and Industries, and OREGON BUREAU OF LABOR AND INDUSTRIES, | |
| Defendants. | |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................1

II.  DEFENDANTS' MOTIONS TO DISMISS EACH OF THE SIX COUNTS OF
     PLAINTIFFS' FIRST CLAIM FOR RELIEF SHOULD BE DENIED............................2

    A.    Defendants' Motion to Dismiss Count One of Plaintiffs' First Claim for Relief
     (NLRA preemption) should be denied....................................................................2

        1.    Plaintiffs have standing to bring an NLRA preemption claim ...................2

        2.    The Meal Timing Rule is preempted by the NLRA ...................................3

            a.    BOLI's Meal Timing Rule does not set minimum labor
           standards ......................................................................................4

            b.    The Meal Timing Rule is not a narrowly drawn opt-out
           provision .......................................................................................6

            c.    Plaintiffs' claims about BOLI's Meal Timing Rule cannot be
           trivialized by arguing that this is merely a dispute over how to
           protect health and safety of workers ..............................................7

            d.    Defendants' assertion – that the hardships imposed by its Meal
           Timing Rule are unrelated to the process of bargaining – is
           inconsistent with the breadth of the NLRA and disregards the
           allegations of Plaintiffs' complaint.................................................9

    B.    Defendants' Motion to Dismiss Count Two of Plaintiffs' First Claim for Relief
     (conflict preemption) should be denied; Plaintiffs state a claim for relief. ..........10

    C.    Defendants' Motion to Dismiss Counts Three through Six of Plaintiffs' First
     Claim for Relief should be rejected ....................................................................14

III.  PLAINTIFF'S SECOND CLAIM FOR RELIEF (42 USC § 1983) ....................................18

    A.    Plaintiff hospitals' Second Claim for Relief, Count One, properly alleges
     violations of the First Amendment and Defendants' Motion to Dismiss should
     be denied ..........................................................................................................18

        1.    Plaintiff hospitals have standing based on a common interest with their
           employees ..........................................................................................18

        2.    Plaintiffs have standing to assert their employees' rights.........................19

        3.    A credible threat is sufficient injury .......................................................19

4862-6933-1504, v. 1

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

4.      Diversion of resources is an injury ........................................................20

5.      Interference by state actors against individuals exercising their right to petition for a grievance is actionable under Section 1983 ........................21

6.      Plaintiffs have alleged sufficiently detailed facts to support their claim for relief for interference against individuals exercising their right to petition ........................................................................................................21

7.      Defendants' conduct discriminates on the basis of viewpoint and consequently violates the First Amendment ...............................................22

8.      Defendants cannot escape responsibility on the theory that there was only one meeting.......................................................................................24

9.      Defendants' Motion to Dismiss improperly relies upon factual allegations that are outside the pleadings and record................................25

B.      Defendants' Motion to Dismiss Count Two of the Second Claim for Relief alleging violation of the excessive fines clause incorporated by the due process clause should be denied ..........................................................................................26

1.      Standard: A fine is unconstitutionally excessive if the amount is grossly disproportional to the gravity of the offense, as Defendants' proposed fines are ..................................................................................................26

2.      BOLI's assessment of fines against Plaintiffs was excessive ...................27

3.      The court should reject Defendants' argument that this claim is not ripe..............................................................................................28

C.      Defendants' Motion to Dismiss Count Three of the Second Claim for Relief alleging violation of equal protection rights should be denied .............................32

IV.  THE COURT SHOULD REJECT DEFENDANTS' *YOUNGER* ABSTENTION ARGUMENTS.................................................................................................................35

V.  CONCLUSION ....................................................................................................................43

4862-6933-1504, v. 1                    **BARRAN LIEBMAN LLP**
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019)................20

*Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958 (9th Cir. 2016)........................5

*Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018)................................................... 35-36

*Associated Builders & Contractors, Golden Gate Chapter, Inc. v. Baca*, 769 F. Supp. 1537 (N.D. Cal. 1991)........................................................................................3

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) ....................................1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................1, 17, 33

*Biafora v. United States*, 773 F.3d 1326 (Fed. Cir. 2014) ...........................................31

*Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731 (1983).............................................22

*Boardman v. Inslee*, 978 F.3d 1092 (9th Cir. 2020) ........................................23, 33, 34

*Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011) ...............................................22

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020) ........................................................9

*Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995).........................................................22

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994).......................................................25

*Brown v. Ferro Corp.*, 763 F.2d 798 (6th Cir. 1985) .................................................30

*C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.,* 386 F.3d 263 (3d Cir. 2004) .....................11

*California v. U.S. HHS*, 941 F.3d 410 (9th Cir. 2019) .................................................24

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993)........................................25

*Chamber of Commerce of the United States v. Bragdon*, 64 F.3d 497 (9th Cir. 1995)..........3, 4

*Church of Scientology. v. Flynn*, 744 F.2d 694 (9th Cir. 1984).....................................1

*Close v. Sotheby's, Inc.,* 909 F.3d 1204 (9th Cir. 2018)...........................................10

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ...............36

*Conley v. Gibson*, 355 U.S. 41 (1957) ..........................................................33, 34

*Contreras v. City of Chicago,* No. 94 C 4201, 1994 U.S. Dist. LEXIS 17770 (N.D. Ill. Dec. 9, 1994) ........................................................................................................................42

*Ctr. For Democracy & Tech. v. Pappert,* 337 F. Supp. 2d 606 (E.D. Pa. 2004) ...........................20

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ................................................24

*Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006) ........................................................................29

*Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indus.*, 348 Or. 159 (2010) ......................11

*Ex parte Young*, 209 U.S. 123 (1908) ............................................................................................16

*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987) ....................................................................5

*Frew v. Hawkins*, 540 U.S. 431 (2004) .....................................................................................15, 16

*Gibson v. Berryhill*, 411 U.S. 564 (1973) .......................................................................................42

*Golden State Transit Corp. v. Los Angeles,* 475 U.S. 608 (1986) ....................................................3

*Green Party of Tenn. v. Hargett*, 767 F.3d 533 (6th Cir. 2014) .....................................................31

*Grieve v. Tamerin*, 269 F.3d 149 (2d Cir. 2001) ...........................................................................36

*Hong Kong Supermarket v. Kizer*, 830 F.2d 1078 (9th Cir. 1987) ...................................................2

*Houchins v. KQED, Inc.*, 438 U.S. 1 (1978) ...................................................................................23

*Interpipe Contr., Inc. v. Becerra*, 898 F.3d 879 (9th Cir. 2018) ......................................................7

*Int'l Ass'n of Machinists & Aero. Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132 (1976) .3

*Jones v. Rath Packing Co.*, 430 U.S. 519 (1977) ...........................................................................10

*Kingdomware Techs, Inc v. United States,* 579 U.S. 162 (2016) ....................................................24

*Klein v. Or. Bureau of Labor & Indus.*, 317 Or. App. 138 (2022) .................................................29

*Krahm v. Graham*, 461 F.2d 703 (9th Cir. 1972) ...........................................................................42

*Kugler v. Helfant*, 421 U.S. 117  (1975) ........................................................................................42

*Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003) ........................................................... 4-5

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993) ...............................23

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ..............................................................25

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) .....................................................................................6

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ..............................................................25

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ...........................................................................23

*McMichael v. County of Napa*, 709 F.2d 1268 (9th Cir. 1983) .........................................2

*Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724 (1985).....................................................4, 5

*MetroPSC Cal., LLC v. Picker,* 970 F.3d 1106 (9th Cir. 2020) ......................................12

*Michael v. Letchinger*, No. 10 C 3897, 2011 U.S. Dist. LEXIS 86685 (N.D. Ill. Aug. 5, 2011)....41

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ..........36

*Murphy v. Commonwealth of Va.,* 896 F. Supp. 577 (E.D. Va. 1995) ...........................42

*N.Y. State Dep't of Soc. Servs. v. Dublino,* 413 U.S. 405 (1973) ..................................12

*NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449 (1958) ................................................19

*Nat'l Broad. Co. v. Bradshaw*, 70 F.3d 69 (9th Cir. 1995) .............................................6

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989)...........35

*NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822 (1984) ............................................. 9-10

*O'Keefe v. Van Boening*, 82 F.3d 322 (9th Cir. 1996).................................................22

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986).........36

*Olech v. Vill. of Willowbrook*, No. 97 C 4935, 2002 U.S. Dist. LEXIS 9266 (N.D. Ill. May 23, 2002) ...................................................................................................................32

*Papasan v. Allain*, 478 U.S. 265 (1986) .........................................................................1

*Parks Sch. of Business v. Symington*, 51 F.3d 1480 (9th Cir. 1995).................................1

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)...........................14, 15

*Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644 (2003) ..................................12

*Raygor v. University of Minn.*, 604 N.W.2d 128 (2000) .................................................14

*Rogers v. Saylor*, 306 Or. 267 (1988) ...........................................................................14

*Rosacker v. Multnomah Cty.*, 43 Or. App. 583 (1979) ...................................................14

*Rynearson v. Ferguson*, 903 F.3d 920 (9th Cir. 2018) ..................................................35

*Sacramento Cty. Retired Emples. Ass'n v. Cty. Of Sacramento*, 975 F. Supp. 2d 1150 (E.D. Cal. 2013) ...................................................................................................................34

4862-6933-1504, v. 1

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

*Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1 (2000) ........................................................ 30

*Shaw v. Murphy*, 532 U.S. 223 (2001) ............................................................................................. 22

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 959 F.3d 341 (9th Cir. 2020) .. 30

*Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004) ................................................. 20

*Spencer v. Kemna,* 523 U.S. 1 (1988) ............................................................................................... 24

*Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187 (9th Cir. 1987) ................................................... 1

*Tarabochia v. Hill*, 140 Fed. Appx. 753 (9th Cir. 2005) ................................................................. 22

*Teamsters Union* v. *Oliver,* 358 U.S. 283 (1959) ............................................................................... 3

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) ................................................. 30

*Timbs v. Indiana*, 139 S. Ct. 682 (2019) ......................................................................................... 26

*Toilet Goods Ass'n v. Gardner*, 387 U.S. 158 (1967) ...................................................................... 30

*Torres v. Frias,* 68 F. Supp. 2d 935 (N.D. Ill. 1999) ................................................................. 39, 40

*United States v. Bajakajian*, 524 U.S. 321 (1998) .......................................................................... 26

*United States v. The State of Idaho*, Case No. 1:22-cv-00329-BLW (D. Idaho Aug. 24, 2022) ..... 13

*Va. Office for Prot. & Advocacy v. Stewart*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011) ...................................................................................................................................... 16

*Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) .......................................................... 19

*Verizon Md. Inc. v. PSC*, 535 U.S. 635 (2002) ................................................................................ 16

*Viceroy Gold Corp. v. Aubry*, 75 F.3d 482 (9th Cir. 1996) ................................... 2, 5, 6, 18, 34, 35

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) .......................................... 25

*Willowbrook v. Olech*, 528 U.S. 562 (2000) .................................................................................... 32

*Young v. Klutznick*, 652 F.2d 617 (6th Cir. 1981) ........................................................................... 30

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................................................... 35, 37

**Federal Codes and Regulations**

28 U.S.C.S. § 1367 ..................................................................................................................... 14, 15

29 U.S.C.S. § 157 ................................................................................................................................ 4

4862-6933-1504, v. 1

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

29 U.S.C.S. § 158 .................................................................................................................. 4

42 U.S.C. § 1302 .................................................................................................................. 13

42 USC § 1395cc(a)(1)(I)(i) ................................................................................................ 13

42 USC § 1395dd .................................................................................................................. 13

42 USC § 1395dd(f) .............................................................................................................. 13

42 U.S.C. § 1395hh .............................................................................................................. 13

42 U.S.C. § 1395rr ................................................................................................................ 13

42 U.S.C. § 1861 .................................................................................................................. 13

42 U.S.C. § 1983 .................................................................................................................. 18

42 C.F.R. § 482 ............................................................................................................... 12, 13

42 C.F.R. § 482.11 ................................................................................................................ 13

## State Statutes and Rules

OAR 839-020-0050 ........................................................................................................ 2, 5, 28

OAR 839-020-0050(2)(a) ...................................................................................................... 5

OAR 839-020-0050(2)(c) ...................................................................................................... 5

OAR 839-020-0050(2)(d) .................................................................................................. 4, 5

OAR 839-020-0050(3)(b) ...................................................................................................... 5

OAR 839-020-0050(7) ....................................................................................................... 4, 6

OAR 839-020-0050, App. A .................................................................................................. 5

ORS 183.390 ................................................................................................................... 17, 40

ORS 441.168 ........................................................................................................................ 40

## Other Authorities

Robert C. Farrell, The Equal Protection Class of One Claim: *Olech, Enquist, and the Supreme
Court's Misadventure*, 61 S.C. LAW REV. 111 (2009) ................................................... 33

Seth F. Kreimer, *Censorship by Proxy: The First Amendment, Internet Intermediaries, and the
Problem of the Weakest Link*, 155 U. PA. L. REV. 11 (2006) ....................................... 19

Page vii – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# I.  INTRODUCTION

From time to time federal courts have found it necessary to intervene when what could have been a purely state regulatory matter or action ends up impinging upon federal rights or responsibilities.  The Legacy Plaintiffs' lawsuit presents such a case.

The allegations of Plaintiffs' complaint cannot be ignored but rather must be taken as true. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see, e.g., Church of Scientology. v. Flynn*, 744 F.2d 694, 696-97 (9th Cir. 1984) (concluding plaintiff sufficiently alleged the existence of defamatory meaning in defendant's statements and denying defendant's motion to dismiss).  The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) (cited in Defendants' Motion to Dismiss at page 8).[1]  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. Dismissal is appropriate only where the plaintiff fails to state a claim supportable by a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (internal citations omitted).

Defendants assert that the court is "'not bound to accept as true a legal conclusion couched as a factual allegation'" (Motion, p. 8.) (citing *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). That principle is inapplicable here, where Plaintiffs' legal conclusions are supported by detailed facts and where even Defendants apparently considered it necessary to support its motions with declarations to present facts outside the pleadings.

---

[1] Hereinafter, Defendants' Motion to Dismiss shall be referred to as "Motion, p. ___."

Page 1 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

## II.  DEFENDANTS' MOTIONS TO DISMISS EACH OF THE SIX COUNTS OF PLAINTIFFS' FIRST CLAIM FOR RELIEF SHOULD BE DENIED

Count One of Plaintiffs' First Claim for Relief seeks a declaration that OAR 839-020-0050 (hereinafter referred to as the "Meal Timing Rule") is invalid because the rule is preempted by the National Labor Relations Act ("NLRA").  Count Two (conflict preemption of state regulation by federal law) seeks a declaration that the Meal Timing Rule is invalid because it is preempted by and conflicts with federal law.  Count Three seeks a declaration that the Meal Timing Rule is invalid for failure to follow applicable rulemaking requirements. Count Four seeks a declaration that the Meal Timing Rule exceeds relevant statutory authority. Count Five seeks a declaration that the Meal Timing Rule is invalid because it conflicts with clearly stated rules governing the practice of nursing. Count Six seeks a declaration that the Meal Timing Rule interferes with the response to public health emergencies. The complaint states a claim upon which relief can be granted as to each of these.

### A.    Defendants' Motion to Dismiss Count One of Plaintiffs' First Claim for Relief (NLRA preemption) should be denied

#### 1.    Plaintiffs have standing to bring an NLRA preemption claim

"The constitutional limitations of article III contain three components: (1) a threatened or actual distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the alleged injury and the defendant's challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury." *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987) (citing *McMichael v. County of Napa*, 709 F.2d 1268, 1270 (9th Cir. 1983)). Plaintiffs have standing.

Plaintiffs allege an actual, distinct, and palpable injury.  The manner in which the Bureau of Labor and Industries ("BOLI" or "Agency") has written, issued and enforced  the Meal Timing Rule against Plaintiffs but not against similarly situated healthcare institutions places Plaintiffs at an ongoing competitive disadvantage in comparison to unionized hospitals which are exempted from the onerous rules. *See Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 488-89 (9th Cir. 1996) (concluding that placing an entity at a competitive disadvantage is an injury in fact and thus supports standing).

Page 2 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

*See also Associated Builders & Contractors, Golden Gate Chapter, Inc. v. Baca*, 769 F. Supp. 1537, 1542 (N.D. Cal. 1991) ("The economic consequences to [plaintiff's] members, both in terms of increased direct costs and reduced competitiveness within the construction industry, satisfies the injury-in-fact requirement."), *aff'd sub nom Chamber of Commerce of the United States v. Bragdon*, 64 F.3d 497 (9th Cir. 1995). BOLI's enforcement of its Meal Timing Rule, because Plaintiffs' are not permitted to enjoy the exemption offered to similarly situated union hospitals, has caused actual financial injury to Plaintiffs and striking down the rule would redress Plaintiffs' injury, in part, by eliminating the competitive advantage unionized hospitals are granted. In addition, Plaintiffs have been injured because they have been informed they will be fined and now must spend large sums to defend against BOLI's further imposition of excessive fines.

### 2.    The Meal Timing Rule is preempted by the NLRA

"[S]tate legislation, which interferes with the economic forces that labor or management can employ in reaching agreements, is pre-empted by the NLRA because of its interference with the bargaining process." *Bragdon,* 64 F.3d at 501 (citing *Golden State Transit Corp. v. Los Angeles,* 475 U.S. 608 (1986)). In addition, "[S]tate attempts to influence the substantive terms of collective-bargaining agreements are as inconsistent with the federal regulatory scheme as are such attempts by the NLRB: 'Since the federal law operates here, in an area where its authority is paramount, to leave the parties free, the inconsistent application of state law is necessarily outside the power of the State.'" *Int'l Ass'n of Machinists & Aero. Workers v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 153 (1976) (citing *Teamsters Union* v. *Oliver,* 358 U.S. 283, 296 (1959)); *see also Bragdon*, 64 F.3d at 501 ("[T]he substantive requirements could be so restrictive as to virtually dictate the results of the contract. The objective of allowing the bargaining process 'to be controlled by the free-play of economic forces' can be frustrated by the imposition of substantive requirements, as well as by the interference with the use of economic weapons."). *Bragdon* articulated an issue which is important in this dispute and the resolution of Defendants' motion: "The question then becomes the extent of the substantive requirements that a state may impose on the bargaining process." 64

Page 3 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

F.3d at 501.  That requires a factual determination on evidence that has not yet been presented to the court, and turns a blind eye to the very concern raised in *Bragdon* that "this substitutes the free-play of political forces for the free-play of economic forces that was intended by the NLRA."  *Id.* at 504.

The imposition of the Meal Timing Rule on nonunion hospitals—but not on unionized hospitals—penalizes nonunion hospitals and their employees who have chosen not to unionize. (Plaintiffs' First Amended Complaint[2] ¶ 100.) States are prohibited from passing laws that interfere with the workers' freedom to choose or not choose to join a union. Section 7 of the NLRA protects the rights of employees to "form, join, or assist labor organizations . . . and . . . to refrain from any or all of such activities . . . ." 29 U.S.C.S. § 157.  (FAC ¶ 101.)  Section 8 of the NLRA prohibits employers and labor organizations from interfering with employee rights protected under Section 7 of the statute. 29 U.S.C.S. § 158. (FAC ¶ 101.)  These provisions protect a worker's right freely to choose between unionization and non-unionization in accordance with their personal viewpoints. (FAC ¶ 101.) The provision of OAR 839-020-0050(2)(d) that requires specific limits as to when meal periods are to be taken, particularly as to employees working shifts of 12 hours or more, imposes an onerous burden. (FAC ¶ 103.) When the Meal Timing Rule is read together with the provision of OAR 839-020-0050(7), which permits unionized employers through collective bargaining to modify the state's regulations, the Meal Timing Rule runs afoul of federal law and is preempted.  (FAC ¶ 103.)

This court should reject Defendants' challenge to NLRA preemption. (Motion, pp. 17-20.)

### a.    BOLI's Meal Timing Rule does not set minimum labor standards

Defendants mistake the legal principles that have developed to address those narrow circumstances in which a state may set minimum labor standards.  In *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 757-58 (1985), *overruled in part on other grounds by Ky. Ass'n of Health Plans v.*

---

[2] Hereinafter, Plaintiffs' First Amended Complaint is referred to as "FAC."

Page 4 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

*Miller*, 538 U.S. 329 (2003), and *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7 (1987), the Court held that in certain circumstances the NLRA does not preempt a state law regulation which "establishes a minimum labor standard that does not intrude upon the collective-bargaining process." *Fort Halifax*, 482 U.S. at 7; accord *Metro. Life*, 471 U.S. at 744-45. (FAC ¶ 107.) The state Defendants here rely upon *Fort Halifax*, 482 U.S. at 22 (upholding state law requiring severance payments to laid off employees but allowing unionized workers to opt out through a CBA); *Viceroy*, 75 F.3d at 489-90 (upholding California law setting a maximum work day standard for mine workers but allowing unionized workers to opt out through a collective bargaining agreement); *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 964-65 (9th Cir. 2016) (upholding county ordinance setting a minimum wage and time-off compensation but allowing unionized workers to opt out through a collective bargaining agreement). (Motion, pp. 17-18.) This is not such a case, and the Meal Timing Rule is not a minimum standard regulation.

BOLI's Meal Timing Rule, which presents a complicated component of OAR 839-020-0050(2)(d), does not prescribe a minimum labor standard. Such a generally applicable minimum standards would perhaps be such as requiring that a meal period be not less than 30 continuous minutes (OAR 839-020-0050(2)(a)) or requiring that an employee who is not relieved of all duties for 30 continuous minutes must be paid for the entire 30-minute meal period (OAR 839-020-0050) or providing that an employee who has worked a specific number of hours shall be entitled to a specific number of meal periods (OAR 839-020-0050(2)(c) and App. A to OAR 839-020-0050). (FAC ¶ 107.) The Meal Timing Rule falls outside those parameters. It is not generally applicable. It can be applicable or not depending on whether an employee is or is not paid a salary even though the duties may be identical, and it allows the substitution of an undefined shorter period in the case of "industry practice or custom." OAR 839-020-0050(3)(b). It includes special requirements for continuous processes and other circumstances. The rule requires more than 1700 words to address different kinds of specific or unique situations.

Page 5 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The rule also differs in degree and kind from minimum standards because it prescribes rigid requirements as to the exact, short two-hour time period after the completion of the third hour worked and completed prior to the commencement of the sixth hour worked when healthcare workers working 12 hours or more must take their meal breaks with different requirements for different schedules. (FAC ¶ 108.) Since all employees would not be taking their meal break at the same time because of patient needs, some employees working a long shift would be required to take the meal break immediately after the completion of the third hour worked, possibly close in time to having taken a rest period, and then be on duty the remaining eight hours without a meal period. The requirement imposes an undue hardship, endangers health of workers and their patients, and places licensed healthcare personnel at risk of violating their nursing standards and potentially losing their licenses. (FAC ¶ 108.)

<b>b.    The Meal Timing Rule is not a narrowly drawn opt-out provision</b>

The Supreme Court in *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) stated that its holding "cast no shadow on the validity of . . . familiar and narrowly drawn opt-out provisions." Defendants rely upon *Viceroy* to argue that its rule is valid, apparently believing it to be such a "familiar and narrowly drawn" provision. 75 F.3d at 489. Defendants' mistake the import of *Viceroy,* in which the court held an eight-hour cap on daily work provided minimum protection for mine workers and was a narrowly tailored opt-out provision and therefore was not preempted. *Id*. at 489-90; *accord Nat'l Broad. Co. v. Bradshaw*, 70 F.3d 69, 72-73 (9th Cir. 1995) (requiring broadcast industry to pay double time for work in excess of 12 hours narrowly drawn opt-out; not preempted).

BOLI's Meal Timing Rule, however, is not a familiar or narrowly drawn or narrowly tailored opt-out provision. Defendants have not provided the court with any argument or evidence to support a theory that the provision is familiar or narrowly drawn. Instead, OAR 839-020-0050(7) broadly provides that any union employees covered by any collective bargaining agreement in any industry performing any type of work may opt out and change meal and rest periods in numerous ways, including but not limited to:

Page 6 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

- Changing the time when the meal period and rest period are taken;

- Changing the length of the meal period or rest period;

- Providing for flexibility of scheduling;

- Extending the duration of the shift for which meal and rest periods are permitted;

- Allowing employees to combine meal and rest periods;

- Eliminating all requirements as to the timing of meal period breaks;

- Decreasing the number of meal periods;

- Decreasing the number of rest periods; and

- Combining meal periods and rest periods.

    **c.**    **Plaintiffs' claims about BOLI's Meal Timing Rule cannot be trivialized by arguing that this is merely a dispute over how to protect health and safety of workers**

Defendants argue "Legacy's disagreement with BOLI over how to best safeguard the health and safety of workers does not distinguish this case from the 'flotilla of cases upholding generally applicable labor laws that include opt-out provisions limited to CBAs.'" (Motion, p. 20) (quoting *Interpipe Contr., Inc. v. Becerra*, 898 F.3d 879, 889 (9th Cir. 2018). This is not a trivial spat. Defendants, who have already been unable to account for their use of penalty dollars, seek to collect millions of dollars in penalties from essential public health services providers, and assign the maximum possible amount to *de minimis* claimed infractions in a way that will disable many essential services. Plaintiffs are expert medical professionals and healthcare providers who understand far better than defendants how the Meal Timing Rule interferes with their work of providing essential healthcare services such as emergency departments and neonatal care. They are also painfully familiar with a longstanding shortage of essential healthcare workers which was known to have begun before the turn of this century.

The state trivializes Legacy's assertions here by suggesting that this is only a single dispute over how to protect the health and safety of workers. (Motion, p. 20.) To the contrary, Plaintiffs' complaint articulates in detail that this dispute implicates Constitutional protections, rulemaking,

Page 7 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

professional licensure, and critical patient care. The complaint includes multiple allegations, including those summarized below:

- The Meal Timing Rule imposes an undue hardship, endangers health of workers and their patients, and places nurses at a risk of violating their nursing standards and potentially losing their licenses.  (FAC ¶ 108.)

- The Meal Timing Rule requires Plaintiffs' employees working 12-hour shifts to take a meal break mid-morning and then work the duration of their shift (eight hours or more) with no meal break.  (FAC ¶ 26.)

- The Meal Timing Rule interferes with Plaintiff hospitals' ability to carry out their public and/or charitable purposes and contributes to fatigue and discomfort of nurses and increased operational expenses.  (FAC ¶ 30.)

- The Meal Timing Rule assumes employees operate eight-hour shifts and is not designed for healthcare employees working 12-hour shifts or longer.  (FAC ¶ 30.)

- In light of a longstanding and nationwide shortage of nursing professionals and other healthcare workers, healthcare employees are burdened by the Meal Timing Rule when licensure requirements provide that nurses are forbidden from leaving patients when to do so would jeopardize the patients' safety and health.  (FAC ¶¶ 35-36.)

- Emergency Department nurses (who are the sole focus of BOLI in its Notices of Intent to Assess Penalties (NOIs) directed at Plaintiff Meridian Park Hospital and Plaintiff Mount Hood Medical Center) and Family Birth Center employees (who are the principal focus of BOLI's NOIs directed at Good Samaritan Hospital) are faced with challenges that require immediate and uninterrupted attention of nurses or teams of nurses.  (FAC ¶¶ 38-39.)

- Healthcare practitioners are not fungible; thus, for example, an Emergency Room employee cannot fill in to provide breaks for an employee in Family Birthing or vice versa.  (FAC ¶ 40.)

Page 8 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The court should reject Defendants' mischaracterization of this dispute which asks the court, improperly, to ignore extensive factual allegation which support Plaintiffs' claims for relief.

> **d.    Defendants' assertion – that the hardships imposed by its Meal Timing Rule are unrelated to the process of bargaining – is inconsistent with the breadth of the NLRA and disregards the allegations of Plaintiffs' complaint.**

Defendants recognize that Plaintiffs allege (among other things) that the rule "imposes an undue hardship, endangers health of workers and their patients, and places nurses at risk of violating their nursing standards and potentially losing their licenses but dismiss those concerns by arguing they are 'unrelated in any way to the process of bargaining or self-organization.'" (Motion, pp. 19-20). Such an argument disregards the scope of the federal NLRA, whose provisions extend well beyond collective bargaining and self-organization.

A cornerstone of this law, which has its origins in the 1930's and has defined this country's labor policy for many decades, is Section 7 of the Act which provides that: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, **and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection** . . . ." (Emphasis added).

Defendants' argument, that the NLRA coverage may be narrowed to self-organization, is incomplete and represents an inaccurate understanding of the scope of the federal labor law. (Motion, p. 19.)  The interests governed by the NLRA are broader and include "concerted activities" for "other mutual aid or protection."  Congress could have enacted a limited law to cover just union or self-organizing, or even narrowed the scope of the law to a smaller and defined set of circumstances. Congress, however, decided to reach a very broad set of circumstances with Section 7, including "concerted activity."[3] *See NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 830-

---

[3] As the court recently commented in *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020), interpreting a different law "Congress could have taken a more parsimonious approach" but chose not to.

Page 9 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

31 (1984) (stating that "concerted activity" does not confine itself to a narrow meaning and recognizing the possibility that an individual employee may be engaged in concerted activity when he acts alone).

Defendants' argument addresses only part of the scope of Section 7, leaving out the salient portion upon which Legacy relies: the protection of Section 7 rights to engage in concerted activity. Plaintiffs made this clear in their First Amended Complaint where they allege "Those employees were engaged in collective activity seeking to discuss an onerous working condition." (FAC ¶ 61.)

Defendants' Motion to Dismiss Count One of Plaintiffs' First Claim for Relief (NLRB preemption of state regulation) should be denied. (Motion, pp. 17-20.)

**B.      Defendants' Motion to Dismiss Count Two of Plaintiffs' First Claim for Relief (conflict preemption) should be denied; Plaintiffs state a claim for relief.**

Defendants' Motion to Dismiss the conflict preemption claim (Motion, pp. 20-24) should be denied because Defendants either misread or ignore Plaintiffs' allegations at FAC ¶¶ 121-43, and because they mistake the legal authorities applicable to conflict preemption. Preemption emanates from the Supremacy Clause of the Constitution which prohibits states from interfering with the exercise of federal constitutional powers. *Close v. Sotheby's, Inc.,* 909 F.3d 1204, 1209 (9th Cir. 2018). Preemption can take different identified forms such as express preemption or field preemption but it can also take the form of conflict preemption when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. In such a case, the court's task is "to determine whether, under the circumstances of this particular case, [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Jones v. Rath Packing Co.*, 430 U.S. 519, 526 (1977) (internal citation omitted). "This inquiry requires us to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Id.*

The state Defendants' arguments to challenging express and field preemption are forms of preemption that Plaintiffs have not even alleged and therefore arguments the court need not consider.

Page 10 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

(Motion, p. 23.) Instead, Plaintiffs allege the Meal Timing Rule offends principles of conflict preemption because the rule and its enforcement stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress which has regulated this area through its federal funding programs to nonprofit hospitals. Those federal programs require recipients to comply with detailed performance standards because of and in the use of federal funding. (FAC ¶¶ 125-35.) The nature of federal funding and its accompanying regulations can readily be interrupted or affected by state laws and regulations which collide with or interfere with federal goals. *See C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.,* 386 F.3d 263, 270-72 (3d Cir. 2004) (concluding that the purpose of National Flood Insurance Program would have been compromised by application of state tort law; state tort lawsuits would have undermined the program's goal); *see also Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indus.*, 348 Or. 159, 186 (2010) ("[W]hatever the wisdom of Congress's policy choice . . . the Supremacy Clause requires that we respect that choice when, as in this case, state law stands as an obstacle to the accomplishment of the full purposes of the federal law.").

The Legacy Plaintiffs allege that they are nonprofit organizations which are subject to conditions and requirements imposed by federal statues creating Medicare and Medicaid, that BOLI's Meal Timing Rule and its enforcement of that rule constitutes an obstacle to compliance with the tax exempt requirements, and that as a consequence BOLI's actions will result in diverting of Medicare/Medicaid funds that will place Plaintiffs at risk that they will not be able to meet the standards of Medicare/Medicaid. (FAC ¶¶ 123-42.) The state, in its Motion to Dismiss, mischaracterizes Plaintiffs' allegations regarding conflict preemption and incorrectly and repeatedly asserts that Plaintiffs have alleged that it would be "easier to meet those requirements," "easier for employers to qualify for federal funds," "easier for recipients to access funds," and "easier to receive and spend federal funds." (Motion, p. 23.) That is not Plaintiffs' argument or claim and it is not a reasonable argument here. (Motion, p. 23.) Plaintiffs allege that the state's regulation presents an

Page 11 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

obstacle to federal programs that are essential to the operation of their nonprofit hospitals which are very dependent upon federal funding to carry out their public purpose.

Defendants cite *N.Y. State Dep't of Soc. Servs. v. Dublino,* 413 U.S. 405, 422-23 (1973). (Motion, p. 23.) But *Dublino* does not apply here because that dispute was a federal program that authorized the state program: "Here, by contrast, the Act allows for complementary state work incentive programs and procedures incident thereto . . . ." 413 U.S. at 422. Moreover, as the Court later explained, "we left open questions concerning possible conflicts with the federal program for resolution in further proceedings." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 667 (2003). Similarly, the incomplete state of the record was at issue in *Pharm.,* which Defendants cite. (Motion, p. 23.) *Pharm.* explained that "[a]t this stage of the proceeding, the severity of any impediment that Maine's program may impose on a Medicaid patient's access to the drug of her choice is a matter of conjecture." 538 U.S. at 667-68. If anything, those comments reinforce that Defendants in the case at bar are seeking dismissal with no record for the court to review. In any event, BOLI's demand for millions of dollars in penalties and the Agency's ongoing threats are not a "modest impediment" to the Legacy hospitals or their ability to obtain the kind of funding necessary to serve the public.

Finally, Defendants cite *MetroPSC Cal., LLC v. Picker,* 970 F.3d 1106, 1117-18 (9th Cir. 2020). (Motion, p. 22.) That dispute involved a coordinated dual regulatory scheme (which is not in place in Legacy's dispute). The Legacy hospitals have not alleged that they were harmed by a dual regulatory scheme. Instead, the claims are directed at a state law scheme that impedes federal programs.

BOLI's meal timing regulation presents an obstacle to the accomplishment and execution of the federal regulations governing tax exempt status of charitable hospitals and the conditions of participation for hospitals receiving Medicare and Medicaid funding. 42 C.F.R. § 482 sets forth requirements of participation for hospitals, such as the Legacy hospitals, receiving Medicare and Medicaid and emphasizes that hospitals must meet emergency needs of **patients**. (FAC ¶¶ 132-34,

Page 12 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

141.)  The federal Emergency Medical Treatment and Labor Act (EMTALA) requires hospitals that receive federal Medicare funds to provide necessary stabilizing treatment to patients who arrive at their emergency departments while experiencing a medical emergency which includes conditions that present risk to life as well as those that place a patient's health in serious jeopardy or risk serious impairment to bodily functions or serious dysfunction of any bodily organ or part.  42 USC § 1395dd.  EMTALA preempts the requirement of any state or local law to the extent it directly conflicts with 42 USC § 1395dd.  See 42 USC § 1395dd(f).  Medicare funding recipients are required to agree to provide such services.  See 42 USC § 1395cc(a)(1)(I)(i).  Most recently, on August 24, 2022 (just before this memorandum is filed), the federal government obtained a preliminary injunction against the State of Idaho in *United States v. The State of Idaho*, Case No. 1:22-cv-00329-BLW (D. Idaho Aug. 24, 2022) on the grounds that an Idaho state law conflicts with EMTALA. Furthermore, Medicare's Conditions of Participation include, for example, requirements of nursing services. *See* 42 C.F.R. § 482.  Those regulations impose standards for service with a plan of administrative authority, place the responsibility on the director of nursing to determine the types and numbers of personnel and staff necessary to provide care.  They require 24-hour nursing services unless a federal waiver is provided.  They require a registered nurse to assign the care of each patient in accordance with the **patient's** needs. The same rules impose standards on emergency departments including that they "meet the emergency needs of **patients** in accordance with applicable standards of practice."  These requirements are imposed on recipients of federal funding as a condition of participation in Medicare as authorized by 42 U.S.C. §§ 1302, 1395hh, 1395rr and 1861. *See* 42 C.F.R. § 482.  42 C.F.R. § 482.11 provides that a hospital "must be in compliance with applicable Federal laws related to the health and safety of patients."

At a very basic level, the court can follow the money. The Meal Timing Rule, which Plaintiffs allege can and does interfere with the quality of patient care, provides a mechanism for BOLI to impose a penalty of $1,000 per claimed violation, which is then used to defray the administrative costs of the Agency, previously to support breast feeding education, and pay to the

Page 13 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

department of state lands to fund education. All this diverts substantial dollars from providing necessary healthcare or funding charitable programs.

### C.    Defendants' Motion to Dismiss Counts Three through Six of Plaintiffs' First Claim for Relief should be rejected

Defendants ask the court to dismiss four counts from the First Claim for Relief for the same reasons; those arguments are addressed collectively in this section. The claims are Count Three (the invalidity of rulemaking), Count Four (exceeding authority), Count Five (conflicting superseding requirements) and Count Six (invalidity due to critical healthcare emergencies).

Defendants first make the blanket statement that they cannot be sued unless they expressly consented, and that neither the state nor BOLI has consented. (Motion, p. 8.) Such consent is statutory. ORS § 30.265(1) provides that, subject to some limitations, "every public body is subject to civil action for its torts and those of its officers, employees and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598." *See also Rosacker v. Multnomah Cty.*, 43 Or. App. 583, 587 (1979) ("We construe the last sentence of ORS 30.265(1) to incorporate by reference the wrongful conduct set forth in § 1983 as constituting a tort by definition under the Oregon Tort Claims Act thereby providing a state-created right for those deprived of any rights, privileges or immunities secured by the Constitution of the United States."); *see also Rogers v. Saylor*, 306 Or. 267, 278 (1988) (state cannot limit recovery in § 1983 action just as it cannot require that the plaintiff first submit his claims to the government).

Defendants next contend that Counts Three through Six are barred by the Eleventh Amendment, citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), superseded by statute as stated in *Raygor v. University of Minn.*, 604 N.W.2d 128 (2000). (Motion, p. 9.) *Pennhurst*, however, was decided six years before the enactment of 28 U.S.C.S. § 1367, which codified "supplemental" jurisdiction, and which now provides that "Except as provided in

Page 14 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.S. § 1367.

The exceptions, subsections (b) and (c) are diversity jurisdiction and circumstances under which a court may decline supplemental jurisdiction. Defendants, accordingly, overstate the scope of *Pennhurst* and the *Pennhurst* Court itself did not go so far:

> The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co.* v. *Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945). See, *e. g., In re Ayers*, 123 U.S. 443, 487-492 (1887); *Louisiana* v. *Jumel*, 107 U.S. 711, 720-723, 727-728 (1883). Thus, "[the] general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii* v. *Gordon*, 373 U.S. 57, 58 (1963) *(per curiam)*. And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. See *Cory* v. *White*, 457 U.S. 85, 91 (1982).

The *Pennhurst* Court added this footnote:

> "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" (citing *Dugan* v. *Rank*, 372 U.S. 609, 620 (1963)).

*Pennhurst*, 465 U.S. at 101, n.11.

In a 2004 decision, *Frew v. Hawkins*, 540 U.S. 431, 439 (2004), the Court itself distinguished *Pennhurst* and held it was inapplicable in a dispute about a decree which required implementation of Medicaid in a detailed way, issues which relate to the Medicare issues discussed above:

> *Pennhurst* is distinguishable. In that case we found the rationale of *Ex parte Young* inapplicable to suits brought against state officials alleging violations of state law. *Id.*, 465 U.S. 89 at 106, 79 L. Ed. 2d 67, 104 S. Ct. 900. Jurisdiction was improper because "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Ibid.* Here, by contrast, the order to be enforced is a federal decree

Page 15 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

entered to implement a federal statute. The decree does implement the Medicaid statute in a highly detailed way, requiring the state officials to take some steps that the statute does not specifically require. The same could be said, however, of any effort to implement the general EPSDT statute in a particular way. The decree reflects a choice among various ways that a State could implement the Medicaid Act. As a result, enforcing the decree vindicates an agreement that the state officials reached to comply with federal law.

*Frew v. Hawkins*, 540 U.S. 431, 439 (2004).

Defendants' reliance on *Pennhurst* is misplaced.

**The *Ex parte Young* exception also supports jurisdiction here.**

In *Ex parte Young*, 209 U.S. 123, 144-45 (1908) the Supreme Court held that a lower federal court could enjoin a state official from forcing certain railroad acts that set rates for freight and passengers, holding that the case involved federal questions. This exception has been widely applied. *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 646 (2002) held that the Eleventh Amendment did not bar plaintiff's claim against state commission and individual commissioners, stating in part:

> In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Idaho v. Coeur d' Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'CONNOR, J., joined by SCALIA and THOMAS, JJ., concurring in part and concurring in judgment); see also *id.*, 521 U.S. at 298-299 (SOUTER, J., dissenting, joined by STEVENS, GINSBURG, and BREYER, JJ.). Here Verizon sought injunctive and declaratory relief, alleging that the Commission's order requiring payment of reciprocal compensation was pre-empted by the 1996 Act and an FCC ruling. The prayer for injunctive relief -- that state officials be restrained from enforcing an order in contravention of controlling federal law -- clearly satisfies our "straightforward inquiry."
> *Id.*

See also *Va. Office for Prot. & Advocacy v. Stewart*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (applying *Ex Parte Young* to a claim brought by one independent state agency against a state commissioner and explaining that "because an unconstitutional legislative enactment is 'void,' a state official who enforces that law 'comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'").

Page 16 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

Defendants' challenge to Counts Three through Six of the First Claim for Relief is premised upon an erroneous assertion that each count implicates state law exclusively when instead the claims impinge on federal authority and undermine federal programs. Counts Three through Six incorporate by reference paragraphs 1-81 and 83-120 which contain allegations of a nationwide shortage of nursing professionals and implicate federal concerns, that Plaintiff hospitals are recipients of federal funding and must comply with federal standards including Medicare, as well as certain federal tax laws. (FAC ¶¶ 34, 125-26, 128-34, 141.) These are non-trivial and plausible allegations implicating federal law and they support the claims asserted here. *Twombly*, 550 U.S. at 563.

Count Three raises issues of rulemaking, which includes the obligations of a state to stay out of federal territory. *See* ORS 183.390 (citing that state law requires of rulemaking consideration of whether a rule or proposal overlaps, duplicates, or conflicts not only with other state rules but also with **federal** regulation.); *see also* (FAC ¶ 147.) (stating the same). In support of Plaintiffs' petition for a change to the BOLI meal rules, Plaintiffs alleged that the rule conflicts with nursing standards and changes in healthcare which require much greater flexibility of timing of breaks. (FAC ¶ 148.) Defendants' failure to follow rulemaking requirements included a failure to consider conflicts with federal regulation and nursing standards, including those nursing standards imposed by federal rules and regulations. Defendants' Motion to Dismiss Count Three must be denied.

Count Four addresses the mandate to the Agency that it regulate only what is "necessary" and alleges that in disregarding its mandate, it placed itself in conflict with federal laws governing healthcare, public healthcare emergency rules, and work done under federal funding of nonprofit hospitals. (ORS 183.390; FAC ¶¶ 128-34, 157.)

Count Five points to the federal laws that regulate hospital activities and personnel, again including federal programs such as Medicare and Medicaid which have been discussed above. Staff may not engage in inappropriate "conduct related to other federal or state statute or rule violations," and Plaintiff hospitals allege that the state rules put them in peril. (FAC ¶ 164.)

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

Count Six turns a blind eye to critical public health emergencies facing the nation (such as are exemplified by the pandemic), and include a longstanding nationwide shortage of healthcare professionals which have constrained Plaintiff hospitals from hiring the non-existent additional trained staff, at great expense, to obtain the network of coverage required before it can meet the Meal Timing Rule, all the while putting itself in conflict with federal healthcare provider requirements. (FAC ¶ 175.) Healthcare providers must remain conscious of such key federal laws such as the Public Health Service Act (which was recently used by the Secretary of Health and Human Services of the U.S. Department of Health and Human Services to declare a public health emergency (PHE) in the entire United States on January 31, 2020, effective January 27, 2020). The PHE was renewed on April 21, 2020, July 23, 2020, October 2, 2020, January 7, 2021, April 15, 2021, July 19, 2021, October 15, 2021, January 7, 2022, April 12, 2022 effective April 16, 2022, and July 15, 2022. BOLI's Meal Timing Rule, which so burdens staffing in its hospitals, does not allow room for the full deployment of federal public health emergency legislation.

### III. PLAINTIFF'S SECOND CLAIM FOR RELIEF (42 USC § 1983)

**A.**   **Plaintiff hospitals' Second Claim for Relief, Count One, properly alleges violations of the First Amendment and Defendants' Motion to Dismiss should be denied**

Plaintiffs' Second Claim for Relief alleges violations of 42 U.S.C. § 1983 arising out of collective staff efforts to obtain relief from the Meal Timing Rule. (FAC ¶ 196 et seq.) It is a claim that may properly be asserted by Plaintiff hospitals because the conduct was directed at Plaintiffs through their employees on a matter of common interest and for which the employees were proxies. The First Amendment is at the heart of this claim and it implicates rights to petition the government as well as the expression of protected viewpoints.

**1.**   **Plaintiff hospitals have standing based on a common interest with their employees**

Defendants first challenge Plaintiffs' standing, but they cannot avoid this claim with that argument. (Motion, pp. 31-33.) *See Viceroy Gold Corp. v. Aubry*, 75 F.3d 482 (9th Cir. 1996) (employer had standing based upon common interest with its employees). Here, Plaintiffs allege

Page 18 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

facts showing a common interest arising out of the employment relationship as to working conditions and restrictive rules that adversely affect their work and cause concerns that the rigidity of the rule will affect their ability to perform duties including duties important to maintain licensure.

### 2. Plaintiffs have standing to assert their employees' rights[4]

There is little risk of unnecessary litigation of third-party rights. (FAC ¶ 186.) (*Ibid.*) Although the nurses are not named Plaintiffs in this case, the employees sought, as a group, to petition for redress of the grievances. (FAC ¶ 186.) If Plaintiffs succeed in asserting this claim on behalf of its employees, its employees' rights will be vindicated. (FAC ¶ 186.) The employees' enjoyment of their rights is inextricably bound up with Plaintiffs' course of action. (FAC ¶ 186.) The nature of the relationship between Plaintiffs and its employees supports Plaintiffs' ability to adequately represent its employees' interests. (FAC ¶ 186.) Plaintiffs can be an effective proponent of their employees. (FAC ¶ 186.) One interest common to Plaintiffs and their employees is their mutual desire not to have the state dictate the collective bargaining status of employees. (FAC ¶ 186.) Because Plaintiffs' interest is sufficiently aligned with its employees on this issue, Plaintiffs are an effective advocate of its employees' rights. (FAC ¶ 186.) (*Ibid.*) *And see NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958) ("[C]onstitutional rights of persons who are not immediately before the Court could not be effectively vindicated except through an appropriate representative before the Court.").

### 3. A credible threat is sufficient injury

That the penalties have not yet been assessed seeking the claimed millions of dollars in penalties is not a relevant consideration. *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013) ("[A]lthough a plaintiff 'must demonstrate a realistic danger of sustaining a direct injury as a result of a statute's operation or enforcement,' a plaintiff 'does not have to await the

---

[4] *See* Seth F. Kreimer, *Censorship by Proxy: The First Amendment, Internet Intermediaries, and the Problem of the Weakest Link*, 155 U. PA. L. REV. 11 (2006).

Page 19 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

consummation of threatened injury to obtain preventive relief.'") A "credible threat" of enforcement is sufficient for standing. *Ctr. For Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606, 648 (E.D. Pa. 2004).

### 4.    Diversion of resources is an injury

An organization may also establish "injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question." *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004), *cited with approval in Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019).

Plaintiffs have been injured under these standards.  Legacy and its employees have been unable to meet the rigid standards of the rule, leading to costly enforcement proceedings presently, in the past, and threatened in the future. (FAC ¶ 120.) Plaintiffs wish to avoid being subjected to notices of intent to assess penalties of millions of dollars, avoid incurring threats of further investigations, audits, and notices of future NOIs. (FAC ¶ 119.) Plaintiffs are now defending themselves in four separate contested case proceedings, taking up time and resources (money as well as people) that are necessary for the accomplishment of their public mission. Legacy also is suffering injury because it has unhappy employees who are presented with a dilemma of fulfilling their duties as nurses, declining to abandon patients, while at the same time being told that they must take meal breaks during a narrow period of time. Finally, the Legacy Plaintiffs have been placed at a competitive disadvantage because of their and their employees' viewpoint supporting and maintaining their nonunion status.

Here, Plaintiffs' interests were harmed when the Deputy Commissioner, acting on behalf of the Commissioner Val Hoyle and the Agency, acted intentionally to violate the employees' First Amendment rights.  If the Deputy Commissioner was not required to take the meeting, that is of no importance.  Having elected to do so, he was required to carry out his responsibilities in a neutral manner unaffected by his personal viewpoint or that of petitioners.

Page 20 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

**5.     Interference by state actors against individuals exercising their right to petition for a grievance is actionable under Section 1983**

The federal and state constitutions promise the protection of the right to petition the government for redress of grievances. (FAC ¶ 187.) This protection is stated in the First Amendment, applicable to the states under the Fourteenth Amendment, and is repeated in Oregon's Constitution. (FAC ¶ 187.) While the government is free to disregard petitions, it is not free to respond to such petitions by deliberately providing false or misleading information, as did BOLI Deputy Commissioner Shepard. (FAC ¶ 187.) The right of access to the courts is subsumed under the First Amendment right to petition the government for redress of grievances. (FAC ¶ 188.) Deliberate interference or retaliation by state actors against an individual or a group of individuals seeking to exercise the right to petition for grievances is actionable under Section 1983.  (FAC ¶ 189.) The intentional obstruction of the right to redress is "precisely the sort of oppression that * * * Section 1983 is intended to remedy." (FAC ¶ 189.)

**6.     Plaintiffs have alleged sufficiently detailed facts to support their claim for relief for interference against individuals exercising their right to petition**

Defendants in their Motion assert that the complaint contains vague conclusory allegations that Defendant Shepard acted to restrain or coerce the nurses in the exercise of their rights and that Legacy alleges "no facts that even suggest that any coercion occurred." (Motion, p. 31). To the contrary however, Plaintiffs' complaint contains detailed allegations setting forth facts supporting their § 1983 claim.

A group of Plaintiffs' nurses wished to bring to the attention of BOLI that the Agency rules regarding timing of meal periods raised issues of private and public concern. (FAC ¶ 64.) As a consequence, the nurses petitioned and sought information to assist them in changing working conditions that they saw as contrary to their ability to do their job as required by their nursing licenses. (FAC ¶ 63.) The  nurses first requested a meeting with Commissioner Val Hoyle, but she declined to take the meeting and directed the group of nurses to meet with Deputy Commissioner Duke Shepard. (FAC ¶ 60.) The employees approached the Commissioner and Deputy

Page 21 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Commissioner in order to seek information regarding how to change the rules regarding the timing of meals and were engaged in collective activity seeking to discuss an onerous working condition with a representative of the state government acting under the color of state law. (FAC ¶ 61.)

The Deputy Commissioner used his position of authority and public trust to restrain, coerce, and interfere with the free choice of private sector employees by providing inaccurate and incomplete information that caused the nurses to understand that the only remedy for their concerns was to join a union. (FAC ¶ 63.) The conduct of Deputy Commissioner Shepard was in violation of § 1983 and was directed against individuals exercising their rights under federal law. (FAC ¶ 67.)

### 7.    Defendants' conduct discriminates on the basis of viewpoint and consequently violates the First Amendment

Courts routinely recognize the First Amendment right to petition the government for redress of grievances. *See O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (recognizing constitutional right to petition the government for redress of their grievances); *see also Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by *Shaw v. Murphy*, 532 U.S. 223, 230, n. 2 (2001); *Tarabochia v. Hill*, 140 Fed. Appx. 753, 754 (9th Cir. 2005). The Supreme Court's precedents confirm that individuals have the constitutional right "to appeal to courts and other forums established by the government for resolution of legal disputes," noting that "[t]he right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives," and is "generally concerned with expression directed to the government seeking redress of a grievance." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). Regardless of whether the First Amendment guarantees a general right of access to government information, the First Amendment nevertheless constrains a government discretion to disclose, selectively, government-controlled information, namely, by forbidding the government from discriminating among viewpoints in the provision of information. "The First Amendment

Page 22 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Matal v. Tam*, 137 S. Ct. 1744, 1750, 1757 (2017) (explaining that "the test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed.") (quoting *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993)).

In *Boardman v. Inslee*, 978 F.3d 1092, 1119 (9th Cir. 2020) the court held that a ballot measure did not violate the First Amendment as it did not impose viewpoint-based conditions on the disclosure of information and did not discriminate between competing views. The court noted that in *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) the court stated the well-settled principle that the First Amendment does not guarantee a general right to access to government information or sources of information within the government's control. The court discussed in part:

> Before we address the merits of this claim, we must consider the State's threshold argument "that laws restricting public access to records do not implicate the First Amendment." On this score, the State argues that the disclosure of government-controlled information is "wholly within the legislative power," such that the decision to restrict access to Provider Information is beyond First Amendment scrutiny. . . .
>
> * * * * *
>
> After review of the relevant precedent, we disagree with the State. *Houchins* does not control here. . . . [I]t is a separate question—and one that is not addressed in *Houchins*—whether the government may transgress the First Amendment by imposing viewpoint-based conditions on access to government-controlled information or by otherwise discriminating among viewpoints in the provision of information within its control. This is the gravamen of Appellants' claim, and *Houchins* does not resolve it.

*Boardman*, 978 F.3d at 1104-05. The facts asserted in Plaintiffs' lawsuit assert that BOLI, acting through Deputy Commissioner Shepard, withheld information about options available to a collective group of nonunion nurses seeking to secure information about revising the Meal Timing Rule, seeking the benefits available to their union counterparts. These events present cognizable claims of First Amendment and viewpoint discrimination.

Page 23 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

8.      **Defendants cannot escape responsibility on the theory that there was only one meeting**

Defendants ask the court to dismiss the claim because it had only one such meeting, in the past, and other meetings are not "certainly impending." (Motion, p. 33.) That argument is insufficient. Plaintiffs assert a course of conduct leading to the meeting,   an encounter which involved collective activity seeking to address an onerous working condition and was preceded by the Commissioner's refusal to meet and which was followed by a rejection of proposed regulations. (FAC ¶ 60.) It occurred in connection with the Agency's prosecutorial misconduct with this same group of employees, misrepresenting the nature of a subpoena issued by the Agency. (FAC ¶¶ 44, 61-63.); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (stating that past wrongs, though insufficient by themselves to grant standing, are "evidence bearing on whether there is a real and immediate threat of repeated injury.")

Similar to the decisions evaluating claimed mootness, this is a situation which would otherwise be "capable of repetition, yet evading review[,]" *Spencer v. Kemna,* 523 U.S. 1, 17 (1988), which is applicable where the challenged action is short in duration but "'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Kingdomware Techs, Inc v. United States,* 579 U.S. 162, 170 (2016) (internal quotation marks omitted; brackets in original); *see also California v. U.S. HHS*, 941 F.3d 410, 423 (9th Cir. 2019).

The attachment to the Declaration of Deputy Commissioner Shepard to Defendants' Motion to Dismiss made it clear that the employees were going to continue to press for a change. (Motion, pp. 28, 33; Shepard Decl. attached to Motion, ¶¶ 2-3.) There was a reasonable expectation that the same complaining parties (the nurses) would pursue their concerns in the future and be subject to the same action again (misleading information that the only recourse available to the nurses was to join a union).

Page 24 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

### 9.      Defendants' Motion to Dismiss improperly relies upon factual allegations that are outside the pleadings and record

In their Motion to Dismiss, Defendants improperly rely upon factual allegations contained in a Declaration of Duke Shepard and factual allegations contained in the text of Defendants' Motion to Dismiss.  Specifically, Duke Shepard in his declaration asserts:

> 2. On February 26, 2019, I met with a group of nurses who worked for Legacy Health.  At the meeting, we discussed BOLI's meal-and-rest period rule (OAR 839-020-0050).

> 3. On March 8, 2019, I received an email from Allison Filipovic, who was one of the nurses with whom I met on February 26, 2019.  That email is attached as Exhibit 1 to this declaration.

In his declaration Shepard makes the factual assertion that when he met with a group of nurses on February 26, 2019 "we discussed BOLI's meal-and-rest period rule." (Motion, p. 33; Shepard Decl., ¶ 2.) Defendants in their Motion to Dismiss make the factual assertion that during the meeting, "Shepard did not violate the nurses' First Amendment rights by accurately explaining the effects of current law." (Motion, p. 28.) Defendants' argumentative presentation of evidence outside the record cannot support a motion to dismiss which is limited to a review of the complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), 'review is limited to the complaint.'") (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n. 5 (9th Cir. 2003). In deciding a motion to dismiss, "a district court may not consider any material beyond the pleadings[.]"  *Lee*, 250 F.3d at 688 (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

The court should, at a minimum, disregard Defendants' assertion that the Deputy Commissioner was "accurate" in his conversation and should deny Defendants' Motion to Dismiss Count One of the Second Claim for Relief.

Page 25 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**B.      Defendants' Motion to Dismiss Count Two of the Second Claim for Relief alleging violation of the excessive fines clause incorporated by the due process clause should be denied**

The excessive fines clause is an incorporated protection applicable to the states under the Fourteenth Amendment due process clause and the penalties asserted in the NOIs on their face present strong evidence of such a violation.

In February 2019, in *Timbs v. Indiana*, 139 S. Ct. 682, 689 (2019), the Supreme Court held 9-0 that the excessive fines clause is incorporated protection applicable to the states under the Fourteenth Amendment's due process clause and called out specifically those circumstances in which fines are used as a source of revenue, as they are alleged to be here (FAC ¶¶ 54-58).  The Court stated in part:

> The 17th century Stuart kings, in particular, were criticized for using large fines to raise revenue, harass their political foes, and indefinitely detain those unable to pay. . . .
>
> * * * * *
>
> For good reason, the protection against excessive fines has been a constant shield throughout Anglo-American history:  exorbitant tolls undermine other constitutional liberties. Excessive fines can be used, for example, to retaliate against or chill the speech of political enemies . . . Even absent a political motive, fines may be employed "in a measure out of accord with the penal goals of retribution and deterrence," for "fines are a source of revenue," while other forms of punishment "cost a State money."

*Timbs*, 139 S. Ct. at 688-89.

**1.      Standard: A fine is unconstitutionally excessive if the amount is grossly disproportional to the gravity of the offense, as Defendants' proposed fines are**

In *United States v. Bajakajian*, 524 U.S. 321, 337-40, 339 n. 14 (1998), the court articulated the following factors to be considered in determining whether a forfeiture was grossly disproportional to the offense:  (1) the seriousness of the offense triggering forfeiture; (2) whether the property was related to any other illegal activity; (3) whether the defendant fit into the class of persons for whom the statute was principally designed; (4) the maximum sentence and fine that could have been imposed for the offense under then-mandatory United States sentencing guidelines; (5) the statutory maximum sentence and fine; and (6) the harm caused by the underlying offense.

Page 26 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

2.       **BOLI's assessment of fines against Plaintiffs was excessive**

The fines imposed, and sought to be imposed, by BOLI are grossly disproportional to the alleged mealtime violations and have been used to retaliate against the Legacy Plaintiffs and their employees and to chill free speech for political motives. Employees of Plaintiff hospitals work 12-hour shifts and a majority of the alleged violations assert that employees failed to take their meal break in the two-hour window of time after the completion of the third hour worked and prior to the commencement of the sixth hour worked. (FAC ¶ 25.) Most of the violations alleged that the nurses and other employees took late meal breaks because forcing them to take a meal break in mid-morning was either unhealthy for them, inconvenient for them, or led to physical discomfort and hunger during the remaining eight hours, and deprived them of the right to take a meal break midway in their 12-hour shift. (FAC ¶ 26.)

On April 16, 2019, BOLI served three Legacy hospitals with notices of intent to assess penalties (NOIs) for 5,156 violations. (FAC ¶ 42.) BOLI sought the maximum $1,000 penalty for each of these violations or a total penalty of $5,156,000. (FAC ¶ 42.) BOLI issued a press release touting the fact that the penalty sought was the largest ever asserted against an employer in Oregon. (FAC ¶ 81.) In addition, it is believed that BOLI has used the fines it has collected as a source of revenue. (FAC 56-59.) When the Agency's former administrative prosecutor engaged in prosecutorial misconduct by serving illegal subpoenas, the Legacy hospitals filed a motion to dismiss the cases based upon that prosecutorial misconduct. (FAC ¶¶ 44 and 45.) BOLI sought to avoid the consequences of the motion to dismiss by a procedural tactic of withdrawing the NOIs without prejudice. However, subsequently in order to punish and retaliate against the Plaintiffs, BOLI on December 21, 2021 served new NOIs seeking to join an additional Legacy hospital and seeking penalties totaling $8,727,000, which was approximately $3.5 million more than the penalties previously sought by BOLI. (FAC ¶ 48.) BOLI's Commissioner, in seeking $1,000 penalties for each separate violation failed to take into consideration mitigating circumstances. BOLI, in focusing primarily upon departments such as Emergency Departments and the Family

Page 27 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Birthing Department, which are departments that are staffed with nurses having specialized expertise and whose departments are often faced with special challenges that require immediate and uninterrupted attention of nurses or teams of nurses, BOLI unfairly targeted departments where challenges that would make strict compliance with the Meal Timing Rules extremely difficult, if not impossible. (FAC ¶¶ 38-40.)

Plaintiffs' allegations, if taken as true, demonstrate that the multi-million dollar fines that BOLI seeks to impose are unconstitutionally excessive and grossly disproportional to the gravity of the mealtime violations. Each listed violation is assessed the maximum penalty amount, $1,000, regardless of the gravity of the offense. For example, a meal taken after the sixth hour bears the same penalty as providing no meal period at all.[5] The same $1,000 penalty is assessed for a meal period that started two minutes late as is assessed for a meal period that started more than four hours late.  The same penalty is assessed for a meal period that started before the end of the sixth hour but ran over. The same penalty is assessed for a meal period that started on time but showed the employee clocking back in after 29 minutes instead of after 30 minutes. The same penalty is assessed for a meal period that lasted a full 30 minutes but started early.

### 3.    The court should reject Defendants' argument that this claim is not ripe

Defendants assert that Plaintiffs' Eighth Amendment excessive fines claim is not ripe for determination because the violations and penalty issues have not been heard by the Administrative Law Judge who has not made recommendations regarding how many violations occurred and the penalties that should be imposed regarding those violations. (Motion, p. 24.) Defendants assert that only after the proposed order is issued will the Commissioner consider a final order in which the Commissioner may alter the Administrative Law Judge decision, including violations and civil

---

[5] OAR 839-020-0050 provides: "Timing of the meal period:  If the work period is seven hours or less, the meal period is to be taken after the conclusion of the second hour worked and completed prior to the commencement of the fifth hour worked.  If the work period is more than seven hours, the meal period is to be taken after the conclusion of the third hour worked and completed prior to the commencement of the sixth hour worked."

Page 28 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

penalties, and that without knowing the final determinations as to violations and penalties, the claim is unripe.  (Motion, pp. 24-25, 27-28.)

BOLI's formal Notice of Intent to Assess Penalties (NOI) states that except for good cause, the factual determinations not denied are deemed admitted, failure to raise an affirmative defense is a waiver of such defense, any affirmative defense alleged in the answer is deemed denied, and evidence will not be taken unless raised in the answer.  Failure to request a hearing within 20 days of the date of *mailing* the NOI (in this case in the middle of a pandemic) results in a waiver of the right to request a hearing.  The request for a hearing must include a detailed answer.  The evidence will show that the Agency did everything it could to nudge Plaintiffs into a default.  It mailed the four notices on December 21, 2021 with emailed courtesy copies to counsel sent at 6:39 PM.  Each formal notice (approximately 15 pages) was accompanied by one or more spreadsheets, in all totaling many hundreds of pages.

In addition to Defendants' litigation tactics, the structure of the Agency decision making process reinforces the likelihood that the penalties are intended to be a foregone conclusion.  In *Klein v. Or. Bureau of Labor & Indus.*, 317 Or. App. 138, 162 (2022) the court criticized the Bureau of Labor's administrative process for having departed from principles of neutrality. The court stated: "the BOLI prosecutor acts on behalf of BOLI, which is under the control of the commissioner, absent a disavowal by the commissioner of a prosecutor's position in the context of deciding a contested case, it is inferable that the prosecutor's position is the position of the agency, including its commissioner.  Our initial decision in this case underscores that lack of independence." *Id.* The same Commissioner is a Defendant in this case and is the person who was responsible for the initial proceedings in 2019, the misleading discussions with employees, and the handling of the 2021 filings. (FAC ¶¶ 7, 53, 60-62, 71-73, 81.)

Ripeness, like standing, presents the threshold jurisdictional question of whether a court may consider the merits of a dispute. *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). The ripeness doctrine exists "to prevent the courts, through premature adjudication, from entangling

Page 29 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). Application of this doctrine "requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985). Of primary importance is "whether the issues tendered are appropriate for judicial resolution," and, if so, the degree of "hardship to the parties if judicial relief is denied" before the claim is allowed to ripen further. *Young v. Klutznick*, 652 F.2d 617, 625 (6th Cir. 1981) (quoting *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162 (1967)).

In *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 959 F.3d 341, 349 (9th Cir. 2020) the Ninth Circuit discussed:

> "Ripeness doctrine 'is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect . . . agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Safer Chems. v. United States EPA*, 943 F.3d 397, 411 (9th Cir. 2019) (alteration in original) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33, 118 S. Ct. 1665, 140 L. Ed. 2d 921 (1998)). Determining whether a claim is ripe often requires assessing both constitutional requirements and prudential factors. *See, e.g., Thomas*, 220 F.3d at 1138.

In evaluating ripeness, Courts have looked at whether a party is likely to suffer hardship or exhaustion is futile, or the alleged injury is capable of repetition, yet evading review.

In *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 13 (2000) the United States Supreme Court observed:

> Doctrines of "ripeness" and "exhaustion" contain exceptions, however, which exceptions permit early review when, for example, the legal question is "fit" for resolution and delay means hardship, *see Abbott Laboratories*, 387 U.S. at 148-149, or when exhaustion would prove "futile," see *McCarthy v. Madigan*, 503 U.S. 140, 147-148, 117 L. Ed. 2d 291, 112 S. Ct. 1081 (1992); *McKart*, 395 U.S. at 197-201.

In *Shalala*, the court affirmed the trial court's dismissal of a nursing home association's action challenging certain Medicare-related regulations, finding that the plaintiff could proceed through the special review channel created by the Medicare statutes. 529 U.S. at 5.

In *Skyline Wesleyan Church*, 959 F.3d at 354, the Ninth Circuit further stated:

Page 30 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

"In evaluating the prudential aspects of ripeness, our analysis is guided by two overarching considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Thomas*, 220 F.3d at 1141 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)).

As to the first prudential ripeness prong, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final."

In *Biafora v. United States*, 773 F.3d 1326 (Fed. Cir. 2014) the court considered a regulatory taking claim and stated that generally taking claims do not ripen until a government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue. The court discussed exceptions, stating:

A plaintiff, however, can be excused from exhausting administrative remedies when it would be futile to do so, such as when the administrative agency has no discretion to grant the requested relief or the parties agree on how the challenged regulation would apply. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 738-39, 117 S. Ct. 1659, 137 L. Ed. 2d 980 (1997). We have held that the futility exception applies where "no uncertainty remains regarding the impact of the regulation, certainty being the basis for the ripeness requirement." *Greenbrier v. United States*, 193 F.3d 1348, 1359 (Fed. Cir. 1999) (internal citations omitted).

*Biafora*, 773 F.3d at 1330.

In *Green Party of Tenn. v. Hargett*, 767 F.3d 533 (6th Cir. 2014) the court discussed:

Although the defendants challenge only the plaintiffs' standing, other concepts of justiciability help to illustrate why the plaintiffs have suffered a cognizable injury. *See* 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.12 (3d ed. 1998) (observing that "[r]ipeness and mootness easily could be seen as the time dimensions of standing"). As the plaintiffs aptly argue, their alleged injury is not moot because it is "capable of repetition, yet evading review." *See Libertarian Party of Mich. v. Johnson*, 714 F.3d 929, 930 (6th Cir. 2013); *Libertarian Party of Ohio v. Blackwell* (Blackwell), 462 F.3d 579, 585 (6th Cir. 2006). Similarly, the plaintiffs' claim is not unripe, as it "arises in a concrete factual context and concerns a dispute that is likely to come to pass." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (internal quotation marks omitted). Moreover, the plaintiffs would likely suffer hardship if they must wait to adjudicate this claim. *Id.* If this court were to hold that the plaintiffs can challenge the ballot-ordering statute only after qualifying for ballot access, a court hearing the new case would likely have at most 90 days to consider it.

*Green Party*, 767 F.3d at 545, n. 1. Plaintiffs' excessive fines claims fall within these exceptions to ripeness doctrine. In the Legacy case, the NOIs dated December 21, 2021 alleged

Page 31 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN llp
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

8,722 violations and sought civil penalties of $8,727,000. (FAC ¶ 48.) After Plaintiffs filed their lawsuit on April 18, 2022, BOLI served Notices of Hearings in the contested case proceedings in Case Nos. 58-20, 59-20, 60-20, and 61-20 on April 29, 2022, alleging the same number of violations and the same penalties. Based upon Defendants' course of conduct described throughout Plaintiffs' First Amended Complaint and summarized above, it is reasonable for the court to assume that the BOLI Commissioner, on behalf of the Agency, will enforce the penalties as written by Agency personnel under her direction.

**C.     Defendants' Motion to Dismiss Count Three of the Second Claim for Relief alleging violation of equal protection rights should be denied**

Where equal protection claims are concerned, an initial issue is whether there has been different treatment of those who are similarly situated.  The state argues that Plaintiff hospitals cannot make such a showing because their employees are inevitably dissimilar from employees of other employers because of their nonunion status.  That assumes too much; whether that status alone makes the employees dissimilar is a determination that requires consideration of the facts to determine whether there is substantial similarity in all relevant respects.  The facts are not before the court which cannot decide substantial similarity based on Defendants' say-so. *Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) is instructive. For its narrow purposes, the Supreme Court assumed the plaintiff was similarly situated to other landowners because they were property owners in the same subdivision, but when the case returned to the trial court the Northern District of Illinois identified the need for a more detailed factual examination to determine whether the proposed comparators actually were similarly situated to Mrs. Olech. *Olech v. Vill. of Willowbrook*, No. 97 C 4935, 2002 U.S. Dist. LEXIS 9266, at *52, *59 (N.D. Ill. May 23, 2002) (identifying genuine issue of fact whether one included property was similarly situated since it was used for different purposes despite being in the same subdivision).

Defendants' argument, that a nonunion employee is inevitably dissimilar from a union employee, is insufficient, particularly on a motion to dismiss. Such an argument requires

Page 32 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

consideration of the question "dissimilar in what way," for "one cannot determine who is similar to whom in the abstract without reference to an external criterion—the purpose for which the classification was made."   Robert C. Farrell, The Equal Protection Class of One Claim: *Olech, Enquist, and the Supreme Court's Misadventure*, 61 S.C. LAW REV. 111 (2009). One group may be nonunion and the other union, but the court does not have before it any of the issues that would be relevant. Is there a bargaining agreement? Did the agency ever check?  Were the agreements ever enforced? How similar are the employees in their day-to-day duties?  How similar are the institutions in their size, scope, levels of treatment? Are they all federally funded or just some? Do they all have the same departments that are at issue here. A bargaining agreement necessarily has provisions, yet those are nowhere before the court. A bargaining agreement may be enforced or ignored, yet those facts are yet to be discerned. "Collective bargaining is a continuing process. Among other things, it involves day-to-day adjustments in the contract and other working rules, resolution of new problems not covered by existing agreements, and the protection of employee rights already secured by contract. The bargaining representative can no more unfairly discriminate in carrying out these functions than it can in negotiating a collective agreement. A contract may be fair and impartial on its face yet administered in such a way, with the active or tacit consent of the union, as to be flagrantly discriminatory against some members of the bargaining unit." *Conley v. Gibson*, 355 U.S. 41, 46 (1957).[6]  There is nothing before the court to suggest that those unnamed entities that Defendants say are similarly situated are similar in material respects, have followed the rule's requirements as to content, have bargained properly, or if the state has even reviewed their agreements.

Defendants rely on *Boardman v. Inslee*, 978 F.3d 1092 (9th Cir. 2020), but that decision requires caution and careful reading before it can be deemed authoritative here. (Motion, p. 16.)

---

[6] For the court's consideration, *Conley* was abrogated on an unrelated issue by *Twombly*, 550 U.S. at 548.

Page 33 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

This was a decision on summary judgment to challenge a ballot initiative passed by Washington voters where animus could not be imputed to the 2.2 million voters not shown in a well-developed record.[7] Yet even with that record, the *Boardman* court declined to resolve "this dispute," whether the two classes involved (appellants and state certified unions) were similarly situated. 978 F.3d at 1117-18. There is no extensive factual record in the very different case that is presently before this court.

Count Three of Plaintiffs' Second Claim for Relief alleges an equal protection claim. (FAC ¶¶ 1-81, 83-120, 211-24.) It alleges that the rules impose disparate obstacles, (FAC ¶¶ 24-28), states that the work done at Legacy hospitals is "virtually identical work[,]" (FAC ¶ 28), the application of the rules is not based upon a rational connection between the stated standards (necessity and preservation of health), and the presence of a union or bargaining agreement which does not meet the narrow scheduling window. (FAC ¶ 29). The First Amended Complaint sufficiently alleges animus including ¶ 81's allegations of bad faith and selective enforcement. (FAC ¶ 81.)

The allegations of Plaintiffs' complaint meet the necessary standards of pleading and cannot be overcome by the state's request that the court make assumptions about other facts that are or may be necessary for the court. In any event, the state's argument that union status on its own is determinative of whether one is similarly situated is inconsistent with the analysis of the Supreme Court in *Conley*. *See Sacramento Cty. Retired Emples. Ass'n v. Cty. Of Sacramento*, 975 F. Supp. 2d 1150, 1169 (E.D. Cal. 2013) ("This court thus finds *Marshall* to have some persuasive force, **as long as its pronouncement, that 'bargaining unit employees are *never* similarly situated with non-bargaining unit employees,' is not read as a blanket statement that applies without respect to the facts of a given case.**") (Emphasis added). That caveat is pertinent here.

In support of their motion to dismiss Plaintiffs' equal protection claim, Defendants rely primarily upon *Viceroy*, 75 F.3d 482. That decision has been discussed above. As relevant for the

---

[7] The dissent refers to the "highly troubling documentary record" in the case. 978 F.3d at 1135.

**BARRAN LIEBMAN LLP**
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

issues on this equal protection claim, among those other issues, it bears emphasis that *Viceroy* was not a motion to dismiss. The court had before it a record from cross motions for summary judgment, which permitted it to decide the matter in the District Court, and based its decision on its conclusion that the rule in question was a narrowly tailored opt-out provision, which stands in sharp contrast to the Oregon Bureau of Labor's intricate, complicated, broad Meal Timing Rule which is at issue here. Defendants' Motion to Dismiss Count Three of Plaintiffs' Second Claim for Relief should be denied.

### IV.  THE COURT SHOULD REJECT DEFENDANTS' *YOUNGER* ABSTENTION ARGUMENTS

Defendants ask for abstention. (Motion, pp. 9-14.) While typically a state proceeding would provide an adequate forum for the vindication of federal constitutional rights, *Younger v. Harris*, 401 U.S. 37 (1971), that is not always so and the present case evidences legitimate exceptions to *Younger's* application.

***Younger* abstention is inappropriate here.**

In certain circumstances *Younger's* application calls for federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings. *Younger*, 401 U.S. at 43-44. That is an exception to the rule that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States," and "it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989); *see also Rynearson v. Ferguson*, 903 F.3d 920, 928 (9th Cir. 2018) ("*Younger* abstention is a limited exception to the obligation of federal courts to hear cases within the scope of their jurisdiction."). "[E]ven if *Younger* abstention is appropriate, federal courts do not invoke it if there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Arevalo v. Hennessy*, 882 F.3d 763, 765-

Page 35 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

66 (9th Cir. 2018) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)).

Defendants do not meet the conditions necessary to invoke *Younger.* It requires a showing that the judicial (or judicial in nature) state proceedings must be ongoing; the proceedings must implicate important state interests; and there must be an adequate opportunity in the state court proceedings to raise constitutional challenges. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976); *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001).

There was no "judicial or judicial in nature state proceeding" at the time Plaintiffs commenced their lawsuit.[8] The notices of hearing in the contested case proceedings in Case Nos. 58-20, 59-20, 60-20, and 61-20 were not issued by the Administrative Law Judge until April 29, 2022, eleven days after Plaintiffs had commenced their lawsuit. (Hunt Decl., ¶ 2.)[9] As a consequence, contested case proceedings did not commence until after Plaintiffs filed their lawsuit.

Nor does this state proceeding afford Plaintiffs an adequate opportunity for judicial review of the federal constitutional claims. *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986). Defendants contend that Plaintiffs have raised constitutional and preemption arguments as defenses in the enforcement proceedings and Defendants' administrative prosecutor

---

[8] On December 21, 2021, BOLI served Notices of Intent to Assess Penalties (NOIs) on the four Plaintiff hospitals. (Motion, p. 5.) Each of the four hospitals filed an Answer denying the allegations of the NOIs. The NOIs were not "judicial or judicial in nature state proceedings." In fact, BOLI admits that the issuance of NOIs seeking penalties does not establish that Plaintiff hospitals had committed any violations or that fines would ever be imposed. (Motion, p. 24.) It is noteworthy that after the NOIs were served on December 21, 2021, BOLI did nothing until after Plaintiffs filed their lawsuit.

[9] The Notice of Hearing in Case No. 58-20 recited: "Pursuant to a request for hearing received on April 27, 2022, this contested case has been set for hearing on: Date: TUESDAY, September 13, 2022. (Hunt Decl., Ex. 1.) The other three Notices of Hearing in Case Nos. 59-20, 60-20, and 61-20 recite that the notices scheduling hearings on September 20, 2022, September 27, 2022, and October 4, 2022, are being issued pursuant to "a request for hearing received on April 28, 2022." (Hunt Decl., Exs. 2, 3, and 4.) At no time were Plaintiffs served with or provided copies of the "request for hearing received on April 27, 2022" or the request for hearing received on April 28, 2022.

Page 36 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

attached copies of Plaintiffs' Answers in which Plaintiffs have raised certain defenses to the claims brought by BOLI in the NOIs. (Motion, p. 13; Jeffries Decl., Ex. 1.) Defendants also note that Legacy has challenged the Meal Timing Rule in its petition to the Court of Appeals. (Motion, p. 13, n. 4.) However, none of the contentions raised by Plaintiffs in their Answers to the NOIs or in Plaintiffs' Petition to the Oregon Court of Appeals regarding the BOLI Meal Timing Rule assert as defenses or contentions NLRA preemption or conflict preemption of state regulation by federal law, nor can they be adequately resolved in the Agency's internally controlled proceedings. NLRA preemption and conflict preemption are only asserted in Plaintiffs' First Amended Complaint, First Claim for Relief, Counts One and Two. (FAC ¶¶ 82-143.) Federal courts (not state courts) have the expertise to rule on complex federal law issues, including whether BOLI's Meal Timing Rules are subject to NLRA preemption and whether the Meal Timing Rule conflicts with federal laws and federal programs regarding funding for nonprofit hospitals.

Even if Defendants could satisfy the requirements of *Younger* abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of bad faith, or harassment by the state agency, or unusual or extraordinary circumstance that would call for equitable relief. *Younger*, 401 U.S. at 54. Plaintiffs' allegations, construed in the light most favorable to Plaintiffs, establish each of the three exceptions: bad faith, harassment, and unusual and extraordinary circumstances. In contrast to Defendants' arguments (Motion, p. 14), the complaint includes detailed allegations of BOLI's bad faith, including the summary at FAC ¶ 81.  Allegations of bad faith include the following:

- BOLI acted in bad faith by exceeding its statutory authority by imposing rigid meal time requirements that are not necessary for the preservation of the health of employees. The BOLI meal time rules go beyond what is necessary for the preservation of the health of employees because the rules may be modified or waived by employees covered by collective bargaining agreements and employees who serve food and beverages.  (FAC ¶¶ 23, 157-58.)

Page 37 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

- BOLI acted in bad faith by issuing NOIs that arbitrarily sought to impose a maximum penalty of $1,000 per each alleged violation. (FAC ¶¶ 42, 48.) Commissioner Hoyle was required to make an individual assessment and consider not only aggravating circumstances but also mitigating circumstances. (FAC ¶ 52.)

- BOLI acted in bad faith on April 16, 2019, totaling $5,156,000 for the purpose of widely publicizing that the penalties assessed against Legacy are the largest penalties ever sought by BOLI against an Oregon employer. In a press release dated September 13, 2018, BOLI bragged:

  > "$5,156,000 represents the largest potential assessment of civil penalties in the agency's history."

  (Hunt Decl., ¶ 6, Ex. 5.)

- BOLI acted in bad faith by refusing to take into consideration the "community benefit" provided by Legacy as a 501(c)(3) organization under federal law and regulations.  Plaintiffs allege in detail the federal regulations governing tax exempt status of charitable hospitals (FAC ¶¶ 128-130) and federal regulations governing Medicare/Medicaid funding.  (FAC ¶¶ 131-135.)  BOLI acted in bad faith by refusing to take into consideration these code requirements that required Plaintiff hospitals to provide "community benefit" in order to receive necessary federal funding which must be used to improve facilities, equipment, medical training, education, and research, which goals and objectives cannot be met if a state agency assesses millions of dollars of penalties.

- BOLI acted in bad faith by failing to follow required procedures for use and recordkeeping related to penalties collected by BOLI.  Despite Plaintiffs' public records requests, BOLI's responses to those requests have been sparce and incomplete and it appears that over time BOLI has behaved improperly by retaining

Page 38 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

sums collected as penalties and/or not timely providing those sums to the appropriate agencies pursuant to ORS 653.256(4). (FAC ¶¶ 58-59.)

- BOLI has acted in bad faith by assessing enormous civil penalties which, if collected, will divert Medicare/Medicaid funds and other federal funding that Plaintiff hospitals receive and divert those sums to having to defend against BOLI's enormous penalty assessments and potentially having to pay the penalties assessed. (FAC ¶ 135.)

- BOLI acted in bad faith by retaining penalty funds assessed against Legacy hospitals and other employers and using those penalties as a source of revenue. (FAC ¶¶ 54-58.) In the alternative, BOLI has failed to institute and maintain processes to account for the funds collected and the disposition of funds. (FAC ¶ 58.)

- BOLI acted in bad faith by engaging in prosecutorial misconduct. (FAC ¶¶ 41-46.)

- BOLI acted in bad faith by deliberately earmarking penalty money for uses that are inconsistent with the uses established by section 501(c)(3) and other federal regulations. (FAC ¶¶ 123-35.) By its excessive regulations and excessive penalties, BOLI has interfered with the ability to achieve full purpose of federal law. (FAC ¶ 126.) The misuse of penalty authority by assessing $1,000 per violation threatens Legacy's ability to meet the standards of nonprofit status, potentially removes millions of dollars from patients for whom Legacy receives federal funding and diverts those funds to unauthorized state uses unrelated to the community benefit which Legacy is required by federal law to provide. (FAC ¶ 137.)

- BOLI acted in bad faith by escalating multi-million dollar penalties and threatening future penalties. (FAC ¶¶ 48-50.) In *Torres v. Frias,* 68 F. Supp. 2d 935, 937 (N.D. Ill. 1999), the plaintiff contended that the defendant's prosecution of her in effect has chilled her right to engage in political activity, a cousin of the right to free speech guaranteed under the First Amendment. The court held that an exception of the *Younger* doctrine of abstention applied because plaintiff had evidence to show that

Page 39 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

the state's prosecution was brough in bad faith and in retaliation for her exercise of constitutionally protected rights. *Id.* at 942.

- BOLI engaged in bad faith by failing to follow rulemaking procedures when Plaintiffs sought to petition for a change in the mealtime regulation. (FAC ¶¶ 73-77.) The petition set forth detailed reasons for the proposed amendment which would have allowed petitioners and others similarly situated to allow for flexible scheduling of meals and breaks. (FAC ¶ 75.) BOLI Commissioner Hoyle denied the petition without setting forth reasons and thereby failed to comply with ORS 183.390. (FAC ¶¶ 77-78.)

- BOLI acted in bad faith by targeting the Emergency Departments and Family Birth Centers of Plaintiffs' Mount Hood, Meridian Park, and Good Samaritan Hospitals. (FAC ¶¶ 38-39, 49.) Requiring nurses to take their meal breaks during a two-hour period presents special challenges for nurses working in Emergency Departments and Family Birthing Departments because nurses cannot abandon patients to take breaks and would put patients at risk.

- BOLI acted in bad faith by requiring nurses to take a meal break during a two-hour period because rigid compliance would subject a nurse to a discipline or a loss of license if they ignored patients in order to comply with meal break rules. (*See* FAC ¶¶ 35-36.) ORS 441.168 specifically provides that a registered nurse in a hospital may not place a patient at risk of harm by leaving a patient care assignment. (FAC ¶ 35.)

- BOLI acted in bad faith by imposing meal and break rules that conflict with the federal and state rules regulating the practice of nursing. (*See, e.g.*, FAC ¶¶ 161-173.)

- BOLI acted in bad faith by making threats that it would seek to impose fines in the future. (FAC ¶ 207.)

Page 40 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

- The Agency engaged in bad faith when it has used or will use excessive penalties as a revenue source for BOLI. (FAC ¶¶ 56-58, 208.)

- BOLI has acted in bad faith by selectively targeting Legacy hospitals for the issuance of notices of intent to assess excessive fines. (FAC ¶ 51.)

In summary, the Defendants' position that Plaintiffs have not alleged any facts to support Plaintiffs' contention that BOLI acted in bad faith is contradicted by specific factual allegations which, if taken as true, demonstrate that BOLI has behaved in bad faith and that as a consequence BOLI, by alleging thousands of violations and seeking a $1,000 penalty for each violation, had no reasonable expectation of obtaining a favorable outcome

Plaintiffs' complaint also alleges Defendants harassed the Legacy Plaintiffs and their employees seeking relief from the rigid and oppressive Meal Timing Rules. In *Michael v. Letchinger*, No. 10 C 3897, 2011 U.S. Dist. LEXIS 86685, *24-25 (N.D. Ill. Aug. 5, 2011) the court found that the allegations were sufficient to support a harassment and bad faith exception to the *Younger* doctrine. The court stated in part:

> Taking these charges as true, as the court must at this stage of the litigation, the complaint has alleged facts sufficient to support the harassment and bad faith exception to the *Younger* doctrine. *See Cullen v. Fliegner,* 18 F.3d 96, 104 (2d Cir. 1994) (*Younger* abstention rejected where plaintiff alleged history of personal conflict and *ad hominem* discipline); *Manos v. Caira,* 162 F. Supp. 2d 979, 987 (N.D. Ill. 2001) (*Younger* abstention rejected where plaintiff "alleged throughout the complaint that defendants have acted in bad faith and have conspired to harass him with vindictive bias"); *Torres v. Frias,* 68 F. Supp. 2d 935, 939-41 (N.D. Ill. 1999) (*Younger* abstention rejected where "plaintiffs present evidence which paints a convincing picture of bad faith on the part of defendants"); *Contreras v. City of Chicago,* 1994 U.S. Dist. LEXIS 17770, 1994 WL 700263, at *3 (N.D. Ill. Dec. 13, 1994) (*Younger* abstention rejected where plaintiffs "allege with sufficient particularity facts supporting their charges that the defendants' actions were motivated by racial animus").

The allegations of the Legacy Plaintiffs' complaint demonstrate that BOLI harassed Plaintiffs and Plaintiffs' employees. The dispute began with mind-boggling penalty demands and included future threats of fines. (FAC ¶¶ 45-50, 120, 207.) It was marked with political decision making and demonstrations of favoritism. (FAC ¶ 151.) Employees' concerns were

Page 41 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

disregarded. (FAC ¶¶ 188-97.) Employee witnesses were served with subpoenas which demanded they appear in advance of their testimony to speak to the administrative prosecutor.

In addition, Plaintiffs' complaint alleges that extraordinary and unusual circumstances create a pressing need for immediate federal equitable relief. *Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975) ("[C]ircumstances [warranting equitable restraint] must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation."); *Krahm v. Graham*, 461 F.2d 703, 709 (9th Cir. 1972) (affirming the injunction as to multiple pending prosecutions in favor of bookstore owners who were charged with pornography; mayor had stated publicly that the purpose of the petitions was to influence the tenor of the community so that jurors would be more likely to convict); *see Murphy v. Commonwealth of Va.,* 896 F. Supp. 577 (E.D. Va. 1995) ("A case of multiple prosecutions is one of those occasions when . . . a federal court must not hesitate to act."); *Gibson v. Berryhill*, 411 U.S. 564, 577-79 (1973) (affirming district court's decision that state tribunal is incompetent by reason of bias); *Contreras v. City of Chicago,* No. 94 C 4201, 1994 U.S. Dist. LEXIS 17770 *10-11 (N.D. Ill. Dec. 9, 1994) (rejecting *Younger* abstention where plaintiffs alleged with sufficient particularity facts supporting the charges that defendants' actions were motivated by racial animus).

Extraordinary and unusual circumstances are presented in the Legacy Plaintiffs' lawsuit. On April 16, 2019, BOLI served Plaintiff hospitals with a notice of intent to assess penalties (NOIs) with regard to 5,156 violations, sought a total in fines of $5,156,000, and issued a press release regarding the largest penalty ever sought by BOLI against an employer. (FAC ¶¶ 42, 81.). On December 21, 2021, BOLI served new NOIs but the penalties sought were increased to $8,727,000. (FAC ¶ 48.)  The NOIs from December 21, 2021 were limited to just a few departments. (FAC ¶ 49.) BOLI continues to provide Legacy with notices of alleged additional violations and it has threatened that it will continue to seek penalties against Plaintiffs in the future. (FAC ¶ 139.) Unless the court intervenes, BOLI will continue to enforce its Meal Timing Rules in a way that obstructs

Page 42 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff hospitals from providing patient care. (FAC ¶¶ 141-42.) BOLI has acted for discriminatory and political purposes including its rejection without reasoning of Plaintiffs' proposed amendment to the Meal Timing Rule. (FAC ¶ 151.) BOLI excessive fines selectively target Legacy hospitals; similar fines are not directed at other employers, such as unionized hospitals. (FAC ¶ 51.)

If BOLI succeeds and places Plaintiff hospitals in an untenable financial situation, the damage to public health would be staggering. (FAC ¶ 50.)

Plaintiffs are injured and damaged by having to fund the defense of four separate contested case hearings scheduled over a period of several weeks requiring that they spend funds in their defense as well as involve and make available for testimony healthcare workers at a time of short supply and ongoing medical crisis. (FAC ¶ 119.)

In conclusion, the Legacy Plaintiffs detailed factual allegations which Defendants concede must be accepted as true and establish unusual and extraordinary circumstances that, absent federal event intervention, places the Legacy hospitals at peril. (Motion, p. 8.)

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

DATED this 26th day of August, 2022.

BARRAN LIEBMAN LLP

*s/Richard C.  Hunt*

By _____

Paula A. Barran, OSB No. 803974
pbarran@barran.com
Richard C. Hunt, OSB No. 680770
rhunt@barran.com
Attorneys for Plaintiffs

Page 43 – PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of August 2022, I served the foregoing **PLAINTIFFS'**

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the

following parties:

> Brian Simmonds Marshall, Senior Assistant Attorney General
> Alex C. Jones, Assistant Attorney General
> Department of Justice
> 100 SW Market Street
> Portland, OR  97201
> Brian.S.Marshall@doj.state,or.us
> Alex.Jones@doj.state.or.us
>      (Attorneys for Defendants)

by the following indicated method(s) set forth below:

☒    **Electronic Filing using the Court's ECF System**

☐    **Email**

☐    **Facsimile**

☐    **First-class mail, postage prepaid**

☐    **Hand-delivery**

☐    **Overnight courier, delivery prepaid**


*s/Richard C. Hunt*
_____
Richard C. Hunt


CERTIFICATE OF SERVICE

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212