# BEFORE THE COMMISSIONER
# OF THE BUREAU OF LABOR AND INDUSTRIES
# OF THE STATE OF OREGON

| | |
|---|---|
| In the Matter of:<br><br>**LEGACY MOUNT HOOD MEDICAL CENTER,**<br><br>Respondent. | Case Nos. **59-20**<br><br>**INTERIM ORDER DENYING RESPONDENT'S SECOND MOTION TO COMPEL AND DENYING MOTION FOR LEAVE TO FILE DISCOVERY MOTION AFTER DISCOVERY MOTIONS DEADLINE** |

## INTRODUCTION

On November 2, 2022, the Respondent Legacy Mount Hood Medical Center ("Respondent") filed Respondent's Second Motion to Compel Discovery or in the Alternative Respondent's Motion for Leave to File Discovery Motion After Discovery Deadline. The Agency timely filed its response to the motion on November 14, 2022.

## PROCEDURAL BACKGROUND

On December 21, 2021, the Agency filed a Notice of Intent to Assess Civil Penalties ("NOI") against Respondents Legacy Good Samaritan Hospital and Medical Center (Case No. 58-20), Legacy Mount Hood Medical Center (Case No. 59-20), Legacy Meridian Park Hospital dba Legacy Meridian Park Medical Center (Case No. 60-20), and Legacy Emanuel Hospital & Health Center dba Legacy Emanuel Medical Center (Case No. 61-20) concerning Respondents' alleged failure to provide appropriate meal and/or rest periods.

On January 4, 2022, Respondent filed its Answer to the NOI's in which Respondent denied the allegations set forth in the NOI and stated affirmatively the various actions taken in support of its denial that Respondent engaged in any willful

violations or should be assessed penalties. Respondent also set forth its affirmative legal and factual defenses.

On or about April 29, 2022, Notices of Hearing were issued that set September 13, 2022, as the hearing date. On June 17, 2022, the forum issued the Interim Order Granting Respondent's Motion to Postpone Hearings and Setting Deadlines for Filing Case Summaries and Deadlines for filing Discovery Motions and Dispositive Motions setting November 11, 2022, as the discovery motions deadline and November 21, 2022, as the motion response deadline.

On July 26, 2022, the Agency sent its initial discovery requests to Respondent's attorneys via mail and email which consisted of 117 Requests for Production of Documents ("RFPs") concerning Case Nos. 58-20, 59-20, 60-20, and/or 61-20. RFP Nos. 1 through 39 each specifically referred to Respondent and/or Case No. 58-20. (*Agency Motion to Compel,* Ex. 1, pp. 1-18). The Agency requested that Respondent produce documents responsive to its RFPs within thirty days.

On September 19, 2022, the Agency filed a motion to compel discovery in each of the four cases noted above. The Respondent timely filed its response on September 26, 2022. On October 4, 2022, the Forum issued the Interim Order Granting Agency's Motion to Compel and Setting Production Deadline that required Respondent to produce all remaining non-privileged documents responsive to the Agency's RFPs 1 through 6; 8 through 16; and 18 through 117 no later than October 28, 2022.

On October 11, 2022, Respondent filed its first Motion to Compel seeking production of non-privileged documents the Agency had refused to produce. The

Agency filed its Response and Opposition to Respondent's Motion to Compel on October 21, 2022.

On October 31, 2022, the Forum issued an Interim Order Granting in Part and Denying in Part Respondent's Motion to Compel Discovery granting Respondent's unopposed motion for a date certain, November 4, 2022, to produce remaining non-privileged documents consistent with its responses and objections, which were not challenged by Respondent, to RFP Nos. 1-38.  The Interim Order denied Respondent's motion to compel production of discovery responsive to its RFP Nos. 41-45, 50-51, 54-61, 65-67, and 69-75.  The Interim Order also denied Respondent's request that the Agency organize its discovery responses to ease its review of the documents produced.

On October 25, 2022, Respondent served its Third Request for Production of Documents on the Agency.  Respondent's RFP Nos. 48-52, 57-68, and 72-82 are similar in content to RFP Nos. 41-45, 50-61, and 65-75, which Legacy Good Samaritan Hospital and Medical Center served in Case No. 58-20.

On October 3, 2022, the Agency in Case No. 58-20 declined to produce any documents in response to these RFPs, stating, among other things, that the requests seek information that is not "generally relevant" and/or that the Agency notes that it is unaware of any employee(s) referenced in the NOI Case No. 58-20 being parties to a collective bargaining agreement which prescribes rules concerning meal periods and rest periods during the time periods referenced in the NOI.

On November 2, 2022, Respondent filed its Second Motion to Compel Discovery or in the Alternative Respondent's Motion for Leave to File Discovery Motion After Discovery Motions Deadline.  Respondent's motion noted:

> "This motion contains additional supporting arguments not previously reviewed by the Forum including discussion of opinions of the Oregon Supreme Court and the Ninth Circuit Court of Appeals recently published in 2022."

Respondent's motion seeks an order compelling the Agency to produce documents in response to its RFP Nos. 48-52, 57-68, and 72-82 (Case No. 59-20); RFP Nos. 46-50, 55-66, and 70-80 (Case No. 60-20); and RFP Nos. 41-45, 50-61, and 65-75 (Case No. 61-20). The RFPs addressed in Respondent's motion are the same or similar as those subject to the forum's Interim Order Granting in Part and Denying in Part Respondent's Motion to Compel Discovery issued on October 31, 2022.

On November 14, 2022, the Agency timely filed its response to Respondent's motion to compel.

## DISCUSSION

OAR 839-050-0200(1) provides:

> "The Administrative Law Judge has the sole discretion to order discovery by a participant in appropriate cases. This rule does not require the Administrative Law Judge to authorize any discovery. If the Administrative Law Judge does authorize discovery, the Administrative Law Judge will control the methods, timing, and extent of discovery, but nothing in this rule prevents informal exchanges of information. When the Administrative Law Judge orders discovery, the Administrative Law Judge will notify the participants of the possible sanction, pursuant to section (11) of this rule, for failure to provide the discovery ordered."

In a BOLI contested case proceeding, "[a]ny discovery request must be reasonably likely to produce information that is generally relevant to the case." OAR 839-050- 0200(7).

"[A] request for a discovery order must be filed with the Contested Case Coordinator, be in writing, and must include a description of the attempts to obtain the

INTERIM ORDER - 4

requested discovery informally. The Administrative Law Judge will consider any objections by the participant from whom discovery is sought." OAR 839-050-0200(5).

Pursuant to OAR 839-050-0200(8), the Administrative Law Judge will issue an order granting or denying a discovery request in whole or in part. Participants must comply with such orders and have a continuing obligation, through the close of the hearing, to provide the other participants with any newly discovered material that is within the scope of the discovery order.

OAR 839-050-0200(11) provides:

> "The Administrative Law Judge may refuse to admit evidence that has not been disclosed in response to a discovery order or subpoena, unless the participant that failed to provide discovery shows good cause for having failed to do so or unless excluding the evidence would violate the duty to conduct a full and fair inquiry under ORS 183.417(8). If the Administrative Law Judge admits evidence that was not disclosed as ordered or subpoenaed, the Administrative Law Judge may grant a continuance to allow an opportunity for the other participant(s) to respond."

In addition to its previous arguments that its discovery requests seek relevant evidence or evidence that is reasonably likely to lead to the discovery of relevant evidence, Respondent directs the forum's attention to the recent ruling of the Oregon Supreme Court's in *Scott v. Kesserling*, 370 Or 1, 513 P3d 51 (2022). Specifically, Respondent points to the following language:

> "Relevant evidence is evidence that has 'any tendency to make the existence of any fact that is of consequence **to the determination of the action more probable or less probable** than it would be without the evidence.' OEC 401.
>
> * * * * *
>
> … the fact that evidence may make it more likely that a jury will decide for or against a party does not determine whether evidence is "unfairly" prejudicial. *See Mccathern v. Toyota Motor Corp.,* 332 Or 59, 71, 23 P3d 320 (2001) (explaining that 'relevant evidence often has the effect of proving one party's position while harming the other's'). When a

INTERIM ORDER - 5

> defendant's conduct is at issue, there is nothing particularly unfair about painting that conduct in all its details, and it could be unfair not to do so. *Cf. State v. Davis*, 336 Or 19, 34, 77 P3d 1111 (2003) (concluding that evidence was improperly excluded as prejudicial when it 'potentially was influential because it tended to complete the picture of defendant's version of the events and [d]efendant was entitled to prove his theory of the case by presenting relevant, admissible evidence to the jury'. (370 Or at 24) (emphasis supplied)."

(*Resp. Second Mot. to Comp.*, p. 2)(emphasis added)

In *Kesselring*, a personal injury case, the court considered whether the trial court erred in allowing evidence that the defendant used her cell phone immediately prior to rear-ending the plaintiff's vehicle. The plaintiff claimed her emotional injuries that resulted from the collision were so severe that she attempted to take her own life and was hospitalized. The defendant argued that her conduct did not unreasonably create a foreseeable risk of harm of the nature claimed by the plaintiff. The defendant argued that, based upon her admission of fault, evidence regarding her cell phone use was irrelevant as to any issue in the case and admission of such evidence was unfairly prejudicial.

The court found that the defendant had put her conduct at issue by contesting foreseeability. The court noted that the defendant had not argued that her conduct was not the cause in fact of plaintiff's later mental health struggles. Rather, the defendant contested the foreseeability of the plaintiff's later mental health struggles, thereby, putting her own conduct at issue.

Respondent contends that the Oregon Supreme Court, in discussing "relevant evidence," emphasized that the defendant was entitled to provide its theory of the case. Respondent contrasts the Oregon Supreme Court's ruling in *Kesserling* with *Spray v. Board of Medical Examiners*, 50 Or App 311, 330-31 (1981) and *Gregg v. Oregon*
INTERIM ORDER - 6

*Racing Comm'n*, 38 Or App 19, 26 (1979).  Respondent contends that, unlike the parties in both *Spray* and *Gregg* whose discovery requests were denied, it has clearly stated that its discovery requests are directly related to its defenses and are, therefore, properly within the scope of discovery.  The Agency argues that *Spray* and *Gregg* stand for the principle that a party does not have the right to access all of the records in possession of the opposing party and that a party must only produce discovery that is generally relevant and necessary to the case or likely to facilitate resolution of the case.

**RESPONDENT'S AFFIRMATIVE DEFENSES**

The affirmative defenses noted in Respondent's second motion to compel production of discovery include:

"41. **(Failure to Apply Rules Universally)** The Agency's allegation that delayed meal periods are harmful is arbitrary and capricious in that the Agency permits other employers to establish variations from the rules, including employers whose employees are governed by collective bargaining agreements. A per se rule that is not universally applied is arbitrary and capricious.

\* \* \* \* \*

"53. **(Arbitrary and Capricious Rulemaking Should Be Denied Enforcement)** The Agency entered into rulemaking knowing that acute medical providers, regardless of union or nonunion status, had critical difficulties managing rest and meal periods without compromising patient health and deliberately introduced a timing window applicable only to nonunion facilities with the knowledge that such requirements were contrary to the health and welfare of the applicable employees. Such rules are arbitrary and capricious as written and as applied.

\* \* \* \* \*

"71. **(Agency Interpretation Without Rulemaking)** The Agency may not rely upon Agency interpretations that are not the result of formal notice-and-comment rulemaking. To do so is a violation of Oregon's Administrative Procedures Act.

\* \* \* \* \*

"95. **(Agency Failed to Consider Statutory Citation or Legal Basis for the Rule)** The Agency's application of OAR 839-020-0050 is required to be "necessary for the preservation of the health of employees." The Agency cannot meet this standard and consequently has exceeded its statutory grant of authority; its actions conflict with the stated policy goals of ORS 653.261."

## RESPONDENT'S DISCOVERY REQUESTS

Respondent's discovery requests generally cover seven broad categories, each of which are addressed below.

*a. The Agency's Treatment of Union Employers and Non-Union Employers*

Respondent contends that the Agency applies a double standard regarding meal and rest breaks in its treatment of employers with a Collective Bargaining Agreement ("CBA") versus its treatment of those employers, such as Respondent, who do not have a CBA in place   The RFPs at issue include:

"RFP No. 46 seeks documents and communications relating to guidelines or analysis relating to the health and/or safety issues applicable to hospitals or health facilities of CBA employers.

RFP No. 47 seeks documents regarding the Agency's investigation, issuance of notices of violation, or issuance of NOIs for meal period violations and/or rest period violations of CBA employers.

RFP No. 49 seeks memos, internal discussions, guidelines, or analysis of collectively bargained meal times at CBA employers.

RFP No. 56 seeks BOLI records or guidelines instructing BOLI staff not to investigate CBA employers.

RFP No. 59 seeks documents showing whether civil penalties, if any, have been assessed against CBA employers.

RFP No. 60 seeks NOIs, if any, that have been directed by BOLI against CBA employers.

RFP No. 70 seeks copies of forms and writings used by BOLI to ask complainants if they are employed by CBA employers.

> RFP No. 71 seeks all forms and writings used by BOLI to ask complainants if they are members of a union that represents them in connection with their current employment.
>
> RFP No. 72 seeks documents in which BOLI states that it does not accept complaints for meal period or rest period violations with respect to CBA employers."

*(Resp. Second Mot. to Compel,* pp. 6-7)

The forum is not persuaded that information pertaining to other employers with CBA's is relevant to the case at hand or is likely to lead to the production of relevant evidence. Respondent cites *Emerald Steel Fabricators, Inc. v. Bureau of Labor and Indus.*, 348 Or. 159, 230 P3d 518 (2010) in support its argument that such evidence is necessary to present a full and complete record to the forum and to preserve issues for later review. However, *Emerald Steel* does not address discovery issues but, rather, the preservation of issues for appeal. Respondent has failed to show how the information sought in its RFP Nos. 46, 47, 49, 56, 59, 60, 70, 71, and 72 is relevant to the issues before the forum. Therefore, Respondent's second motion to compel production of discovery response to RFP Nos. RFP's 46, 47, 49, 56, 59, 60, 70, 71, and 72 is **DENIED.**

    *b. Documents Regarding NOI's Alleging Violations by Non-Union Hospitals*

Respondent's RFP No. 48 seeks:

> "**REQUEST NO. 48**: For the period 2017 to the present, all documents which record, reflect, or memorialize that the Agency has issued NOIs for meal period violations and/or rest period violations to non-union hospitals or health care facilities for which employees are not covered by collective bargaining agreements other than Legacy hospitals and Legacy health care institutions."

(*Resp. Second Mot. to Compel*, p. 9)

Respondent argues that the discovery sought relates to its defense that the Agency has selectively targeted Respondent for investigation, alleged violations and assessment of fines. *Id.* Respondent cites *Willowbrook v. Olech*, 528 US 562, 120 S. Ct. 1073, 145 L.Ed. 2d 1060 (2000), in which the Supreme Court held that a village's demand for a 33-foot easement from a homeowner when it had only required a 15-foot easement from similarly situated homeowners violated the Equal Protection Clause of the Fourteenth Amendment.

Respondent has not shown how the treatment of other non-union employers is in any way relevant to the issue of whether it committed the violations set forth in the NOI. Mindful of Respondent's defenses set forth above, the forum reminds the parties that the focus of the hearing will be on the allegations set forth in the NOI. The Agency will be held to its burden of proof, and the Respondent will be allowed to present relevant evidence in its defense. Neither party will be allowed to expand the scope of the hearing to address non-relevant issues. As there has been no showing that the Agency's treatment of non-union employers is relevant to the issue presently before the forum, the Respondent's second motion to compel production of discovery responsive to RFP No. 48 is **DENIED.**

   c. *Documents Pertaining to the Agency's Adoption of OAR 839-020-0050(7)*

Respondent's RFP No. 55 seeks:

> **"REQUEST NO. 55:** All documents that show, demonstrate, or reveal what led the Agency to adopt the provisions of OAR 839-020-0050(7) and how the Agency has administered OAR 839-020-0050(7) which provides:
>
>> "(7) The provisions of this rule regarding meal periods and rest periods may be modified by the terms of a collective bargaining agreement if the provisions of the collective bargaining agreement

> entered into by the employees specifically prescribe rules concerning meal periods and rest periods."
>
> "Including the following:
>
> a. Documents received by or considered by the Agency from employer associations, labor organizations employers or employees urging the adoption of OAR 839-020-0050(7) allowing that the provisions of the rules regarding meal periods and rest periods may be modified by the terms of a collective bargaining agreement;
> b. Documents of the Agency supporting the adoption of a rule permitting modification of provisions regarding meal periods and rest periods by the terms of the collective bargaining agreement;
> c. Administrative drafts and input from Agency administrative staff leading to the adoption of OAR 839-020-0050(7);
> d. Documents in the Agency's possession construing, interpreting or applying OAR 839-020-0050(7);
> e. Minutes of the Wage and Hour Commission records related to OAR 839-020-0050(7);
> f. Records of transfer of any minutes of the Wage and Hour Commission to State Archives;
> g. Hearing audio or video tapes or transcription of those audios or videos with respect to OAR 839-020-0050(7);
> h. All other administrative rule records regarding OAR 839-020-0050(7).
>
> "This request is limited solely to OAR 839-020-0050(7) and is not related to any other subsections of OAR 839-020-0050.
>
> **"REQUEST NO. 62:** All documents and communications, tape recordings, writings, or records to which former BOLI Commissioner Jack Roberts referred to during a March 21, 2001 hearing before the Oregon Senate Business, Labor and Economic Development Committee discussing a bill that was eventually enacted as ORS 653.261(3) in which Commissioner Roberts disclosed in testimony that he had contacted legal counsel at the Attorney General's (AG's) office regarding the fact that the proposed bill would provide flexibility to employers governed by collective bargaining agreements to schedule meal periods and breaks but that a similar flexibility would not apply to non-union employers and Commission Roberts' public disclosure that the AG's office had the belief that the National Labor Relations Act preempted that field and that if their interpretation of federal law was correct then the bill would not be valid."

(*Resp. Second Mot. to Comp.*, pp. 11-12)(footnotes omitted)

INTERIM ORDER - 11

Respondent contends OAR 839-020-0050 provides for more favorable treatment of employers covered by a CBA as compared to the treatment of employers without a CBA. Respondent argues that it is therefore entitled to documents pertaining to the adoption of OAR 839-020-0050. The forum is not persuaded that the discovery sought is relevant or is likely to lead to the discovery of evidence relevant to the issues before the forum. Similarly, the forum is not persuaded that communications by a previous Commissioner pertaining to a rule that was adopted by the Agency several years ago is relevant to the issues presently before the forum. Therefore, Respondent's second motion to compel production of discovery response to RFP Nos. 55 and 62 is **DENIED.**

*d. Calendar Entries of BOLI's Commissioner and Deputy Commissioner*

Respondent seeks documents related to calendar entries for the period of 2019 to the present for the current BOLI Commissioner and Deputy Commissioner that relate to Respondent or other Legacy hospitals and health care institutions. (Resp. RFP's No. 59 and 60). Respondent argues that the discovery sought is relevant to the issue of whether the Agency has improperly sought to impose large fines against the Respondent and whether the Commissioner has thus failed to consider mitigating circumstances and exculpatory evidence. Again, the forum is not persuaded that the discovery sought is relevant or likely to lead to the discovery of evidence relevant to the issue of whether Respondent committed the violations set forth in the NOI's. Even if the Respondent succeeded in proving its affirmative defense(s), achieving such a result would not entitle it to a judgment as a matter of law. Therefore, Respondent's motion to compel production of discovery response to RFP Nos. 57 and 58 is **DENIED.**

> e. *Documents Related to Issues Regarding the Agency's Prosecution of Case Nos. 88-18, 90-18, and 91-18*

The RFPs at issue include:

"**REQUEST NO. 61:** For the period 2015 to the present, all documents or communications with regard to complaints of employers or their legal counsel regarding Administrative Prosecutors or investigations of Administrative Prosecutors, including but not limited to Adriana Ortega, regarding their use of subpoenas and accompanying correspondence to interview recipients of subpoenas in advance of a hearing regarding the witnesses' testimony at an upcoming hearing.

"**REQUEST NO. 63:** For the period 2015 to the present, all documents, including internal memoranda, advising the Administrative Prosecutors to use and/or refrain from using subpoenas and accompanying correspondence to interview witnesses in advance of the hearing.

"**REQUEST NO. 64:** For the period 2015 to the present, all documents regarding disciplinary action taken against Administrative Prosecutors, including Adriana Ortega, with respect to use of a subpoena and accompanying letter to interview witnesses in advance of a hearing.

"**REQUEST NO. 65:** For the period 2015 to the present, documents showing that BOLI Administrative Prosecutors have issued Subpoenas Ad Testificandum similar to the subpoena issued by Administrative Prosecutor Adriana Ortega on September 12, 2019 (a copy of which is attached hereto as Attachment A) and letters accompanying the subpoenas directing that the recipients of the subpoenas contact the Administrative Prosecutor to schedule a time to talk and discuss witnesses' testimony in advance of the upcoming hearing similar to the letter from Adriana Ortega dated September 12, 2019 (a copy of which is attached hereto as Attachment B).

"**REQUEST NO. 66:** For the period 2015 to the present, documents showing that BOLI Administrative Prosecutors, following issuance of Subpoenas Ad Testificandum, seeking to interview witnesses in advance of hearings have:

> a. Prepared memos, notes, or other documents summarizing the witnesses' testimony;
> b. Based upon Administrative Prosecutors' interviews of witnesses in advance of the hearings have made a decision to withdraw the subpoena directed to the witness."

(*Resp. Second Mot. to Comp.*, pp. 16-17)

Respondent offers the same or similar arguments previously considered and rejected by the forum. The forum is not persuaded that procedural issues that arose during a previous prosecution of cases that were dismissed without prejudice have occurred in the present case or have affected the present prosecution to such a degree as to make the discovery sought relevant. Therefore, Respondent's second motion to compel production of discovery responsive to RFP Nos. 61, 63, 64, 65, and 66 is **DENIED.**

*f. Documents Regarding Meal and Rest Periods and Assessment of Penalties*

Respondent's RFP No. 80 seeks documents of a former BOLI Commissioner regarding meal and rest periods and assessment of penalties.

> "**REQUEST NO. 80**: All documents or communications from or to former BOLI Commissioner Avakian regarding meal period rules during the following time periods:
>
> a. During the period that Mr. Avakian served as BOLI Commissioner;
> b. During the period following Mr. Avakian's tenure as BOLI Commissioner to the present."

(Resp. Second Mot. to Comp., p. 20)

The forum is not persuaded that the discovery sought is relevant or likely to lead to the discovery of relevant evidence. Therefore, Respondent's second motion to compel production of discovery responsive to RFP No. 80 is **DENIED.**

*g. Penalties Collected by BOLI*

Respondent seeks documents relating to how BOLI has "applied, used, disbursed, or retained" penalties collected pursuant to ORS 653.256(4)(a), (b), and (c).

> "Respondent's RFP Nos. 73 and 74 seek, in part, all documents that show, demonstrate, or reveal how the penalty sums that were collected in

> Case No. 29-17 and Case No. 66-17 and were applied, used, or disbursed by the Agency pursuant to ORS 183.745 and ORS 653.256(4)(a), (b), and (c). The Agency collected fines of $276,680 in Case No. 29-17 from Legacy Emanuel and $85,000 in Case No. 66-17 from Legacy Silverton.
>
> "RFP Nos. 75, 76, 77, 78 and 79 seek documents regarding the receipt, deposit, transfer, use, disbursement, or disposition of any civil penalties paid to BOLI for the period 2011 to the present as a result of enforcement of Oregon wage laws, including payment of funds to the Department of State Lands for the benefit of the Common School Fund, payment of funds to Human Services, retention of funds by the Agency, and the failure to forward funds to either the Department of State Lands or the Department of Human Services."

(*Resp. Second. Mot. to Compel*, p. 22)

Respondent argues that how BOLI has treated penalties and revenues obtained from fines will demonstrate a bad faith motive on the parti of the Agency. Respondent points to the Supreme Court's ruling in *Timbs v. Indiana*, 139 S.Ct. 682, 201 L. Ed. 2d 1049 (2019), in which the Supreme Court found a state's forfeiture of a defendant's vehicle used to transport illegal drugs that was valued four times the maximum monetary fine assessable for the crime the defendant was convicted of was grossly disproportionate and, therefore, unconstitutional under the Eight Amendment's Excessive Fines Clause.

Respondent also points to the Ninth Circuit's ruling in *Wakefield v. ViSalus, Inc.*, 51 F. 4th 1109 (9th Cir. Oct. 20, 2022) in which the court found that due process may limit aggregated statutory damages when the damages are "gravely disproportionate to and unreasonably related to the legal violation committed."

In addition to the arguments previously offered to and rejected by the forum, Respondent also directs the forum's attention to the language used by the Court of Appeals of Oregon in *Klein v. Or. Bureau of Labor & Indus.*, 317 Or App 138, 163

(2022). In *Klein*, the Court of Appeals, in reviewing an award of noneconomic damages and conduct of the Administrative Prosecutor, discussed in part:

> * * *given the agency's structure, that the prosecutor took that position, and the commissioner did not disavow it, gives rise to at least a 'slight suspicion' that the position is one shared by the agency, including its head and final adjudicator, the commissioner. * * * that specter of non- neutrality materializes into the affirmative conclusion that BOLI at least subtly departed from principles of neutrality when it awarded noneconomic damages * * *

The court, in discussing the propriety of the noneconomic damages awarded, found:

> [T]he prosecutor's closing argument apparently equating the Kleins' religious beliefs with 'prejudice,' together with the agency's reasoning for imposing damages in connection with Aaron's quotation of Leviticus, reflect that the agency acted in a way that passed judgment on the Kleins' religious beliefs, something that is impermissible under Masterpiece Cakeshop."

*Klein*, 317 Or App 138, 161.

Respondent argues that its discovery requests are directly related to its affirmative defenses and are, therefore, within the scope of discovery. The defenses, as set forth by Respondent in its Answer, as well as its discovery motions, are not ones, that if proven, would result in a judgment as a matter of law. Further, the cases cited by the Respondent do not directly address the issue of whether the Agency has the authority to impose civil penalties in cases where a Respondent has been found to have violated the state's wage and hour laws. Respondent has failed to show how the discovery sought could lead to evidence relevant to the issues before the forum, namely whether Respondent committed the violations set forth in the NOI's. Therefore, Respondent's second motion compel production of discovery responsive to its RFP Nos. 75-81 is **DENIED.**

**RESPONDENT'S REQUEST FOR LEAVE TO FILE MOTIONS AFTER THE DISCOVERY MOTIONS DEADLINE**

Respondent's motion requested the forum set a date certain for the Agency to produce documents responsive to the discovery requests addressed above. In the alternative, the Respondent "seeks leave to file this motion to compel after the November 11, 2022, discovery motions deadline and after the Agency has served its response to Respondent's Third Request for Production." (*Resp. Second Mot. to Comp.*, p. 4). Given that the Respondent filed essentially the same discovery motion twice, the forum is not inclined to extend the deadline for filing discovery motions. Therefore, the Respondent's motion for leave to file discovery motions after the discovery motions deadline is **DENIED.**

**IT IS SO ORDERED.**

Entered at Portland, Oregon, with copies emailed to:

Adam Jeffries (adam.jeffries@boli.oregon.gov), Chief Administrative Prosecutor, 1045 State Office Building, 800 NE Oregon Street, Portland, OR 97232-2180

Paula A. Barran (pbarran@barran.com) and Richard Hunt (rhunt@barran.com) , Barran Liebman LLP, 601 SW 2nd Ave Ste 2300, Portland OR 97204

Dated:	November 30, 2022

     /s/ Caroline A. Holien
Caroline A. Holien, Administrative Law Judge
Bureau of Labor and Industries